USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/9/2020___

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

*In re Morgan Stanley Data Security Litigation*                    20 Civ. 5914 (AT)

---

## ORDER REGARDING PRODUCTION OF
## DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to the agreement reached between Plaintiffs and Defendant herein, this Court adopts and orders the following protocol (the "ESI Order") for the production of electronically stored information ("ESI") which binds all parties and their counsel of record in all cases consolidated or coordinated in the above-captioned matter (the "Litigation"), whether they currently are involved or become so in the future.

I.     **SCOPE AND LIMITATIONS**

A.     **Scope**. This ESI Order will govern the discovery and use of electronically stored information and Hard Copy Documents in the Actions and will complement and supplement the Federal Rules of Civil Procedure governing discovery. Any disclosures made pursuant to the ESI Order are subject to any other orders entered in the Actions.

B. **Non-Waiver**. The Parties and their attorneys do not intend by this ESI Order to waive their rights to any applicable protection, privilege or immunity including but not limited to the attorney-client privilege and the work product doctrine. All Parties preserve their respective attorney-client privileges, work product protection, and any other applicable privileges or protections. Further, nothing in this ESI Order shall be construed to affect the discoverability or admissibility of any Documents. All

objections to the discoverability or admissibility of any Documents are preserved and may be asserted at any time.  All Parties preserve their respective attorney-client privileges, work product protection, and any other applicable privilege, protection, or immunity.

C.      **Confidentiality**. All disclosures and productions—including but not limited to all ESI productions—shall be subject to the Protective Order when entered by the Court in the Litigation, the terms of which are expressly incorporated herein by reference. If a particular document or ESI item qualifies for confidential treatment pursuant to the terms of a Court-ordered protective order entered in this case, or has been redacted in accordance with applicable law or Court order, the confidentiality designation pursuant to the applicable Court order will be added by the Producing Party prior to its production on the face of the document and in the file data field.

D.      **Modification by Agreement**.  Any Party added or joined to any complaint in the Litigation and any Party to actions that may be consolidated into or coordinated with the above-captioned matters after the date of this ESI Order that seeks to deviate from the ESI Order set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, Plaintiffs and Defendant shall meet and confer in good faith regarding any modification.

In light of the disparate data systems and architectures that may be employed by the Parties, variations from this ESI Order may be required. In the event that any Party identifies a circumstance where application of this ESI Order is not technologically possible, would be unduly burdensome or impractical, or when another process would satisfy the objective and reach the same result with less burden, the Party will notify the Requesting Party of the

exception and before implementing an alternative, specify an alternative procedure that is not unduly burdensome or impractical that will be employed, if one exists. Upon request by the Requesting Party, those Parties will meet and confer regarding the circumstances and proposed alternative approaches.

E.      **Modification by Court Order**. Nothing in this ESI Order waives the right of any Party to petition the Court for an Order modifying its terms upon sufficient demonstration that compliance with such terms is either (1) unexpectedly and unreasonably burdensome, or (2) impossible, provided, however, that counsel for such party must first meet and confer with counsel for the opposing party and the parties shall use reasonable best efforts to negotiate an exception from or modification to this ESI Order prior to seeking relief from the Court.

## II.   DEFINITIONS

A.      Capitalized terms not defined herein shall have the meaning set forth in the Proposed Stipulated Protective Order.

B.      "Backup Media" refers to magnetic tapes, CDs, DVDs, hard drives or other storage onto which Backup Systems store electronic information.

C.      "Backup systems" refers to computer systems used to store copies of active electronic information on Backup Media to permit recovery of the information in the event of loss or damage to the original data.

D.      "Custodian" shall mean any individual, department, business unit, or division of a party that has possession, custody, or control of information, documents, or data sources, or has access to Shared Storage Systems that may contain information potentially relevant to the Litigation. For purposes of clarity, Custodian also includes those individuals that control or maintain Shared Storage Systems or other shared information sources that may contain

information potentially relevant to the Litigation, such as information technology personnel that maintain electronic mail systems, backup systems or backup media, or archival systems or storage.

E.      "Custodial Data Source" means any data source in which a Custodian may store ESI or Hard Copy Documents, whether or not created or generated by a Custodian, including but not limited to personal computers, laptops, tablets, email whether stored locally or centrally, mobile devices, shared network servers, shared or individual network folders, cloud storage systems, structured data systems, or social media.

F.      In accordance with Local Civil Rule 26.3(c)(2), "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).

G.      "Extracted Text" means the text extracted from a Native Document, and includes all header, footer and document body information when available. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

H.      "Hard Copy Document" means a document that was maintained in paper form at the time the Litigation commenced.

I.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File will also contain data relevant to the individual Documents, including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

J.      "Metadata"  means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

K.      "Native format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

L.      "Network" or "Shared Storage Systems" shall mean any data storage device accessible to multiple users remotely over a computer network."

