**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Morgan Stanley Data Security Litigation* | Docket No.<br>1:20-cv-05914-AT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION...................................................................................... 1

CASE SUMMARY ................................................................................... 3

    A.    The Data Security Incidents............................................... 3

    B.    Procedural Posture .......................................................... 4

    C.    History of Negotiations .................................................... 5

SUMMARY OF SETTLEMENT ............................................................. 6

    A.    Settlement Class ............................................................... 6

    B.    The Settlement Benefits ................................................... 7

        1.    Monetary Relief ...................................................... 7

        a.    Automatic Benefit .................................................. 7

        b.    Additional Monetary Payments to Class Members ............................ 8

        2.    Ongoing Data Security Efforts and Enhancements............................ 10

    C.    Defendant's Payment of Notice and Administrative Costs ............................ 10

        1.    Notice .................................................................. 10

        2.    Claims, Objections, and Requests for Exclusion................................ 12

    D.    Attorneys' Fees, Costs, and Service Awards ................................... 14

ARGUMENT ........................................................................................... 14

I.    THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL .......................................................................... 14

    A.    The Preliminary Approval Legal Standard ................................... 15

    B.    The Settlement Is Procedurally Fair .......................................... 17

    C.    The Settlement is Substantively Fair.......................................... 18

        1.    The complexity, expense, and likely duration of litigation................ 18

        2.    The reaction of the class to the settlement ................................ 19

        3.    The stage of the proceedings and the amount of discovery completed ............................................................... 19

        4.    The risks of establishing liability and damages................................ 20

        5.    The risk of maintaining class action status through trial.................... 21

        6.    The ability of Defendant to withstand greater judgment.................... 22

        7.    The range of reasonableness of the settlement in light of the best possible recovery and attendant risks of litigation ...................... 23

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ....................... 24

    A.    The Requirements of Rule 23(a) Are Satisfied............................... 24

        1.    Numerosity............................................................... 24

        2.    Commonality ........................................................... 25

|  |  | 3. | Typicality ................................................................... | **25** |
|  |  | 4. | Adequacy of representation ..................................... | **26** |
|  | **D.** |  | **The Requirements of Rule 23(b)(3) Are Satisfied** ........................................... | **28** |
|  |  | 1. | **Common legal and factual questions predominate in this action** ...... | **28** |
|  |  | 2. | **A class action is the superior means to adjudicate Plaintiffs' claims** ........................................................... | **29** |
| **III.** | **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN** ............... | | | **30** |
|  | **A.** |  | **The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order** ........................................... | **32** |
| **VI.** | **CONCLUSION** ................................................................... | | | **33** |

Plaintiffs John and Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl and Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz (collectively, "Class Representatives"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement and Release (the "Settlement Agreement").[1]

## INTRODUCTION

The present case arises out of two separate data security incidents that Plaintiffs allege compromised the personal and private identifying information of approximately 15 million of Morgan Stanley's current and former clients. Plaintiffs, individually and on behalf of the Settlement Class (as defined below), filed suit against Morgan Stanley Smith Barney, LLC ("Morgan Stanley" or "Defendant" and, together with Plaintiffs, the "Parties"), alleging that Defendant failed to adequately protect their personal and private information in the decommissioning of retired information technology ("IT Assets") in 2016 and 2019. Morgan Stanley has denied liability and asserted various legal defenses to the claims.

The Parties immediately engaged in discovery which included document production, depositions, interrogatories and multiple third-party subpoenas. The Parties, while continuing discovery, agreed to mediate the claims and engaged the Honorable Diane M. Welsh (Ret)., who is widely respected and experienced in class action cases, as a mediator. Through mediation and extensive arms-length negotiations over a period of five months, the Parties have reached an

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Linda P. Nussbaum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Nussbaum Decl."), filed herewith as Exhibit A. Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement.

agreement that provides for significant monetary and equitable relief for the Settlement Class.[2] Morgan Stanley will establish a $60-million non-reversionary settlement fund for the benefit of the Settlement Class ("Settlement Fund" or "Fund") and will retain a third-party firm to continue the effort to locate and retrieve missing retired IT Assets. In connection with this Action and the Settlement, Class Counsel have reviewed the remedial measures previously implemented by Morgan Stanley. Defendant has already made substantial changes in relation to its data security practices in the wake of the Data Security Incidents, which Defendant has committed to maintain. SA 7.1. Morgan Stanley will separately bear the significant costs of notice and administration estimated to be $7 million. The Fund will be used to provide Settlement Class Members access to at least 24 months of fraud insurance services as an automatic benefit, without the need to file a claim. Additionally, every class member will have the opportunity to make a claim for up to $10,000 in reimbursement for out-of-pocket losses, as well as up to four hours in attested lost time at $25 per hour. Additional compensation for lost time, if documented, can also be claimed. Any excess monies in the Fund, after the payment of claims, attorneys' fees and expenses, and service awards, as approved by the Court, will be used to extend the fraud insurance services coverage for all Settlement Class Members.

Pursuant to the Settlement Agreement, Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Plaintiffs John and Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl and Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz as Class Representatives; (3) appoint Interim Co-Lead Counsel Jean S. Martin of Morgan & Morgan Complex Litigation Group and Linda P. Nussbaum of Nussbaum Law Group, P.C. as Class Counsel; (4) provisionally certify the

---

[2] *See* the Declaration of the Honorable Diane M. Welsh in support of the Settlement ("Welsh Decl."), filed herewith as Exhibit B.

Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, confirm that it is appropriate notice and that it satisfies due process and Rule 23, and direct notice to the Settlement Class; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation and to object to or exclude themselves from the Settlement.