M.      "Non-Custodial Data Source" means any data source that is not kept or maintained by any particular Custodian but which may contain documents or data relevant to this action.

N.      "OCR file" means optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software ("OCR software")

O.      "Parties" collectively shall mean all named parties to this Litigation, including any Party added or joined to the Litigation, as well as named parties to actions that may consolidated into or coordinated with the above-captioned Action.

P.      "Production" or "Produced" includes any exchange of documents or electronically stored information or hard copy documents between the parties, whether voluntarily or in response to a formal or informal request.

Q.      "Producing Party" means the party to the Litigation producing documents in response to a formal or informal request for the production of documents or information from a Party in this Litigation.

R.       "Receiving Party" means the party to the Litigation receiving, formally or informally, the production of documents or information from a Party or non-party.

S.      "Requesting Party" means the party to the Litigation requesting, formally or informally, the production of documents or information from a Party or non-party.

T.      "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

U.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

V.      Tagged Image File Format image is a graphic file format for storing bit-mapped images and bears the file name suffix ".tiff" or ".tif."  It is an example of a Static Image. A Group IV TIFF is a two-dimensional compression format for storing black and white images that typically compresses at a 20-to-1 ratio for standard business documents.

W.      "Structured data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

6

## III.    COOPERATION

A.    To facilitate the efficient and effective management of the Litigation and to minimize unnecessary discovery disputes and motion practice, the Parties agree to cooperate in good faith to attempt to reach agreement on cost effective search methodologies and quality assurance/quality control measures to be employed by the Parties, and to make the disclosures regarding such methodologies, date ranges, custodians, and noncustodial data sources, in order to facilitate such agreement and advance the Parties' negotiations.

B.    If a Producing Party cannot comply in a particular circumstance with this ESI Order, such Party shall promptly inform the Receiving Party in writing why compliance with the ESI Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## IV.    PRESERVATION

This ESI Order shall not abrogate any duties of the parties under the Federal Rules of Civil Procedure to properly preserve evidence.

## V.    PRIMARY CUSTODIANS AND SEARCH TERMS

A.    Prior to collecting and processing any ESI, each Party will investigate in good faith to identity the custodians and non-custodial sources, within each Party's possession, custody or control, who are most likely to have ESI relevant to the Litigation, hereafter referred to as "Primary Custodians." The Primary Custodians shall be identified by name, title, connection to this matter, and the type of information under his/her control. Following such disclosure, the parties shall meet and confer and use reasonable best efforts to reach agreement

on the search methodology, including any search terms, if any, to be used, and the categories of document requests to which such search methodology(ies) shall and shall not be applied.

B.      The Parties agree to meet and confer about the methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The process to validate the particular search terms and methodologies deployed by the Parties will be an iterative process. The Parties also agree that certain documents do not require search terms or methodologies, and that the Parties shall identify and produce those documents that are readily available without the use of search terms and methodologies.

C.      Nothing in this section shall limit a Party's right to reasonably seek agreement from the Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to completion of discovery. If, during discovery, the Requesting Party has a reasonable good-faith basis to request discovery from additional custodians or using additional search parameters, the Parties shall meet and confer concerning the appropriateness of such discovery.

D.      The Parties shall meet and confer according to the provisions that follow. If the parties cannot reach agreement following negotiations, they shall bring their disputes to the Court for resolution in a timely manner.

## VI. PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

With the exception of spreadsheets, presentation files, multi-media files and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and

white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. Parties reserve the right to request specific documents in another form if an image is not reviewable or additional relevant information can be obtained in a different form. To the extent reasonably practicable, ESI items shall be process using a consistent time zone by all of the Parties: (e.g., GMT), and the time zone shall be disclosed to the Requesting Party.

A.   **Production of Documents Not Reasonably Comprehensible in TIFF format.**
Spreadsheet files (e.g., Microsoft Excel files), database files, and any other file types that reasonably require viewing in their native format for a full understanding of their content must be produced in their native file format with a TIFF image placeholder. Any files not easily converted to or reviewable in image format must be produced in their native file format, including but not limited to audio/video files. Documents produced natively shall be represented in the set of imaged documents by a slip sheet indicating the production identification number and confidentiality designation for the native file that is being produced.

B.   **Optical Character Recognition.** To the extent that documents have been run through optical character recognition ("OCR") software, the full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files shall be provided in a "Text" folder. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, *e.g.* with the notation "REDACTED."