## CASE SUMMARY

### A.        The Data Security Incidents

Morgan Stanley is a multinational investment bank and financial services company with offices in over 40 countries. The firm's clients include corporations, governments, institutions, and high net worth individuals. Morgan Stanley ranked No. 62 in the 2019 Fortune 500 list of the largest United States corporations by total revenue. Morgan Stanley, as part of its business operations, collects and maintains various types of personally identifiable information ("PII") from its individual account holders, including date of birth, social security numbers, home and work contact information, identity of spouses and children, and passport, banking, and credit card information.

Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of retired IT Assets containing the PII of over 15 million of its current and former clients. This unencrypted equipment was then re-sold, without being properly wiped of data to unauthorized third parties (collectively, the "Data Security Incidents").

Morgan Stanley first learned of the 2016 Data Security Incident in October 2017, when it was contacted by a third party who said he had bought used IT equipment from an internet vendor and had access to Morgan Stanley data. In 2020, after an investigation, the Office of Comptroller of Currency ("OCC") directed Morgan Stanley to provide notice of the Data Security Incidents to its potentially affected current and former clients. Morgan Stanley began distributing notice letters in July 2020. The action by the OCC resulted in a consent order stating that Morgan Stanley "failed

to effectively assess or address the risks associated with the decommissioning of its hardware."

The OCC further levied a regulatory fine of $60 million against Morgan Stanley. Notably, this

Settlement provides for a non-reversionary cash settlement fund for the benefit of Settlement Class

Members in the same amount as the OCC fine, $60 million, in addition to other very substantial

benefits.

### B.   Procedural Posture

After receiving notice that their PII may have been impacted by the Data Security Incidents,

Plaintiffs retained their respective counsel, and after investigation, Plaintiffs' Complaints were

filed. (Nussbaum Decl. ¶¶ 3-4). On July 29, 2020, Plaintiffs Sylvia Tillman, Richard Gamen,

Vivian Yates, Amresh Jaijee, and Cheryl Gamen brought suit against Defendant. (Nussbaum Decl.

¶3). Subsequently-filed complaints were then consolidated in the Southern District of New York

before this Court. (Nussbaum Decl. ¶ 4).

On September 17, 2020, the Court appointed Jean Martin of Morgan & Morgan and Linda

Nussbaum of Nussbaum Law Group, P.C. as Interim Co-Lead Counsel. (Nussbaum Decl. ¶4).

November 4, 2020, Plaintiffs filed a Consolidated Class Action Complaint, which Morgan Stanley

moved to dismiss. (Nussbaum Decl. ¶¶ 6, 10).

Pursuant to the Parties' stipulation, this Court adjourned the due date for a Consolidated

Amended Class Action Complaint ("CAC") to July 5, 2021, to allow the Parties to engage in

extensive party and third-party discovery and to attempt mediation. On July 5, 2021, Plaintiffs

filed their CAC, which reflected some of the information that had been uncovered in the preceding

months through discovery and investigation. The CAC is over 110 pages and references over 50

documents and depositions. The CAC is brought on behalf of Plaintiffs and "[a]ll individuals with

existing or closed Morgan Stanley accounts established in the United States whose PII was

divulged in the Data Security Incidents." (Nussbaum Decl. ¶12). Plaintiffs allege causes of action

including: (1) negligence; (2) gross negligence; (3) deceptive acts and practices in violation of

New York's General Business Law; (4) breach of fiduciary duty; (5) unjust enrichment; and (6) breach of confidence. The CAC sought compensatory damages, statutory damages, equitable relief for lost or diminished value of their PII, present and increased risk of identity theft, and out-of-pocket expenses and lost opportunity costs related to prevention or mitigation of unauthorized use of their PII, and such other relief as the Court deems just and proper. (Nussbaum Decl. ¶ 6).

The Parties continued to litigate, during which time Plaintiffs subpoenaed over a dozen third parties and took several depositions. On August 9, 2021, Defendant moved to dismiss Plaintiffs' CAC. Defendant's motion to dismiss was pending, as were additional party and third-party document discovery and depositions, when the Parties notified this Court on November 3, 2021 that a settlement had been reached in principle. (Nussbaum Decl. ¶¶ 13-16).

### C.     History of Negotiations

The Parties engaged in extensive early discovery and expert analysis prior to engaging in settlement negotiations. (Nussbaum Decl. ¶ 19). To facilitate their efforts, they agreed to use an experienced mediator and retired federal magistrate judge, the Honorable Diane M. Welsh. (Nussbaum Decl. ¶¶ 16, 19). Judge Welsh has extensive experience in class action mediation. (Welsh Decl. ¶ 4). On May 24, 2021, the Parties attended a full day mediation session in person with Judge Welsh. While the Parties made some progress, they continued to dispute several key factual and legal issues remained. (*See* Welsh Decl. ¶ 9). For the next several months, while the Parties continued to litigate, which included discovery from more than a dozen third parties, they continued to engage in the mediation process with Judge Welsh. (Welsh Decl. ¶ 10; Nussbaum Decl. ¶ 12).

On August 18 and August 23, 2021, the Parties participated in two full days of mediation, once again in person with Judge Welsh. Although the Parties came significantly closer to reaching an agreement, some issues were still outstanding. Over the next twelve weeks, the Parties continued litigating while also negotiating with the assistance of Judge Welsh. Ultimately the

Parties agreed, through a double-blind process, to a mediator's proposal that covered all material terms of the settlement. (Nussbaum Decl. ¶¶ 16, 22-24). A term sheet was executed on November 3, 2021, and the Parties began diligently drafting and finalizing the Settlement, Notice and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court.