C.     **Technology Assisted Review ("TAR") and Similar Advanced Analytics.**  If a Producing Party elects to use TAR or similar advanced analytics as a means of including or excluding Documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, prior to use of such tool the Requesting Party and Producing Party shall meet and confer as to (1) the custodial data sources and non-custodial data sources against which TAR will be run; (2) the TAR or advanced analytics vendor and methodology being deployed; (3) the quality control measures used to validate the results of the TAR methodology or similar advanced analytics, (4) any Documents, Document types, file types or other categories that the Producing Party proposes to exclude from the TAR process and the method of identifying such Documents to be excluded, (5) other disclosures that are reasonably necessary for the Requesting Party to evaluate the proposed TAR process.  To the extent a Producing Party proposes to use search terms to pre-cull ESI prior to application of TAR and/or advanced analytics, prior to doing so, they shall meet-and-confer with the Requesting Party regarding whether pre-culling is appropriate and if so, how it is to be applied.  If the Requesting Party and Producing Party are unable to agree on the TAR and/or advanced analytics technology and methods being proposed after meeting and conferring in good faith, the Requesting Party and Producing Party shall notify the Court of their unresolved dispute(s) and seek resolution by the Court or an appointed discovery master.

D.     **Electronic Production of Physical/Hard Copy Documents.**  Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in physical or hard copy form. Whenever practicable, documents that are located solely in physical hardcopy format are to be scanned and produced as text-searchable TIFFs imaged at 300 dpi in lieu of photocopy production in their physical form. If the Producing Party determines that it is

not reasonably possible, the Producing Party shall notify the Requesting Party. Bates numbers, confidentiality designations (in accordance with any protective order governing the case), and redactions (to the extent they are necessary) shall be burned into the image. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

       E.    **Production Media.** The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The Producing Party shall identify: (i) the Responding Party's name; (ii) the production date; and (iii) the Bates Number range of the materials contained on the Production Media.

       F.    **Color.** If a Receiving Party finds the black and white version of a document insufficient, the Receiving Party may request that the Producing Party provide a color image or native file of such document. The Producing Party will not unreasonably deny a request to

provide a color image and shall reproduce the document(s) in color, if reasonably accessible, within 5 business days of receiving the request. Color images should be produced as single page JPG files at 300dpi with JPG compression and a high-quality setting as to not degrade the original image.

G.    **Unique IDs.** Each TIFF image shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document.

H.    **Parent-Child Relationships.** Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

I.    **Redactions.** If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

J.    **Confidentiality Designation.** Responsive documents in TIFF format shall be stamped with the appropriate confidentiality designations in accordance with any protective order entered in the Litigation. Each responsive document produced in native format shall have its confidentiality designation indicated on its corresponding TIFF placeholder.

K.      **Metadata Fields.** To the extent reasonably possible, the Parties shall provide the system generated metadata fields (the "Production Fields") as set forth in **Appendix A**. If the Producing Party believes the Production Fields are not reasonably possible to produce, the Producing Party shall notify the Requesting Party within five business days of learning such information.

L.      **Text Files.** For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of documents originating in native format should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

M.      **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management system (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the Receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden. To avoid doubt, information will be considered reasonably usable when produced in CSV format (assuming proper text qualifiers), tab-delimited text format, Microsoft Excel format, or Microsoft Access format. Subject to reasonable requests by the Requesting Party, the Producing Party shall provide a description of each field produced, as well as database schema, codes, values and abbreviations used to populate a data field, and other information necessary for

the Requesting Party to understand the nature and function of the structured data source and the meaning of structured data produced. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

Should the meet and confer result in production of information from a database in an alternate, static format, such as a report or data table, any report/data table that is produced will be deemed authentic and an accurate representation of information included in the counterpart database. Moreover, a Party that withholds any part of a database as non-responsive may not later rely on such withheld information unless the Party produces such information to the other Party within a reasonable time.

  N. **Password Protected Files.** The Producing Party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

  O. **Embedded Documents.** Embedded ESI documents (e.g. a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix A. Related embedded documents will be produced within a continuous Bates range. The Parties agree that certain embedded documents (such as embedded logos, signatures, OLEObjects, images or pictures, and systems and/or container files (*e.g.*, OLE2, .bin, and similar files that hold embedded files but which do not contain user data)) need not be extracted. If the Producing Party determines that other embedded documents should not or cannot be extracted, the Producing Party shall notify the Requesting Party and the Parties will meet and confer to address any issues within three business days or as soon as reasonably possible thereafter.