## SUMMARY OF SETTLEMENT

### A.     Settlement Class

The settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) monetary relief; and (2) equitable relief in the form of business practice changes and efforts to retrieve additional missing IT devices. (Nussbaum Decl. ¶ 31). Consistent with the operative complaint, the Settlement provides for a Class of:

> All individuals with existing or closed Morgan Stanley accounts established in the United States who received the Notice Letters regarding the Data Security Incidents.[3]

(Settlement Agreement ¶1.31). The Class specifically excludes: "(i) Defendant; (ii) subsidiaries, parents, and affiliates of Defendant (iii) any directors of the entities covered by (i) and (ii) during the Class Period and members of their immediate families; (iv) any firm, trust, corporation, or other entity in which Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, and assigns of any such excluded persons or entities. Also excluded from the Class are those persons and entities who timely and validly request exclusion therefrom by 60 days after the Notice date." *Id*. Approximately 15 million individuals were notified of the Data Security Incidents.

---

[3]     As defined in the Consolidated Amended Class Action Complaint, the Data Security Incidents refer to Morgan Stanley's efforts in 2016 to decommission, wipe, and destroy certain technology assets, and further efforts in 2019 to decommission and dispose of additional technology assets.

### B.      The Settlement Benefits

The Settlement provides for both monetary and equitable relief. Morgan Stanley has agreed to pay $60 million in a non-reversionary cash Settlement Fund for the benefit of Settlement Class Members. (Settlement Agreement ¶¶1.34, 2.1, 6.1, 7.1). The Settlement Fund also will be used to pay any amounts approved by the Court for awards of attorneys' fees, costs, and expenses, service awards for the Class Representatives as approved by the Court, and escrow account tax liabilities and tax expenses. (Settlement Agreement ¶2.2). Morgan Stanley will also be responsible for payment of all reasonable costs of notice and administration in addition to the Settlement Fund, estimated to be $7 million. (Settlement Agreement ¶ 2.3). In addition to the business practice changes which Morgan Stanley has implemented and committed to maintain in the wake of the Data Security Incidents, Morgan Stanley has agreed to hire a third-party firm to continue the effort to locate and retrieve missing retired IT Assets for a period of 12 months. (Settlement Agreement 7.2).

### 1.      Monetary Relief

The $60 million non-reversionary Settlement Fund will provide several types of monetary relief to Settlement Class Members. As set forth below, one of these benefits will be provided on an automatic basis without the need for Settlement Class Members to file a claim. The Settlement also creates a claims process by which Settlement Class Members may file claims for out-of-pocket expenses and time spent related to the Data Security Incidents.

### a.      Automatic Benefit

Upon final approval of the Settlement, all of the approximately 15 million Settlement Class Members will be provided access to Aura's Financial Shield services ("Aura Financial Shield") for a period of at least 24 months from the Effective Date of the Settlement. (Nussbaum Decl. ¶ 31). This benefit will be provided with the Direct Notice as a link with an enrollment code.

(Nussbaum Decl. ¶ 31). The financial fraud insurance services provided by the Settlement are much more valuable than and not duplicative of the credit monitoring previously offered by Morgan Stanley; it focuses on protecting financial assets, freezing identity at 10 different credit bureaus including the three main credit bureaus, home and property title monitoring, dark web monitoring, credit freeze assistance, lost wallet protection, income tax protection and other services. (Nussbaum Decl. ¶ 31). This service is integrated with Early Warning Services to provide real-time monitoring of financial accounts. (Nussbaum Decl. ¶ 31). Financial Shield also carries a $1,000,000 policy protecting the subscriber. (Nussbaum Decl. ¶ 31). This service will notify consumers in near real-time if there is any change in a registered financial account (such as a credit card account, checking or savings account, or investment account), new signatory request, new account opening, wire transfer requests, and other events targeted by hackers and online thieves. (Nussbaum Decl. ¶ 31). Thus, this service provides expansive identity theft and fraud monitoring for Settlement Class Members. This service will be made available to all 15 million Settlement Class Members for a period of at least 24 months with the ability of Settlement Class Members to enroll at any point during the effective period of coverage. The Aura Financial Shield services provided for by the Settlement retail for approximately $135 per year per enrollee, a cost Class Members would bear but-for the Settlement Agreement. (Nussbaum Decl. ¶ 31).

### b.    Additional Monetary Payments to Settlement Class Members

The Settlement Fund will also be used to make payments to people who submit valid claims for "Out-of-Pocket Expenses" and/or up to four hours of "Lost-Time" incurred as a result of the Data Security Incidents. Settlement Class Members may submit a claim for both types of relief. Settlement Class Members may also submit a claim for additional documented "Lost-Time." (Settlement Agreement ¶¶ 4.1, 5.1).

Plaintiffs believe the $60 million fund will be more than ample to pay the claims of Settlement Class Members. However, if there are insufficient monies to pay all claims, claims for

out-of-pocket losses and lost time will be reduced on a pro rata basis. If monies remain in the Settlement Fund after the payment of all claims, attorneys' fees, costs, and expenses, and service awards to the Class Representatives, the remaining funds will be used to extend the coverage period for Aura's Financial Shield for all Settlement Class Members. (Settlement Agreement ¶ 6.1).

### (1) Lost Time

Settlement Class Members who spent time researching or remedying issues related to the Data Security Incidents may file a claim to receive reimbursement for their time. Each class member can claim up to four (4) hours of attested to time at $25 per hour. No separate documentation will be required. The lost time benefit simply requires a claimant's attestation that they spent up to four (4) hours related to the Data Security Incidents. (Settlement Agreement ¶¶ 4.1, 4.4).