P.      **Compressed Files.** Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files.

Q.      **Email and Attachments**.  Each email and its attachment(s) must be produced as separate documents, sequentially Bates stamped with the family relationship intact.

R.      **Replacement Productions.**  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

## VII.   THIRD-PARTY ESI

A.      A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Order and the order concerning confidentiality agreed and/or entered in this litigation with the subpoena and state that the Parties in the litigation have requested that third-Parties produce documents in accordance with the specifications set forth herein.

B.      The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-party.

C.      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

D.      Parties shall identify any third parties to which they have given notice of preservation and the date of that notice.

15

**VIII.        DEDUPLICATION**

A.        A Party is only required to produce a single copy of a responsive document. To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

B.        **Vertical Deduplication**. A Producing Party may de-duplicate ESI vertically by Custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

C.        **Horizontal Deduplication**. A Producing Party may de-duplicate ESI horizontally (globally) across the population of records, if the Producing Party discloses to the Requesting Party that it has deduplicated horizontally, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all Custodians who were in possession of a de-duplicated Document and the directory structure where the Custodian stored the de-duplicated Document must be identified in the Custodian, CustodianOther and CustodianOtherDirectory Metadata fields specified in **Appendix A**.  To ensure accuracy, the Custodian, CustodianOther and CustodianOtherDirectory Metadata fields must be captured by an automated process and cannot be populated using a manual process.  The aforementioned Metadata must be produced to the extent it exists.  In the event of a rolling production of documents or ESI items, the Producing Party shall provide an overlay load file with updated Custodian, CustodianOther and

CustodianOtherDirectory Metadata fields along with each production.  The Metadata overlay may contain a full refresh of data for the Custodian, CustodianOther and CustodianOtherDirectory fields or be a supplement to the information previously provided for the fields.   At the time of production, the Producing Party shall identify the overlay as a full refresh or a supplement.  A Metadata overlay file shall be either a full refresh overlay or a supplemental overlay but shall not contain a full refresh for one Metadata field and a supplement for the other Metadata field.

D.      The Parties recognize that a Producing Party using a centralized system (or "journaling") as a preservation and backup system for email may not possess certain Metadata, such as "CustodianOtherDirectory" and "Importance." Where documents are produced from such a centralized system, in the production cover letter the Parties shall, to the extent practicable, identify the centralized system in the "Source" Metadata field for the documents produced from such system, or identify by Bates rage which Documents are being produced from a centralized system.

E.      To the extent a Party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values.  Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. The resulting hash value for each item shall be reflected in the HashValue field specified in **Appendix A**.

F.      Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should

not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.

      G.      No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

      H.      Email threads are email communications that contain prior or lesser-included email communications.  A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. A Producing Party may not use e-mail threading to suppress prior-in-time emails from production; however, the Producing Party may use email threading as a review efficiency tool.

      I.      Hard-Copy Documents shall not be eliminated as duplicates of ESI.

## IX.    ASSERTIONS OF PRIVILEGE

      Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the parties agree that a Producing Party may withhold a document or redact portions of a document only if the document withheld or the portions redacted are protected by attorney-client privilege, the work-product doctrine or other applicable privilege, protection or immunity.

      A.      **Privilege Logs:**  Privilege logs shall be provided in Excel format and shall contain the following information**:**

          1.      a sequential number associated with each privilege log record;

          2.      the date of the document;

          3.      the Bates numbers of documents redacted;

4.      the identity of all persons who sent, authored, signed or otherwise prepared the document, to the extent reasonably ascertainable, and identification of which, if any, of them are attorneys;

5.      the identity of all persons designated as addressees or copyees, including identification of which, if any, of them, are attorneys;

6.      the title or subject of a document, to the extent the title does not reveal privileged or protected information;

7.      a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

8.      the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine, etc.).

B.      **Logging of Document Families:**  Each member of a document "family" (e.g., an email attaching a memorandum or other document) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be individually logged on the privilege log in succession following the redacted or withheld parent document.  For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member along with a general description of the produced family member(s).

C.      **Timely Production:**  Privilege logs shall be produced within 30 days following production of the Producing Party's first production volume and shall be supplemented within 30 days following each subsequent production where production occurs on a rolling basis, or by another date upon agreement of the Producing and Requesting Parties. For documents produced

prior to entry of this ESI Order, a privilege log for such productions shall be provided to the Requesting Party within thirty (30) days of entry of this ESI Order.

## X.    COST SHIFTING

The costs of production pursuant to this ESI Order shall be borne by the Producing Party. However, in agreeing to this ESI Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

SO ORDERED.

Dated: December 9, 2020
       New York, New York

_____
        ANALISA TORRES
    United States District Judge