### (2) Out-of-Pocket Losses

Another benefit available is reimbursement for Settlement Class Members' Out-of-Pocket Expenses, meaning actual, incurred costs or expenditures that are fairly traceable to the Data Security Incidents. Out-of-Pocket Expenses will be capped at $10,000 per individual and include, without limitation, unreimbursed losses relating to identity fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after July 1, 2020, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. (Settlement Agreement. ¶¶ 5.1, 5.3).

Settlement Class Members who spent more than four (4) hours researching or remedying issues related to the Data Security Incidents can document up to an additional five (5) hours of lost time at either $25 per hour, or if they missed work, at the rate of documented compensation, up to

$50 per hour. A claim for Documented Lost-Time must be filed as part of the claims for Out-of-Pocket Expenses, supported by documentation, and will be subject to the individual cap of $10,000 for Out-of-Pocket Expenses.[4] (Settlement Agreement ¶ 4.5).

## 2.    Ongoing Data Security Efforts and Enhancements

In addition to the monetary benefits described above, the Settlement Agreement also acknowledges Defendant's ongoing commitment to maintain certain enhancements and improvements to its security environment, which Class Counsel has reviewed in connection with this Settlement. (Settlement Agreement ¶ 7.1). In addition, a significant and unique piece of the proposed Settlement is Morgan Stanley's commitment to hire an experienced third-party to continue efforts to locate and retrieve missing retired IT Assets. (Settlement Agreement ¶ 7.2). These retrieval efforts will continue for a period of 12 months. The Parties will negotiate in good faith a protocol for these efforts, which shall include reporting of the results of this third-party firm's efforts to Class Counsel and Defendant's counsel quarterly and at the conclusion of the 12 month period. (Nussbaum Decl. ¶ 31C.1).

## C.    Defendant's Payment of Notice and Administrative Costs

### 1.    Notice

Notice to the Settlement Class and the costs of administration will be separately paid by Morgan Stanley. (Nussbaum Decl. ¶¶ 31B, 41). These substantial costs of approximately $7

---

[4]  Out-of-Pocket Losses are capped at $10,000 per person. To the extent valid claims for Out-of-Pocket Expenses and Attested Lost-Time collectively exceed the amount remaining in the Settlement Fund after payments for Aura Financial Shield, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, such claims for Out-of-Pocket Losses or Attested Time will be paid on a pro-rata basis. (Settlement Agreement ¶ 6.2).

To the extent valid claims for Out-of-Pocket Expenses and Attested Lost-Time collectively are less than the amount remaining in the Settlement Fund after payments for Aura Financial Shield, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, such excess funds shall be used to extend the duration of the Aura Financial Shield services provided to Class Members that enroll within 24 months of the Effective Date of the Settlement. (Settlement Agreement ¶ 6.1).

million will not reduce in any way the $60 million Settlement Fund or other benefits going to the Settlement Class. The Parties solicited bids and notice plan proposals from multiple vendors and propose Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Settlement Administrator") to provide notice and settlement administration, subject to Court approval. (Nussbaum Decl. ¶ 40). Epiq is a nationally recognized class action notice and administration firm that has designed a class notice plan for this case, which the Parties and Epiq believe is an effective plan. (*See* Declaration of Cameron Azari, Esq., Exhibit 3 to Settlement Agreement) ("Azari Decl."), describing the credentials of Epiq, and setting forth the proposed notice program (the "Notice Plan") relating to the Settlement here.

Within 45 days after the entry of the Preliminary Approval Order ("Notice Date"), and subject to the requirements of the Settlement Agreement and the Preliminary Approval Order, the Settlement Administrator will provide notice to the Settlement Class via publication in *The Wall Street Journal* and *Investor's Business Weekly*[5] and direct notice through first class mail or, if available, email. (Azari Decl. ¶¶ 16-20, 23) Notice will advise class members that devices have been recovered from third parties which contained PII of Morgan Stanley clients, including social security numbers and dates of birth, of account holders and beneficiaries, account and investment information, credit card numbers, and other personal information recorded by financial advisors, and that other missing devices have yet to be recovered. (Settlement Agreement, ¶ 9.5).

The Settlement Administrator will also be responsible for creating a Settlement Website and shall maintain and update the website throughout the claims period, with the forms of Short Form Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, the Consolidated Amended Complaint, and any other materials agreed upon or

---

[5] These publications were chosen due to projected reach to Settlement Class Members, many of whom are present and former private banking clients of Morgan Stanley.

requested by the Court. Settlement Class Members will be able to submit claim forms through the Settlement Website. (Settlement Agreement ¶ 10.1).

As part of the Settlement, the Parties also agreed that notice to the Class would include Publication Notice. (Azari Decl. ¶ 23). With the assistance of the Settlement Administrator, and subject to Court approval, the Parties have agreed that Notice will be published in *The Wall Street Journal* and *Investor's Business Weekly*. (Azari Decl. ¶ 23). The Publication Notice will mirror the substantive language approved by the Court in the Short Form Notice.

The Settlement Administrator will also create and maintain a toll-free help line with live operators to provide Settlement Class Members with additional information about the settlement. (Azari Decl. ¶ 25). The Settlement Administrator also will provide copies of the Long Notice and paper Claim Form, as well as this Settlement Agreement, upon request. (Azari Decl. ¶ 23).

### 2.    Claims, Objections, and Requests for Exclusion

The suggested timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, familiarize themselves with the benefits available through the Aura Financial Shield product, and decide whether they would like to opt-out of or object to the Settlement.

Settlement Class Members will have ninety (90) days from the commencement of the notice mailing to submit their claim form to the Settlement Administrator, either by mail or online. (Settlement Agreement ¶ 4.2). The Settlement Administrator has authority to assess the validity of claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Settlement Class Member the opportunity to cure the defect before rejecting the claim. (Settlement Agreement ¶ 10.2).

Any Settlement Class Member who wishes to opt-out of the Settlement will have until sixty (60) days after the commencement of Notice to provide written notice that they would like to be

excluded from the Settlement Class. (Settlement Agreement ¶ 9.8). Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. (Settlement Agreement ¶ 9.8). The written notice must clearly manifest a Settlement Class Member's intent to opt-out of the Settlement Class. (Settlement Agreement ¶ 9.8).

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement must do so in writing, and send their objection to the Settlement Administrator sixty (60) days from the date on which Notice commences. (Settlement Agreement ¶ 9.9). The written objection must include (i) the objector's full name and address; (ii) the case name and docket number; (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, copy of the objector's settlement notice, copy of original notice of one of the Data Security Incidents, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than 60 days from the Notice Date, to Proposed Settlement Class Counsel and counsel for Defendant. The objector or his or her counsel may also file Objections with the Court through the Court's ECF system, with service on the Parties made through the ECF system. (Settlement Agreement ¶ 9.9).

### D.      Attorneys' Fees, Costs, and Service Awards

By separate motion, Class Counsel will apply to the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund. Class Counsel will request attorneys' fees of no more than 33 1/3% of the Settlement Fund plus the reimbursement of actual, out-of-pocket expenses. (Settlement Agreement ¶ 12.1). A fee and expense petition will be filed with the Court at least 21 days in advance of the objection deadline.

Class Counsel will also apply to the Court for a service award for each Class Representative to be paid from the Settlement Fund. (Settlement Agreement ¶ 11.1). Since the litigation was commenced, Class Representatives have been dedicated and active participants. They investigated the matter prior to and after retaining counsel, participated in the plaintiff vetting process implemented by Class Counsel, reviewed and approved pleadings, kept in close contact with counsel to monitor the progress of the litigation, provided documents and responded to discovery requests, and reviewed and communicated with counsel regarding the Settlement. (Nussbaum Decl. ¶ 49).

Each Class Representative put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts. In view of these efforts, Class Counsel will separately petition the Court for approval of service awards in the amount of $5,000 for each of the Class Representatives. This amount is consistent with those approved in other data breach class action settlements.

### ARGUMENT

### I.      THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Class Counsel have worked very diligently in this litigation, engaging in extensive party and third-party discovery, independent investigation and expert analysis to reach a fair, reasonable and, adequate settlement. This Settlement was reached only after the motion to dismiss was fully

briefed, the Parties had mediated for three full days over a period of five months, and extensive discovery was taken, including party and third-party depositions, review of more than 3,200 documents produced by over a dozen third parties, and analysis of more than 31,000 documents produced by Morgan Stanley. In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken the uncertainties of litigation into account, as well as the risks and delays inherent in complex class action litigation. Class Counsel believe the proposed Settlement provides very significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. In comparing this Settlement to other data breach settlements, the benefits available to Settlement Class Members here are on the highest range of possibilities.

A.     **The Preliminary Approval Legal Standard**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) ("*Payment Card*"). In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014).

Under the December 1, 2018 amendments to Rule 23(e)(2), in weighing preliminary approval, the Court must consider whether: "(A) the class representatives and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the procedural analysis factors, and examine the conduct of the litigation of the negotiations leading up to the proposed settlement. Paragraphs (C) and (D) constitute the substantive analysis factors, examine "[t]he relief that the settlement is expected to provide to class members." *Payment Card*, 330 F.R.D. at 29. These "factors add to, rather than displace," the factors traditionally considered in the Second Circuit during the preliminary approval process. *Id.*

"Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Monzon v. 103W77 Partners, LLC*, 13-cv-5951-AT, 2014 WL 6480557 (S.D.N.Y. Oct. 15, 2014) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citations and quotations omitted); *accord Tart v. Lions Gate Entm't Corp.*, No. 14-cv-8004-AJN, 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley v. Midan Rest. Inc.,* No. 14-cv-1693-HBP, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016) (citation omitted).

The Second Circuit has recognized a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*"); *see also Hadel v. Gaucho LLC*, No. 15-cv-3706-RLE, 2016 WL 1060324, at *1 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

As demonstrated below, the proposed Settlement warrants preliminary approval because it is procedurally and substantively fair, and provides significant monetary and remedial relief.

## B.     The Settlement Is Procedurally Fair

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016). First, the negotiations were conducted at arms' length over a period of many months. (*See* Nussbaum Decl. ¶23). After months of negotiation, the Parties participated in three full days of in-person mediation with JAMS mediator the Honorable Diane M. Welsh (ret). The Parties continued to work remotely with Judge Welsh after in-person mediation and reached an agreement in principle. (Nussbaum Decl. ¶24). The negotiations were hard fought, and counsel for all Parties participated vigorously with competing agendas. (Nussbaum Decl. at ¶¶ 16, 19-25).

The settlement discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, consumer class actions. Experienced lawyers advocated for the interests of the Class throughout the negotiations, utilizing their combined, several decades experience of litigating class actions, including breach of privacy claims, to ensure the proposed Settlement serves the best interests of the Class. (*See* ECF No. 24-1 at 5-13 and 24-2; Nussbaum Decl. ¶¶26, 28).

Plaintiffs and Class Counsel very thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood

of success at trial and upon appeal. (Nussbaum Decl. at ¶ 26). As a result of this analysis, Class Counsel obtained an understanding of the strengths and weaknesses of the litigation. For the foregoing reasons, the Parties believe the Settlement Agreement is procedurally fair.

### C.    The Settlement is Substantively Fair

To demonstrate the substantive fairness of a settlement agreement, a party must satisfy the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). *Charron*, 731 F.3d at 247. The *Grinnell* factors have not been displaced by the 2018 amendments to Rule 23(e). *See Payment Card*, 330 F.R.D. at 29. The *Grinnell* factors are used to evaluate settlements at the final approval stage, and guide courts at the preliminary approval stage, at which Plaintiffs have a lower burden. Here, each factor supports preliminary approval.

### 1.    The complexity, expense, and likely duration of litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 WL 1274577, at *9 ("Most class actions are inherently complex[.]"). Should the Court decline to approve the proposed Settlement, the continuing litigation would be costly, complex, and time-consuming. There would undoubtedly be a contested class certification motion. Morgan Stanley would likely argue that damages could not be calculated on a class-wide basis. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although Plaintiffs are confident in their ultimate success in certifying a class, *see In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) (certifying class in a data breach case), *Smith v. Triad of Alabama, LLC*, No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (same), a positive ruling would most likely be challenged by a decertification motion and/or appeal.

Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data; whether the steps taken before and after the Data Security Incidents were reasonable; and the reliability of competing damages models, as well as the cost attributable to a data security breach and the time spent rectifying any exposure of personal data. Each step towards trial would be subject to Morgan Stanley's vigorous opposition. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

Moreover, Morgan Stanley would be expected to offer substantial defenses at trial concerning the applicability of various statutory and common law claims, including whether class members were injured and had standing, whether Defendant had a duty to preserve the security of Class Members' data, and whether any injury suffered by Class Members would be compensable under Plaintiffs' legal theories. Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.* For these reasons, this factor weighs strongly in favor of preliminary approval.

### 2. The reaction of the class to the Settlement

This *Grinnell* factor is premature at the preliminary approval stage. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of these [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). However, all of the Class Representatives approve of this proposed Settlement. Class Counsel will address this factor in the final approval papers.

### 3. The stage of the proceedings and the amount of discovery completed

The "stage of the proceedings" factor is concerned with "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted). To meet this requirement, "formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (citing *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)). It is appropriate for Plaintiffs to enter into a settlement after "Class Counsel [has] conducted extensive investigation into the facts, circumstances, and legal issues associated with this case[,]" particularly when the case is not one "that [is] likely to turn on facts initially in Defendant's sole possession." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113-VAB, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016).

Here, in addition to conducting extensive legal and factual research into the merits of their claims (and likelihood of protracted litigation), Plaintiffs have engaged in significant party and third-party discovery; reviewed and analyzed documents; interviewed and deposed witnesses; filed a lengthy amended complaint supported by facts and documents from discovery; conferred with experts and provided preliminary expert analysis and reports; exchanged mediation statements and presentations; briefed Defendant's motion to dismiss; and mediated on three separate occasions before Judge Welsh. (Nussbaum Decl. ¶¶ 6-8, 10-15, 17-20, 23-28). Due to this work, the depth of Plaintiffs' and Class Counsel's knowledge of the strengths and potential weaknesses of their claims are more than adequate to support the settlement.

### 4.  The risks of establishing liability and damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of

the outcome." *Banyai v. Mazur*, No. 00-cv-9806-SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531-FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sep. 23, 2014). In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F.Supp.3d 290, 303 (E.D.N.Y 2015).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Morgan Stanley continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Morgan Stanley will vigorously defend itself on the merits, at each stage of litigation and likely on appeal, as it already has in its motion to dismiss Plaintiffs' Consolidated Amended Complaint and which was still pending at the time the parties reached the proposed Settlement.

Most fundamentally, while Plaintiffs believe that Morgan Stanley had a duty to protect the security of Plaintiffs' private data and breached that duty by failing to implement reasonable security measures, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to Morgan Stanley's claims regarding the accessibility of the data Plaintiffs allege was compromised in the Data Security Incidents and regarding the calculations of damages. For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support preliminary approval.

### 5.   The risk of maintaining class action status through trial

The litigation settled before a ruling on class certification, and the certification requested herein is for settlement purposes only. While Plaintiffs believe that the Court would certify a litigation class, Morgan Stanley would zealously oppose the motion. Plaintiffs must meet the requirements, including proffering a suitable mechanism for calculating class-wide damages. While Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this proposed Settlement eliminates the unavoidable risk that they could not do so.

Furthermore, even if the Court were to certify a litigation class, the certification can be reviewed and modified at any time. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory"). Given the risks, this factor weighs in favor of preliminary approval. *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14-cv-1937-HBP, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015).

### 6.    The ability of Defendant to withstand greater judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps, Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Further, "Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted). Here, although Morgan Stanley may be able to withstand a greater judgment, the financial obligations the proposed Settlement impose on Morgan Stanley are substantial. In addition to creating the $60 million non-reversionary Settlement Fund, Morgan Stanley will pay for a third party to continue efforts to locate and retrieve missing IT devices, will pay approximately $7 million in notice and administration costs, and has already incurred expenses in implementing enhanced data security practices. This factor weights in favor of preliminary approval.

### 7. The range of reasonableness of the Settlement in light of the best possible recovery and attendant risks of litigation

The range-of-reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of recovery at trial. This factor "recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "the settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331-MHD, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)). Indeed, as recognized by the Second Circuit, because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the litigation is Plaintiffs' contention that Morgan Stanley violated its duty to Settlement Class Members by failing to undertake reasonable security measures, leading to the exposure of their personal and highly sensitive financial data. The remediation measures already undertaken by Defendant—*i.e.*, rectifying the errors that led to the Data Security Incidents, funding account monitoring and fraud insurance and funding efforts to continue to recover missing IT equipment—will prevent further harm. Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled—reimbursement of the Settlement Class Members'

losses of time and money—is significant relative to economic damages incurred. (Nussbaum Decl. ¶31).

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks, as articulated by Morgan Stanley in its motion to dismiss. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both Parties and the Court. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement is fair, adequate, and reasonable and provides an excellent result for the Settlement Class.

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of Rule 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229. 242 (2d Cir. 2012). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (i) the class is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law or fact common to the class (commonality); (iii) the claims and defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (iv) the representative parties will fairly and adequately protect the interests of the class (adequate representation). Fed. R. Civ. P. 23(a). The Settlement Class meets each prerequisite of Rule 23(a).

#### 1.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "a proposed class of more than forty members presumptively satisfies the numerosity requirement . . . ." *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (collecting cases). Here, the Settlement Class is estimated to be approximately 15 million people. (Nussbaum Decl. ¶¶6, 37).

### 2.      Commonality

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citations omitted). Plaintiffs need only show that their injuries stemmed from Defendant's "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015). Here, common questions include, but are not limited to, whether Morgan Stanley had a duty to protect Settlement Class Members' data and whether Morgan Stanley breached that duty. Resolution of this common question would require evaluation of the question's merits under a single objective standard, *i.e.*, "whether [Defendant] had a legal duty to adequately protect Settlement Class Members' personal information; . . . whether [Defendant] breached that legal duty; and . . . whether Plaintiffs and members of the class suffered injury as a result of [Defendant]'s failure to act." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 WL 3183651, at *3 (D. Md. July 15, 2019) (approving settlement in data breach case). Thus, commonality is satisfied.

### 3.      Typicality

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493-VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding."). Here, typicality is met because the same allegedly unlawful conduct by Morgan Stanley was directed at, or affected, Plaintiffs and the members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37. Each Plaintiff, like each Settlement Class Member, received a notice regarding the Data Security Incidents from Morgan Stanley. Their claims as both former and current Morgan Stanley clients are typical of the class. *See In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (finding typicality in data breach claim as to the settlement class "[b]ecause this claim revolves around [Defendant]'s conduct, as opposed to the characteristics of a particular class member's claim").

### 4. Adequacy of representation

Under Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class's representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement

Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly inadequate security measures and the same data breaches. For example, Plaintiff Blythe experienced identity theft. (CAC ¶ 283). Plaintiff Jaijee's Social Security number was used to fraudulently obtain her bank routing information. (CAC ¶ 316). The Nelson Plaintiffs experienced credit card fraud. (CAC ¶ 263). Plaintiff Shapouri also incurred unauthorized charges to her credit card. (CAC ¶ 337). These incidents are similar to the accounts of fraud and identity theft reported directly to Morgan Stanley after Settlement Class Members received the breach notice letter. (CAC ¶¶ 13, 23). Settlement Class Members also contacted Lead Counsel with reports of similar identity theft. (CAC ¶ 24).

With respect to the second requirement, in appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Co-Lead Counsel possess a long and proven track record of the successful prosecution of class actions, including data breach cases, and numerous appointments as class counsel. (*See* ECF No. 24-1 at 5-13 and 24-2; Nussbaum Decl. ¶33). The Court appointed Interim Co-Lead Counsel based on their qualifications and experience. (*See* ECF No. 26). Since then, Co-Lead Counsel have worked cooperatively and efficiently and have devoted substantial time and resources to this case. This work has included (1) investigating the Data Security Incidents; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing class members about their experiences; (4) preparing and filing two consolidated complaints; (5) taking party and third party depositions, and preparing for others that were being scheduled; (6) conducting party and third party discovery and document production and analysis; (7) conducting an extensive investigation into missing Morgan Stanley devices, including locating and retrieving one set of devices; (8) analyzing Morgan Stanley inventory records and detecting inventory irregularities which had caused

previous misidentification of devices by Morgan Stanley; (9) opposing the motion to dismiss; (9) preparing mediation materials and participating in mediation sessions; and (10) negotiating the proposed settlement and preparing the settlement documentation. (Nussbaum Decl. ¶¶ 3-30, 32-35, 40-44). Because Interim Co-Lead Counsel have demonstrated their commitment to litigating these claims, the Court should appoint them to serve as Class Counsel.

Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Class Counsel, are satisfied.

### D.      The Requirements of Rule 23(b)(3) Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.      Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted). Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management

problems" at trial drop out because "the proposal is that there be no trial." *Amchem Prods., 521 U.S.* at 620. As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart*, 2015 WL 5945846, at *4 (citation omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted).

Here, for settlement purposes, central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Morgan Stanley had a duty to the Class to prevent exposure of their private data and whether Morgan Stanley took reasonable actions to prevent the Data Security Incidents. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

### 2.    A class action is the superior means to adjudicate Plaintiffs' claims

Rule 23(b)(3) also requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3 (citation omitted). As a result of the

uncertainty of the cost to each class member of the potential exposure of their data, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation and recovery economically viable. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5. "Employing the class device here will not only achieve economies of scale for Class Members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 WL 4816134, at *3 (citations omitted). For all of the foregoing reasons, a class action is superior to individual suits. [6]

The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Court should preliminarily certify the Settlement Class.

## III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by

---

[6]    Granting preliminary approval of this Settlement and Settlement Class is consistent with rulings in other data breach security cases from districts across the United States. *See, e.g.*, *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re The Home Depot, Inc., Client Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *In re Target Corp. Client Data Sec. Breach Litig.*, 2017 WL 2178306 (D. Minn. May 17, 2017); *Cotter v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021); *In re Equifax Inc. Client Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F.3d 1247, 1281-82 (11th Cir. 2021); *In re Banner Health Data Breach Litig.*, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020); *In re Premera Blue Cross Client Data Sec. Breach Litig.*, 2019 WL 3410382 (D. Or. Jul. 29, 2019); *In re Countrywide Financial Corp. Client Data Sec. Breach Litig.*, 2010 WL 3341200 (W.D. Ky. Aug. 23. 2010); *In re Heartland Payment Systems, Inc. Client Data Sec. Breach Litig.*, 851 F.Supp.2d 1040 (S.D. Tex. 2012); *In re Sonic Corp. Client Data Sec. Breach Litig.*, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019); *In re Sony Gaming Networks and Client Data Sec. Breach Litig.*, 2014 WL 7800046 (S.D. Cal. Jul. 10, 2014).

reasonableness." *Visa*, 396 F.3d at 113 (citations omitted); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983). The Court has broad power over approving procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness imposed under the due process clauses in the U.S. Constitution. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members."). Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 Fed.Appx. 22, at *26 (2d Cir. 2014) (summary order).

Here, the proposed Notice Plan and related forms of notice meet the requirements of due process and Rule 23(e)(1)(B). Within five (5) days after the date of the Preliminary Approval Order, Morgan Stanley will provide the Settlement Class List to the Settlement Administrator. (*See* Settlement Agreement ¶ 9.6). Within 45 days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the Settlement Class. (Settlement Agreement ¶ 9.4). Notice shall be disseminated via First Class U.S. mail, postage prepaid, to all Settlement Class Members except that notice will be sent via e-mail to Class Members whose e-mail addresses are known. (Azari Decl. ¶¶ 18-20).

These proposed methods for providing notice are reasonable, given that they identify the Settlement Class Members with precision and Morgan Stanley has contact information for the vast majority of the Settlement Class Members. (Azari Decl. ¶¶ 11-13). The Supreme Court has consistently found that direct notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950). This notice will reach far beyond the minimum number of class members who must be reached in settlements. *See* Federal Judicial Center, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE (2010) at 3 ("It is reasonable to reach between 70-95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%"); Federal

Judicial Center, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3d Ed. 2010) at 27 (explaining the "reach" of a proposed class action notice plan is normally within a range of 70- 95%). Direct notice through mail and email will reach every, or nearly every, member of the class.

Substantively, Rule 23(c)(2)(B) requires, and the Notices of Settlement provide, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who timely requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114. The Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and describe in detail the monetary relief provided by the Settlement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members, Plaintiffs, and Class Counsel. They also plainly indicate the time and place of the final approval hearing, and explain the methods for objecting to, or opting out of the Settlement. They also provide contact information for Class Counsel. (*See* Settlement Agreement Ex. 4a and 4b).

### A. The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and  a

service award for the Class Representatives, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.634 (2011). Plaintiffs respectfully request that the final approval hearing be scheduled for 75 days after the commencement of the Notice Program.

Toward these ends, the Parties have provided the Court with a proposed order that provides for the following schedule:

| Event | Date |
| --- | --- |
| **Morgan Stanley Provides CAFA Notice required by 28 U.S.C. § 1715(b)** | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement |
| **Morgan Stanley Provides Notice to Class Counsel and the Court of Compliance with CAFA Requirements** | Within 10 days of providing notice to Appropriate Governmental Officials under CAFA |
| **Class Notice Program Commences** | Within 45 days after entry of this Preliminary Approval Order |
| **Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d)** | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| **Motion for Attorney's Fees, Reimbursement of Costs and Expenses, and Service Awards to be Filed by Class Counsel** | At least 21 days before the Objection Deadline |
| **Postmark Deadline for requests for Exclusion (Opt-Out) or Objections** | 60 days after Commencement of Notice Program |
| **Postmark/Filing Deadline for Filing Claims** | 90 days after Commencement of Notice Program |
| **Motion for Final Approval to be Filed by Class Counsel** | At least 14 days before the Final Approval Hearing |
| **Final Approval Hearing** | No earlier than 75 days after Commencement of Notice Program |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the Preliminary Approval Order.

Dated: December 31, 2021

Respectfully submitted,

**MORGAN & MORGAN**                         **NUSSBAUM LAW GROUP, P.C.**

By: */s/ Jean S. Martin*                    By: */s/ Linda P. Nussbaum*
Jean S. Martin                              Linda P. Nussbaum
Ryan J. McGee                               Susan R. Schwaiger
Francesca Kester                            1211 Avenue of the Americas, 40th Fl.
201 N. Franklin Street, 7th Floor           New York, NY 10036
Tampa, Florida 33602                        (917) 438-9189
(813) 223-5505                              lnussbaum@nussbaumpc.com
jmartin@ForThePeople.com                    sschwaiger@nussbaumpc.com
rmcgee@ForThePeople.com
fkester@ForThePeople.com

*Co-Lead Counsel for Plaintiffs and Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on December __, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

By: <u>/s/ Linda P. Nussbaum</u>
Linda P. Nussbaum
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036
(917) 438-9189
lnussbaum@nussbaumpc.com
