# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

*In re Morgan Stanley Data Security Litigation*

Docket No.
1:20-cv-05914 (AT)

---

## DECLARATION OF LINDA P. NUSSBAUM
## IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Linda P. Nussbaum, pursuant to 28 U.S.C § 1746, hereby declares as follows:

1.      I am the Managing Director of Nussbaum Law Group, P.C., Court-appointed interim co-lead class counsel in this action, along with Jean S. Martin of Morgan & Morgan ("Interim Lead Counsel").

2.      I submit this Declaration in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement with Morgan Stanley Smith Barney LLC ("Morgan Stanley" or "Defendant").

## I.      Procedural History

3.      On July 29, 2020, the initial class action complaint (the *Tillman* action) was filed against Defendant Morgan Stanley in the U.S. District Court for the Southern District of New York, alleging that Morgan Stanley had failed to properly protect personal information in accordance with its duties, had inadequate data security, and delayed notifying potentially impacted individuals.  The complaint alleged that Morgan Stanley failed to properly dispose of its unencrypted retired information technology ("IT") equipment containing the Personal Identifying Information ("PII") of current and former clients.  Two separate data security incidents were alleged, one in 2016 and another in 2019 (collectively, the "Data Security

Incidents"). Plaintiffs allege that in the Data Security Incidents Morgan Stanley failed to protect the PII of Plaintiffs and the Class and failed to properly dispose of its retired IT equipment. Plaintiffs also allege that Morgan Stanley failed to timely notify its affected clients and failed to adequately address the data security issues that ensued. Morgan Stanley was fined $60,000,000 by the Office of the Comptroller of Currency ("OCC") pursuant to a consent decree, for its failures associated with the Data Security Incidents. The OCC also directed Morgan Stanley to provide notice of the Data Security Incidents to its former and current clients. *See* ECF No. 1.

4.     Subsequent to the filing of the initial *Tillman* complaint, several related actions were also filed in this District. On September 17, 2020, the Honorable Analisa Torres consolidated eight putative class action lawsuits into *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-cv-05914-AT (S.D.N.Y.), and appointed Linda P. Nussbaum of Nussbaum Law Group, P.C. and Jean S. Martin of Morgan & Morgan as Interim Co-Lead Counsel to represent Plaintiffs and putative Class Members. *See* ECF No. 26.

5.     On October 8, 2020, this Court held an Initial Pretrial Conference and on October 13, 2020 set a schedule for amended pleadings, motions and expert discovery (ECF No. 35).

6.     On November 4, 2020, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 39). The consolidated complaint further described the alleged wrongful conduct of Morgan Stanley and set forth causes of action including: negligence, gross negligence, New York Gen. Bus. Law § 349, breach of fiduciary duty, unjust enrichment, and breach of confidence. The class definition included over 15 million people who received data breach notifications from Morgan Stanley. Plaintiffs' damages that were alleged included lost or diminished value of their PII, present and increased risk of identity theft, and out-of-pocket

expenses and lost opportunity costs related to prevention or mitigation of unauthorized use of their PII.

7.     On December 2, 2020, pursuant to this Court's rules and schedule, Defendant filed its pre-motion letter (ECF No. 41) with respect to the Amended Complaint.  The letter outlined Defendant's arguments for dismissal of the complaint.

8.     On December 9, 2020, Plaintiffs responded to Defendant's pre-motion letter (ECF No. 45).  Plaintiffs' letter addressed all the arguments raised by Morgan Stanley and cited controlling legal authority supporting Plaintiffs' Article III standing as to all claims. Plaintiffs also responded to Morgan Stanley's specific additional arguments as to their causes of action for negligence, invasion of privacy, unjust enrichment, and state statutory claims, including N.Y. Gen. Bus. Law § 349.

9.     On December 10, 2020, this Court set a schedule for briefing on Defendant's motion to dismiss (ECF No. 46).

10.     On January 14, 2021, Morgan Stanley filed its first motion to dismiss the Consolidated Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 47).  Prior to the Court deciding Defendant's first motion to dismiss, Interim Lead Counsel filed a Second Amended Class Action Complaint described below.

11.     The parties then entered into a series of stipulations extending the time for Plaintiffs to file a Consolidated Amended Complaint and for Defendant to refile its motion to dismiss to allow the parties to engage in additional discovery and mediation.  (ECF Nos. 56, 57, 58).  The Court denied the requests and ordered that the Consolidated Amended Complaint be filed on July 5, 2021.  (ECF No. 59).

12.     On July 5, 2021, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Operative Complaint") on behalf of a putative class of "[a]ll individuals with existing or closed Morgan Stanley accounts established in the United States whose PII was divulged in the Data Security Incidents."  This complaint 119 pages and contained allegations supported by references to documents that had been produced by Morgan Stanley or had been subpoenaed from over a dozen third parties. The Operative Complaint reflected extensive discovery from Morgan Stanley and evidence adduced from deposition testimony and Plaintiffs' ongoing investigation (ECF No. 60).

13.     On August 9, 2021, Morgan Stanley filed its second motion to dismiss the Operative Complaint in its entirety (ECF Nos. 63, 64).

14.     On September 15, 2021, Plaintiffs filed their opposition to Morgan Stanley's motion to dismiss (ECF No. 68).  Plaintiffs' opposition answered and refuted each of Defendant's legal and factual arguments.

15.     On September 29, 2021, Defendant filed its Reply Memorandum in support of its motion to dismiss (ECF No. 70).

16.     On November 3, 2021, after three full days of mediation conducted over a six-month period before the Honorable Diane M. Welsh (Ret.) (the "Mediator"), the parties accepted a Mediator's proposal, through a double-blind process, entered into a Term Sheet resolving this matter and jointly informed the Court of the settlement reached (ECF No. 76).

**II.     Discovery**

17.     Plaintiffs engaged in extensive party and third-party fact discovery and preliminary expert work over the course of this litigation.

18.     Interim Lead Counsel has investigated the facts relating to the Data Security Incidents with the assistance of consultants in cybersecurity and identity theft damages; analyzed the evidence adduced during pretrial discovery; and researched the applicable law with respect to the Settlement Class's claims against Defendant and the potential defenses thereto, including in connection with briefing of the motions described above.

19.     Interim Lead Counsel engaged in extensive document discovery serving numerous document requests and interrogatories on Morgan Stanley.  Interim Lead Counsel reviewed and analyzed approximately 31,000 documents produced by Morgan Stanley, comprising more than 160,000 pages.

20.     Plaintiffs also subpoenaed more than a dozen third parties, including Stroz Friedberg LLC, a company that provided digital forensic services respecting the Data Security Incidents for Morgan Stanley; PriceWaterhouseCoopers, another consultant employed by Morgan Stanley; Triple Crown Maffucci Moving and Storage , a vendor hired by Morgan Stanley to handle the IT asset decommissioning; IBM, the legacy vendor which owned certain data centers decommissioned by Morgan Stanley; Anything IT and Krusecom, companies that handled and resold the decommissioned IT assets; McDonald Hopkins, LLC, Krusecom's counsel and Sidley Austin LLP, law firms engaged by Morgan Stanley in the wake of the Data Security Incidents; Flashpoint, a company engaged by Morgan Stanley to search the dark web; and others.  In total, over 3,300 pages of documents were produced by third parties; one third party was deposed; and Interim Lead Counsel were scheduled to take and prepared for the depositions of two additional third parties at the time of Settlement.

21.     Interim Lead Counsel, through their independent investigation, also located additional Morgan Stanley devices and alerted Morgan Stanley as to the existence and location

of such devices, which facilitated Morgan Stanley's retrieval of them. Both parties independently had the recovered devices forensically examined and analyzed. The forensic analysis indicated that these recovered devices contained the personal information of Morgan Stanley's clients including names, addresses, account information, Social Security numbers, dates of birth, and other personal information. Plaintiffs' expert was able to locate the personal information of one of the named Plaintiffs on these recovered devices.

### III.     Settlement Negotiations

22.     In November 2020, the Mediator was engaged by the Parties. The Court was so informed in a joint letter by the parties. *See* ECF No. 40 (Joint Letter to Court) and ECF No. 51 (Stipulation and Order).

23.     The Parties engaged in three arm's-length mediation sessions on May 24, 2021, August 18, 2021, and August 23, 2021, under the direction of former United States Magistrate Judge Diane M. Welsh.

24.     The first all-day mediation session took place on May 24, 2021, in person, at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") in New York City. Prior to the mediation, Plaintiffs shared with the Mediator and Morgan Stanley a draft of its Second Consolidated Class Action Complaint and all supporting documents. In addition, the Parties exchanged lengthy comprehensive mediation statements. The mediation was attended by Interim Lead Counsel for the class, other counsel for Plaintiffs, and Morgan Stanley's outside and in-house counsel. During the session, counsel made multiple presentations regarding various factual and legal issues.

25.     The case did not resolve at the first mediation session, and counsel agreed to continue discovery, exchange additional material and schedule additional mediation sessions.

26.     On August 18, 2021, the second mediation session took place, prior to which the Parties exchanged supplemental mediation statements.  This was also an all-day session, in person, conducted at the offices of Paul Weiss in New York City.  The second session was attended by Interim Lead Counsel, other counsel for Plaintiffs, and Morgan Stanley's outside and in-house counsel, and insurance representatives.  Interim Lead Counsel and Plaintiff' forensic expert made presentations at the second session.

27.     The Parties continued to share expert, legal and investigative materials and on August 23, 2021, the third and final mediation session took place in person at the New York City offices of Paul Weiss.  The same participants appeared for both sides, and the Parties made presentations and continued their arms-length negotiations.  The third session was productive and substantially narrowed issues, but no resolution was reached.  The Parties agreed to continue their good-faith exchanges and negotiations.

28.     On October 17, 2021, after multiple telephonic conferences with the Parties, Judge Welsh made a mediator's proposal to resolve this class litigation, which was accepted by both sides, and a term sheet was subsequently executed.

29.     After weeks of additional negotiations, on November 3, 2021, Interim Lead Counsel and Morgan Stanley executed term sheet, the substance and terms of which were used to develop and execute a binding settlement agreement (annexed hereto as Exhibit 1) (the "Settlement Agreement").  The Declaration of Hon. Diane M. Welsh in Support of the Settlement is being filed contemporaneously with Plaintiffs' Motion.

30.     When the Settlement Agreement was executed, Interim Lead Counsel and their experts had access to sufficient information to allow them to conclude that the proposed settlement was fair, reasonable and adequate.

31.   The Settlement Agreement provides for the following benefits for the Class:

**A.     The Common Fund**

A sixty-million-dollar non-reversionary common fund will be established which will

provide the following relief to Class Members:

1.     Aura's Financial Shield fraud monitoring and insurance services for at

least 24 months of coverage and available to all Class Members without

the need to file a Claim Form. Financial Shield focuses on protecting

financial assets, freezing identity at 10 different credit bureaus including

the three main credit bureaus, home and property title monitoring, dark

web monitoring, credit freeze assistance, lost wallet protection, income tax

protection and other services. This service is integrated with Early

Warning Services to provide real-time monitoring of financial accounts.

This service will notify consumers in near real-time if there is any change

in a registered financial account (such as a credit card account, checking

or savings account, or investment account), new signatory request, new

account opening, wire transfer requests, and other events targeted by

hackers and online thieves. The Financial Shield services provided for by

the Settlement retail for approximately $135 per year per enrollee.

2.     Out-of-pocket expense reimbursement up to $10,000 per Class Member

for all actual, incurred costs or expenditures that are fairly traceable to the

Data Security Incidents, such as unreimbursed costs related to identity

fraud or identity theft, attorneys' fees, accountant fees, fees for credit

repair services, costs associated with freezing or unfreezing credit with

any credit reporting agency, credit monitoring, and related miscellaneous expenses related thereto, such as postage and mileage.  The Class Member is required to submit receipts or some other form of documentation for this reimbursement.

3.     Attested lost time reimbursement of up to four (4) hours a person at $25 per hour for time the Class Member spends researching or remedying issues related to the Data Security Incidents.  No separate documentation will be required for a Class Member to submit a claim for this reimbursement.  The Class Member merely makes an attestation under penalty of perjury on the claim form of the hours spent and brief description of what activities they performed. This reimbursement is in addition to the reimbursement of out-of-pocket expenses.

4.     An additional five (5) hours of lost time reimbursement compensation at either $25 per hour or higher, if there was additional lost time at work, so long as such additional hours are supported by documentation.  This additional reimbursement for Class Members who spent more than four (4) hours researching and remedying issues related to the Data Security Incidents is subject to the $10,000 cap for out-of-pocket expenses.

5.     To the extent valid claims are less than the amount remaining in the settlement fund after the payments for the benefits described above are spent, such excess funds will be used to extend the term of the Aura Financial Shield Services available to all Class Members beyond the original termination date for as long as possible.

6.      No portion of the $60 million common fund shall revert or be repaid to Morgan Stanley.

**B.      Costs of Notice and Administration:**

1.      In addition to the Common Fund, Morgan Stanley shall pay the reasonable costs of notice and claims administration.

**C.      Business Practice Changes:**

1.      Morgan Stanley, coordinating with Class Counsel, will engage a third-party firm to continue efforts to search for and to retrieve additional missing Morgan Stanley IT devices for a reasonable period of time at the expense of Morgan Stanley.

2.      Morgan Stanley has made and will maintain substantial business practice changes related to the protection of information security to safeguard Settlement Class Members' personally identifiable information.

**IV.      Settlement Process**

32.      Negotiations leading to the settlement were entirely non-collusive and strictly at arm's-length.  And, as discussed above, prior to reaching the Settlement, Class Representatives and Lead Counsel were very well informed regarding the strengths and weaknesses of Class Representatives' claims.  Lead Counsel had the benefit of information from its investigation and analyses, regulatory investigations, experts and extensive party and third-party discovery.

33.      At all times while negotiating and executing the proposed Settlement Agreement, Class Representatives were represented by Lead Counsel, who have significant experience prosecuting federal class action claims.  Defendant was represented by Paul, Weiss, Rifkind,

Wharton & Garrison LLP, a leading international law firm that has significant experience defending federal class actions.

34.     The negotiations were undertaken on behalf of Plaintiffs and the Class by counsel who are well versed in complex litigation and, more specifically, consumer class actions. These experienced lawyers advocated for the interests of the Settlement Class throughout negotiations, utilizing their combined experience of litigating consumer class actions, including breach of privacy claims, to ensure the proposed settlement serves the best interests of the Settlement Class.

35.     Plaintiffs and Interim Lead Counsel thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, the likelihood of success at trial and upon appeal.

36.     Interim Lead Counsel and Plaintiffs have agreed to settle the claims asserted in *In re Morgan Stanley Data Security Litigation* pursuant to the terms and provision of the Settlement Agreement after considering (a) the substantial benefits that Settlement Class Members will receive from the Settlement; (b) the uncertain outcome and attendant risks of litigation; (c) the evaluation of the merits of the claims and defenses; (d) the likelihood the Court would certify the litigation for class treatment; (e) the likelihood of success at trial and upon appeal; (f) the delays inherent in litigation; and (g) the desirability of permitting the settlement of this litigation to be consummated as provided by the terms of the Settlement Agreement.

37.     Based upon information received from Morgan Stanley during the course of this litigation, Interim Lead Counsel understands that there are approximately 15 million geographically dispersed persons and entities that fall within the Settlement Class definition.

38.     Interim Lead Counsel also intend to seek attorney's fees of no more than one-third of the value of the benefits to the class created by the settlement plus reimbursement of expenses incurred in litigating the Action.

39.     Class Representatives will request up to $5,000 in Service Awards per person for their efforts in prosecuting this Action. Since the litigation was commenced, Class Representatives have been dedicated and active participants. They investigated the matter prior to and after retaining counsel, participated in the plaintiff vetting process implemented by Interim Lead Counsel, reviewed and approved pleadings, kept in close contact with counsel to monitor the progress of the litigation, provided documents and responded to discovery requests, and reviewed and communicated with counsel regarding the Settlement

## V.     Notice Plan

40.     The parties solicited bids and notice plan proposals from multiple vendors. The proposed settlement administrator, Epiq Class Action & Claims Solutions, Inc., developed the proposed Notice Plan in coordination with counsel for the Parties.

41.     As provided in Settlement Agreement, reasonable costs of notice and administration will be borne by Morgan Stanley in addition to the settlement amount.

42.     The Affidavit of Cameron Azari, Esq. describes the proposed Notice Plan, which is consistent with notice plans that courts have repeatedly approved in prior data breach class actions.

43.     A copy of the proposed Notice Plan is annexed as Exhibit 4 to the Settlement Agreement.

44.     A proposed Claim Form, prepared and recommended by Interim Lead Counsel, is submitted as Exhibit 6 to the Settlement Agreement. Forms of the Notices of Settlement are

attached as Exhibit 5 to the Settlement Agreement. Interim Lead Counsel developed the Claim

Form and Notices with defense counsel and Epiq to ensure they were written in a fashion that

will be readily understood by Class Members.  Interim Lead Counsel recommend approval of the

Notices and Claim Form as fair and reasonable.

45.     Jean Martin and I, who the Court appointed as Interim Lead Counsel, now are

proposed by Plaintiffs to be appointed as Class Counsel. As set forth in the Motion for

Appointment of Interim Lead Counsel and accompanying documents (ECF 24), Proposed Class

Counsel have a wealth of experience in litigating  complex class action lawsuits. We have

decades of experience leading and managing class actions and complex litigation like this,

extensive knowledge of all applicable case law and sufficient resources to commit to the class.

Our firms have the financial resources and possess superior investigatory financial, and litigation

resources to represent the class effectively and efficiently.  Proof of the firms' resources and

capabilities lies in their multi-decade track records of successfully prosecuting complex actions

requiring tremendous commitments of financial and litigation resources.

46.     Proposed Class Counsel have invested considerable time and resources into the

prosecution of the litigation and possess a long and proven track record of the successful

prosecution of class actions, including data breach cases, and numerous appointments as class

counsel.

47.     Based upon their investigation and pretrial discovery as set forth above, Proposed

Class Counsel have concluded that the terms and conditions of the Settlement Agreement are

fair, reasonable and adequate to Plaintiffs and Settlement Class Members and are in their best

interests.

48.     The consideration that Morgan Stanley has agreed to pay is well within a range that Proposed Class Counsel believe may be found to be fair, reasonable, and adequate at final approval. In fact, on a per-class-member analysis, it is one of the highest settlements ever achieved in a data breach litigation for a class of this size.

49.     Plaintiffs John and Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl and Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz seek to be appointed as Representative Plaintiffs to represents a class of persons whose claims arise from the Morgan Stanley Data Security Incidents.   Plaintiffs have given their time and accepted their responsibilities admirably, participating actively in this litigation as required.

50.     It is my opinion that the Settlement achieves a result which is more than fair, reasonable and adequate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 31, 2021                     __/s/*Linda P. Nussbaum*_____
New York, New York                                        Linda P. Nussbaum

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In re Morgan Stanley Data Security Litigation*

Case No. 1:20-CV-05914-AT

The Honorable Analisa Torres

**<u>SETTLEMENT AGREEMENT AND RELEASE</u>**

## TABLE OF CONTENTS

**Page**

1.   DEFINITIONS ................................................................................................... 2

2.   SETTLEMENT AMOUNT ................................................................................ 7

3.   FRAUD INSURANCE SERVICES .................................................................. 9

4.   ATTESTED LOST TIME ................................................................................. 10

5.   OUT-OF-POCKET EXPENSES ....................................................................... 11

6.   RESIDUE OF SETTLEMENT AMOUNT ....................................................... 13

7.   BUSINESS PRACTICE COMMITMENTS ....................................................... 13

8.   PRELIMINARY APPROVAL ........................................................................... 13

9.   CLASS NOTICE, OPT-OUTS, AND OBJECTIONS ....................................... 14

10.  DUTIES OF SETTLEMENT ADMINISTRATOR ............................................ 15

11.  SERVICE PAYMENTS .................................................................................... 17

12.  ATTORNEYS' FEES AND COSTS .................................................................. 18

13.  RELEASE ........................................................................................................ 19

14.  EFFECTIVE DATE AND TERMINATION ...................................................... 19

15.  NO ADMISSION OF WRONGDOING ............................................................ 21

16.  REPRESENTATIONS ..................................................................................... 21

17.  NOTICE .......................................................................................................... 22

18.  MISCELLANEOUS PROVISIONS ................................................................. 23

Doc#: US1:15414139v3

## **EXHIBITS**

LIST OF ACTIONS..................................................................................................EXHIBIT 1

PRELIMINARY APPROVAL ORDER .....................................................................EXHIBIT 2

NOTICE PLAN .......................................................................................................EXHIBIT 3

NOTICES.................................................................................................................EXHIBIT 4

      SHORT FORM ...........................................................................................EXHIBIT 4a

      LONG FORM .............................................................................................EXHIBIT 4b

CLAIM FORM .........................................................................................................EXHIBIT 5

Doc#: US1:15414139v3

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is made as of December 31, 2021, by and between, as hereinafter defined, (a) Settlement Class Representatives on behalf of themselves and the Settlement Class, and (b) Morgan Stanley Smith Barney LLC ("Defendant" or "Morgan Stanley," and together with the Settlement Class Representatives and Settlement Class, the "Parties"). This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted in the litigation styled *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT (S.D.N.Y.).

**RECITALS**

WHEREAS, in July 2020 and June 2021, Morgan Stanley sent notice letters to customers whose personally identifiable information may have been on decommissioned devices involved in certain "data security incidents" described in the notice letters ("Data Security Incidents");

WHEREAS, after announcement of the Data Security Incidents, multiple putative class action lawsuits were filed against Morgan Stanley in the United States District Court for the Southern District of New York, alleging that Defendant failed to properly protect personal information in accordance with its duties, had inadequate data security, and delayed notifying potentially impacted individuals;

WHEREAS, on September 17, 2020, the Honorable Analisa Torres consolidated eight putative class action lawsuits in *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT (S.D.N.Y.), and appointed Linda Nussbaum of Nussbaum Law Group, P.C. and Jean Martin of Morgan & Morgan, P.A. as interim Class Counsel to represent Plaintiffs and putative class members;

WHEREAS, Class Counsel filed an Amended Class Action Complaint *In re Morgan Stanley Data Security Litigation*, and Defendant moved to dismiss;

WHEREAS, prior to the Court deciding Defendant's first motion to dismiss, Class Counsel filed a Second Amended Class Action Complaint ("CAC") in *In re Morgan Stanley Data Security Litigation*, and Defendant moved to dismiss the CAC;

WHEREAS, the Parties engaged in extensive fact discovery and preliminary expert work over the course of this litigation;

WHEREAS, the Parties engaged in three arm's-length mediation sessions on May 24, 2021, August 18, 2021, and August 23, 2021 under the direction of former United States Magistrate Judge Diane M. Welsh.

WHEREAS, the Parties also engaged in additional mediation communications by telephone and e-mail, both directly and through Judge Welsh, between August 24, 2021 and November 3, 2021**;**

Doc#: US1:15414139v3

WHEREAS, Class Counsel has investigated the facts relating to the Data Security Incidents with the assistance of consultants in cybersecurity, identity theft, and damages, analyzed the evidence adduced during pretrial discovery, and researched the applicable law with respect to the Settlement Class's claims against Defendant and the potential defenses thereto, including the motions described above, reviewing approximately 30,000 documents produced by Defendant and approximately 3,500 documents produced by third parties, and taking a Rule 30(b)(6) deposition of Defendant and the deposition of one third-party witness, while having scheduled and prepared for others;

WHEREAS, Defendant denies any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, any infirmity in the defenses that the Defendant has asserted or would assert, or to the requirements of Federal Rule of Civil Procedure 23 and whether Plaintiffs satisfy those requirements;

WHEREAS, based upon their investigation and pretrial discovery as set forth above, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to Plaintiffs and Settlement Class Members and are in their best interests, and have agreed to settle the claims asserted in *In re Morgan Stanley Data Security Litigation* pursuant to the terms and provision of this Agreement after considering (a) the substantial benefits that Settlement Class Members will receive from the Settlement, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the settlement of this litigation to be consummated as provided by the terms of this Agreement; AND

WHEREAS, it is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below;

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

## 1.   DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings indicated:

1.1   "Action" or "Actions" means all the actions listed in **Exhibit 1**, which have been filed in, transferred to, or otherwise assigned to the Court and included in coordinated or consolidated pretrial proceedings as part of *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT (S.D.N.Y.).

1.2   "Administrative Expenses" means the expenses incurred by the Settlement Administrator in implementing the Notice Plan, providing Notice to the Settlement Class, locating Settlement Class Members, determining the

eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Amount.

1.3 "Agreement" or "Settlement Agreement" means this Settlement Agreement. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.4 "Attested Lost Time" means compensation to Settlement Class Members as set forth in Section 5.

1.5 "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.6 "Claim Form" means the form Settlement Class Members submit (either in paper form or via the Settlement Website) to claim Out-of-Pocket Expenses and/or Attested Lost Time, attached hereto as **Exhibit 5**.

1.7 "Class Counsel" means Linda P. Nussbaum and Jean Martin, as well as their respective firms, Nussbaum Law Group, P.C. and Morgan & Morgan.

1.8 "Court" means the United States District Court for the Southern District of New York.

1.9 "Defendant" means Morgan Stanley Smith Barney LLC, the defendant identified in the CAC filed in *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT (S.D.N.Y.).

1.10 "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 14.

1.11 "Final Approval Order and Judgment" means an order and judgment that the Court enters after a Final Fairness Hearing, which finally approves the Settlement Agreement and dismisses all claims against Defendant with prejudice.

1.12 "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

1.13 "Fraud Insurance Services" means the services described in Section 3.

1.14 "Individual" means an individual or legal entity or their respective successors or assigns.

1.15 "Net Settlement Amount" means the amount of funds that remain of the Settlement Amount after funds are paid from or allocated for payment from the Settlement Amount for the following: (i) Taxes as described in Section

Doc#: US1:15414139v3

2.10, (ii) Service Payments approved by the Court, (iii) attorneys' fees and costs approved by the Court, (iv) Fraud Insurance described in Section 3, and (v) Out-of-Pocket Expenses and/or Attested Lost Time described in Sections 4 and 5.

1.16 "Notice" means notice of the proposed class action settlement to be provided to Settlement Class members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement, substantially in the forms attached hereto as **Exhibit 4**.

1.17 "Notice Date" means the last date on which Notice is provided to Settlement Class Members.

1.18 "Notice Letters" means the notices sent by Morgan Stanley in July 2020 and June 2021 regarding the Data Security Incidents.

1.19 "Notice Plan" means the settlement notice program developed by the Settlement Administrator substantially in the form attached hereto as **Exhibit 3**, as approved by the Court.

1.20 "Out-of-Pocket Expenses" means actual costs or expenditures that were incurred by a Settlement Class Member, are supported by documentation, and are fairly traceable to the Data Security Incidents alleged in this Action, as set out in Section 5. Reasonable documentation may include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. Out-of-Pocket Expenses will include, without limitation, unreimbursed losses relating to identity fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after July 1, 2020, through the date of claim submission; and related miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

1.21 "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Defendant.

1.22 "Person" means an individual or legal entity or their respective successors or assigns.

1.23 "Personal Information" means names, dates of birth, account numbers, Social Security numbers, addresses, phone numbers, email addresses, employment information, and other sensitive personally identifiable information.

1.24 "Plaintiff" means a person who was named as a plaintiff in any complaint filed in one of the Actions or in *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT.

Doc#: US1:15414139v3

1.25   "Preliminary Approval Order" means an order by the Court that preliminarily certifies a Settlement Class, approves this Agreement, including but not limited to the forms and procedure for providing notice to the Settlement Class, establishes a procedure for Settlement Class Members to object to or opt-out of the Settlement, and sets a date for the Final Fairness Hearing.

1.26   "Qualified Settlement Fund" means the account described in Section 2.4.

1.27   "Released Claim" means any claim that was or could have been asserted in any of the Actions, as well as any claim, cause, liability, right, entitlement, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—related to or arising from any of the facts alleged in any of the Actions.

1.28   "Service Payments" means compensation awarded and paid to Settlement Class Representatives in recognition of their role in this litigation, as set forth in Section 11.

1.29   "Settlement" means the settlement of the Actions by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.30   "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., the notice and claims administrator retained to administer the Settlement.  Defendant shall pay the reasonable costs of notice and claims administration separate and apart from the Settlement Amount.

1.31   "Settlement Class" means all Individuals with existing or closed Morgan Stanley accounts established in the United States who received the Notice Letters regarding the Data Security Incidents.  Excluded from the Class are: (i) Defendant; (ii) the subsidiaries, parents, and affiliates of Defendant; (iii) any directors of the entities covered by (i) and (ii) during the Class Period and members of their immediate families; (iv) any firm, trust, corporation, or other entity in which Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, and assigns of any such excluded persons or entities. Also excluded from the Class are those persons and entities who timely and validly request exclusion therefrom by 60 days after the Notice date. Notwithstanding Defendant's agreement to this definition of the Class for purposes of the Settlement, Defendant denies that a class could or should be certified in this Action if the Settlement is not consummated.

1.32   "Settlement Class Member" means a member of the Settlement Class.

1.33 "Settlement Class Representatives" means Plaintiffs named in the CAC filed in *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT:   John Nelson, Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl Gamen, Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz.

1.34 "Settlement Amount" means Sixty Million United States Dollars ($60,000,000.00) and any interest on or other income or gains earned while such amount is held in the Qualified Settlement Fund.

1.35 "Settlement Website" means a website established by the Settlement Administrator to provide information about the Settlement and permit the submission of claims. At a minimum, the following information shall be posted on the Settlement Website: the Second Consolidated Amended Complaint; this Settlement Agreement; Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; Short Form Notice; Long Form Notice; Claims Form with the ability to electronically submit the Claims Form; and, after filing, Plaintiffs' Motion for Attorneys' Fees and Costs and Service Payments, and Plaintiffs' Motion for Final Approval.

1.36 "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Amount, including, without limitation, any taxes that may be imposed upon Defendant or their counsel with respect to any income or gains earned by or in respect of the Settlement Amount for any period while it is held in the Qualified Settlement Fund; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Amount that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Amount (including without limitation, expenses of tax attorneys and accountants).

1.37 "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or have reason to believe exists in his or her favor as of the Effective Date, even if such claim, if he or she knew or had reason to believe existed, might have affected his or her decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, causes of action, and/or benefits conferred by any federal law or any law of any state of the United States, or principle of common law or otherwise, including any law or principle that is similar, comparable, or equivalent to Cal. Civ. Code § 1541, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

1.38     Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 2.  SETTLEMENT AMOUNT

2.1     Defendant agrees to deposit the Settlement Amount into a Qualified Settlement Fund within fifteen (15) Business Days of the Court's decision granting preliminary approval to the Settlement.

2.2     As further described in this Agreement, the Settlement Amount shall be used by the Settlement Administrator to pay for:

     (a)     the Taxes described in Section 2.10;

     (b)     Fraud Insurance Services as described in Section 3;

     (c)     Attested Lost Time as described in Section 4;

     (d)     Out-of-Pocket Expenses as described in Section 5;

     (e)     Service Payments award by the Court, as described in Section 11; and

     (f)     Attorneys' fees and costs approved by the Court, as described in Section 12.

2.3     Defendant agrees to pay reasonable Administrative Expenses separate and apart from the Settlement Amount, and no portion of the Settlement Amount shall be withdrawn or used to pay for Administrative Expenses.

2.4     The Qualified Settlement Fund shall be an account established at a financial institution approved by Class Counsel and Defendant and, pursuant to Section 2.9, shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468B-1, *et seq.* The Parties agree that the Settlement Amount is intended to be a maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation §

1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Amount and paying from the Settlement Amount any Taxes owed with respect to the Settlement Amount. The Parties agree that the Settlement Amount shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the Settlement Amount as a qualified settlement fund from the earliest date possible.

2.5     No amounts from the Settlement Amount may be withdrawn from the Qualified Settlement Fund unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Settlement Administrator shall provide Class Counsel and Defendant with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Qualified Settlement Fund before the Effective Date at least five (5) Business Days prior to making such withdrawal or payment.

2.6     The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Amount to Settlement Class Members pursuant to this Agreement.

2.7     The Settlement Administrator is responsible for communicating with Settlement Class Members regarding the distribution of the Settlement Amount and amounts paid under the Settlement.

2.8     All funds held in the Qualified Settlement Fund relating to the Settlement shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to Settlement Class Members or otherwise disbursed pursuant to this Agreement and/or further order of the Court.

2.9     Any funds in the Qualified Settlement Fund in excess of U.S. $250,000 shall be invested in short term United States Agency or Treasury Securities, repurchase agreements collateralized by such instruments, or a mutual fund invested solely in such instruments, and/or deposit and similar interest-bearing subject to Federal Depository Insurance Corporation protections, and shall collect and reinvest all earnings accrued thereon. Any funds held in the Qualified Settlement Fund in an amount of less than U.S. $250,000 may be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of U.S. $250,000 are invested. Funds may be placed in a noninterest-bearing account as may be reasonably necessary during the check clearing process.

2.10    All Taxes relating to the Settlement Amount shall be paid out of the Settlement Amount, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Amount shall indemnify and hold harmless the Parties and their counsel for

Doc#: US1:15414139v3

Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

2.11   The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Amount.

2.12   Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state and local tax consequences to him, her or it of the receipt of funds from the Settlement Amount pursuant to this Agreement.

2.13   Defendant and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Amount; (iii) the formulation, design or terms of the disbursement of the Settlement Amount; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Amount; (v) any losses suffered by, or fluctuations in the value of the Settlement Amount; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Amount or the filing of any returns. Defendant also shall have no obligation to communicate with Class Members and others regarding amounts paid under the Settlement.

2.14   The Settlement Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Amount; (iii) the formulation, design or terms of the disbursement of the Settlement Amount; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Amount; (v) any losses suffered by, or fluctuations in the value of the Settlement Amount; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Amount or the filing of any returns.

3.   **FRAUD INSURANCE SERVICES**

3.1   The Settlement Administrator shall use a portion of the Settlement Amount to obtain twenty-four (24) months of Fraud Insurance Services, beginning on the Effective Date of the Settlement, to be provided by Aura and offered

Doc#: US1:15414139v3

to Settlement Class Members. Aura will provide "Aura's Financial Shield" services to all Settlement Class Members who enroll.

3.2     The Notice shall describe generally the nature of Fraud Insurance Services and will be posted on the Settlement Website pursuant to Section 1.35 of this Settlement Agreement, and described on the website or web page of Aura pursuant to Section 3.4, below. More specific information regarding the account monitoring and other services provided by Aura's Financial Shield will accompany the Direct Notice in a cover letter agreed to by the Parties. The cover letter will also contain a unique redemption code for Settlement Class Members to use to enroll in Aura Financial Shield.

3.3     Pursuant to Section 10 below, through the cover letter accompanying the Direct Notice, the Settlement Administrator shall send to each Settlement Class Member a unique activation code to be used to activate the Fraud Insurance Services via Aura's website. Fraud Insurance Services enrollees may activate Fraud Insurance Services for a period of twenty-four (24) months from the Effective Date of the Settlement. Aura shall provide Fraud Insurance Services to all Fraud Insurance Services enrollees who timely activate those services.

3.4     On or before the Notice Date, Aura shall establish a dedicated website or web page which provides instructions on how to enroll in and activate the Fraud Insurance Services, and sets forth a general description of the nature of the Fraud Insurance Services to be provided as part of this Settlement.

3.5     The Settlement Administrator shall within five (5) Business Days after the Effective Date pay Aura from the Settlement Amount the full amount due for the Fraud Insurance Services.

3.6     In accordance with Section 6.2 below, to the extent valid claims for Out-of-Pocket Expenses and Attested Time collectively are less than the amount remaining in the Settlement Amount after payments for Aura's Financial Shield, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, such excess funds shall be used to extend the duration of the Financial Shield services provided to Class Members that enroll within twenty-four (24) months of the Effective Date of the Settlement.

## 4.     ATTESTED LOST TIME

4.1     Settlement Class Members who spent time researching or remedying issues related to the Data Security Incidents can receive reimbursement upon an attestation that their actions were taken in response to the Data Security Incidents ("Attested Lost Time"). No separate documentation will be required. Claims made for Attested Lost Time can be made in addition to claims for reimbursement for Out-of-Pocket Expenses.

Doc#: US1:15414139v3

4.2     Settlement Class Members may request reimbursement of Attested Lost Time by submitting a Claim Form electing Attested Lost Time to the Settlement Administrator no later than ninety (90) days after the Notice Date.

4.3     The Settlement Administrator shall verify that each person who submits a Claim Form selecting Attested Lost Time (i) is a Settlement Class Member, and (ii) attests that they spent time researching or remedying issues related to the Data Security Incidents and that their actions were taken in response to the Data Security Incidents. Each Claim Form that meets these requirements shall be deemed a valid claim for Attested Lost Time. No Settlement Class Member may have more than one valid Claim Form for Attested Lost Time. Ambiguities on the face of the Claim Form shall be resolved by the Settlement Administrator. For deficiencies, the Settlement Administrator shall ask the Settlement Class Member to cure the deficiency, and in doing so, may use its discretion to determine the most efficient and effective means of communicating with the Settlement Class Member, whether by email, telephone, or mail. Disputes with respect to any Claim Form shall be resolved by the Settlement Administrator.

4.4     Subject to the limitation set forth in Section 6.2, each Settlement Class Member who submits a valid Claim Form electing Attested Lost Time shall receive a payment equal to up to four (4) hours at twenty-five U.S. dollars ($25) per hour.

4.5     Settlement Class Members who spent more than four (4) hours researching or remedying issues related to the Data Security Incidents can claim up to an additional five (5) hours of lost time at either twenty-five U.S. dollars ($25) per hour, or if they lost time at their employment, at the rate of documented compensation, up to fifty U.S. dollars ($50) per hour ("Documented Time"). Claims for Documented Time shall be filed as part of claims for Out-of-Pocket Expenses, must be supported by documentation, not including self-prepared documentation, and will be subject to the individual cap for Out-of-Pocket Expenses, as detailed below in Section 5.

## 5.     OUT-OF-POCKET EXPENSES

5.1     Settlement Class Members may seek payment of Out-of-Pocket Expenses by submitting a Claim Form (either in paper form or on the Settlement Website) to the Settlement Administrator accompanied by an attestation regarding the Out-of-Pocket Expenses incurred, and documentation sufficient to show the claimant's actual, incurred costs or expenditures that are fairly traceable to the Data Security Incidents alleged in this Action. This shall include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. Out-of-Pocket Expenses can include, without limitation, unreimbursed losses relating to identity fraud or

identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after July 1, 2020, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

5.2     The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member and shall have the sole discretion and authority to determine whether and to what extent a Claim Form reflects valid Out-of-Pocket Expenses actually incurred that are fairly traceable to the Data Security Incidents. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Expenses is deficient, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member thirty (30) days to cure the deficiencies. The Settlement Administrator shall have the sole discretion and authority to determine whether the Settlement Class Member has cured the deficient claim such that it reflects valid Out-of-Pocket Expenses actually incurred that are fairly traceable to the Data Security Incidents.

5.3     Out-of-Pocket Expenses for preventative measures, such as obtaining credit monitoring services or credit freezes, shall be deemed fairly traceable to the Data Security Incidents if they were incurred within ninety (90) days of the Notice Letters and the Settlement Class Member attests that they were incurred in response to the Notice Letters. Out-of-Pocket Expenses for unreimbursed losses related to identity theft, falsified tax returns, or other alleged wrongdoing (collectively "Misconduct"), or for attempting to remedy Misconduct, shall be deemed fairly traceable to the Data Security Incidents if (i) the Misconduct occurred in 2016 or thereafter, (ii) the Settlement Class Member attests that he or she believes the Misconduct is connected to the Data Security Incidents, and (iii) the Misconduct involved possible misuse of the type of Personal Information accessed in the Data Security Incidents (i.e., name, date of birth, Social Security Number, and account information).

5.4     Subject to the limitation set forth in Section 6.2, each Settlement Class Member who submits a Claim Form for valid Out-of-Pocket Expenses shall receive a payment equal to the lesser of (i) the amount of the Settlement Class Member's valid Out-of-Pocket Expenses or (ii) $10,000.00.

5.5     Valid Claims for reimbursement for Out-of-Pocket Losses and/or Attested Time shall be issued in the form of a check mailed and/or an electronic payment as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

Doc#: US1:15414139v3

Settlement checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Settlement Class Member reminding him/her of the deadline to cash such check.

6.     **RESIDUE OF SETTLEMENT AMOUNT**

6.1     No portion of the Settlement Amount shall revert or be repaid to Defendant after the Effective Date. Any residual funds remaining in the Settlement Amount after all the payments, expenses, and costs have been paid or reserved for shall be used to extend the Fraud Insurance Services beyond the original termination date for as long as possible**.**

6.2     To the extent valid claims for Out-of-Pocket Expenses and Attested Time collectively exceed the amount remaining of the Settlement Amount after payments for Aura Financial Shield Services, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, such claims for Out-of-Pocket Expenses or Attested Time will be paid on a pro-rata basis.

7.     **BUSINESS PRACTICE COMMITMENTS**

7.1     In connection with this Action and the Settlement, Class Counsel have reviewed the remedial measures implemented by Morgan Stanley. The parties acknowledge that Defendant has already made substantial changes in relation to its data security practices in the wake of the Data Security Incidents, which Defendant has committed to maintain. At the Court's request, Defendant is prepared to submit further information regarding these measures for *in camera* review.

7.2     The Parties will negotiate in good faith a protocol for a third-party firm to continue the NetApp retrieval effort for a period of 12 months. Subject to the approval of Class Counsel, which shall not be unreasonably withheld, Morgan Stanley will select and pay for this third-party firm. The parties agree that the court will not be asked to appoint such a firm or establish any sort of monitorship over this process; however, the court will be advised of this aspect of the settlement and asked to approve this benefit as part of the overall settlement. The negotiated protocol for these retrieval efforts shall include reporting of the results of this third-party firm's efforts to Class Counsel and Defendant's counsel quarterly and at the conclusion of the 12 month period.

8.     **PRELIMINARY APPROVAL**

8.1     Promptly upon the execution of this Agreement, Settlement Class Representatives and Class Counsel will file an uncontested motion for

preliminary approval of the Settlement with the Court. Contemporaneously with or as part of that motion, Settlement Class Representatives and Class Counsel will move for certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3). Defendant reserves the right to contest any motion to certify a class for any purpose other than settlement of the Actions.

8.2    Class Counsel shall apply to the Court for entry of the Preliminary Approval Order attached hereto as **Exhibit 2**. The Preliminary Approval Order shall include approval of the form of notice provided to Settlement Class Members.

## 9.    CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

9.1    All costs for notice to the Settlement Class Members and claims administration shall be paid by Morgan Stanley, separately from the Settlement Fund.

9.2    Notice shall not be distributed or disseminated until after the Court enters the Preliminary Approval Order.

9.3    The Settlement Administrator is responsible for distributing and disseminating the Notice in accordance with the Notice Plan, **Exhibit 3** hereto.

9.4    No later than forty-five (45) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall commence the Notice and establish the dedicated Settlement Website.

9.5    Notice will advise Settlement Class Members that devices have been recovered from third parties which contained Morgan Stanley customer Personal Information, including Social Security numbers and dates of birth, of account holders and beneficiaries, account and investment information, credit card numbers, and other Personal Information and that other devices that may contain such Personal Information have yet to be recovered.

9.6    Defendant shall provide the Settlement Administrator with the names, last known mailing address, and last known e-mail addresses of Settlement Class Members, to the extent reasonably available, no later than five (5) Business Days after the date on which the Court enters the Preliminary Approval Order. To the extent that Morgan Stanley has reasonably available names or other identifying information about Settlement Class Members, but not mailing or email addresses, those names and other identifying information shall also be provided to the Settlement Administrator for use in verifying the identity of Settlement Class Members to whom a notice is not sent, but who respond to publication notice.

Doc#: US1:15414139v3

9.7     Class Counsel shall provide the Settlement Administrator with the names, last known mailing address, and last known email addresses of Settlement Class Representatives and any other putative class member who has reported updated address information to Class Counsel, no later than five (5) Business Days after the date on which the Court enters the Preliminary Approval Order.

9.8     The Notice shall explain the procedure for Settlement Class Members to opt-out and exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) calendar days after the Notice Date. Each written request for exclusion must set forth the name of the individual seeking exclusion and can only request exclusion for that one individual.

9.9     The Notice shall explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Court no later than sixty (60) calendar days after the Notice Date. The written objection must include: (i) the objector's name, address, telephone number, and personal signature; (ii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iii) a statement indicating the basis for the objector's belief that he or she is a member of the Settlement Class (to the extent the objector did not receive Class Notice); (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;  and, (v) a statement whether the objector intends to appear at the Final Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number. The Notice will also state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Section waives the right to object or to be heard at the Final Fairness Hearing and shall be forever barred from making any objection to the Settlement.

9.10    Morgan Stanley will cause the Settlement Administrator to serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after this Agreement is filed with the Court.

## 10.    DUTIES OF SETTLEMENT ADMINISTRATOR

10.1    The Settlement Administrator shall perform the functions as are specified in this Agreement and its Exhibits, including, but not limited to, overseeing administration of the Settlement Amount; providing Notice to Settlement Class Members via U.S. mail and email; effecting publication Notice and a media plan; establishing and operating the Settlement Website; administering the claims processes; and distributing payments for Out-Of-Pocket Expenses, including Documented Time, and Attested Lost Time according to the processes and criteria set forth herein.

Doc#: US1:15414139v3

10.2   The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement and the Notice Plan attached hereto as **Exhibit 3**, include:

a.   Obtaining from Defendant, pursuant to Section 9.7, the names, last known mailing addresses, and last known e-mail addresses, to the extent reasonably available, of Settlement Class Members for the purpose of sending Notice to Settlement Class Members;

b.   Obtaining updated addresses for Settlement Class Members through the National Change of Address operated by the United States Postal Service;

c.   Effecting the Notice Plan in accordance with the procedures set forth in Section 9;

d.   Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

e.   Establishing and maintaining the Settlement Website that, among other things, allows Class Members to submit claims electronically;

f.   Establishing and maintaining a dedicated phone number staffed with live operators that allows Class Members to contact the Settlement Administrator with questions about the Settlement;

g.   Working with Aura to receive and send unique activation codes;

h.   Responding to any mailed or emailed Settlement Class Member inquiries within a reasonable amount of time, but no later than five (5) business days;

i.   Processing all written notifications of exclusion from the Settlement Class;

j.   Providing weekly reports and, no later than ten (10) days after the deadline for Settlement Class Members to exclude themselves from the Settlement, provide a final report to Class Counsel and Defendant's counsel that summarizes the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information as requested by Class Counsel and Defendant's counsel;

k.   In advance of the Final Fairness Hearing, preparing affidavits to submit to the Court that: (i) attest to implementation of the Notice Plan in accordance with the Preliminary Approval Order; and (ii) identify each Settlement Class Member who timely and properly

Doc#: US1:15414139v3

provided written notification of exclusion from the Settlement Class;

l.      Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members, pursuant to criteria set forth in Sections 4, 5, and 6;

m.      Pursuant to Sections 3 hereto, within thirty (30) days after the Effective Date, email notice to Settlement Class Members who have signed up to receive such notice that the Settlement has received final approval and enrollment for Fraud Insurance Services may begin;

n.      Pursuant to Sections 4, 5, and 6, within sixty (60) days after entry of the Final Approval Order and Judgment or thirty (30) days after the Effective Date, whichever is later, and as soon as practicable provide monetary payment, either electronically or by U.S. Mail, to Settlement Class Members for Out-of-Pocket Expenses and/or Attested Lost Time;

o.      Providing weekly reports and a final report to Class Counsel and Defendant's counsel that summarize the number of claims since the prior reporting period, the total number of claims received to date, the number of any claims approved and denied since the prior reporting period, the total number of claims approved and denied to date, and other pertinent information as requested by Class Counsel and Defendant's counsel; and

p.      Performing any function related to Settlement administration at the agreed-upon instruction of both Class Counsel and Defendant's counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Sections 4, 5, and 6.

## 11.   SERVICE PAYMENTS

11.1   Settlement Class Representatives and Class Counsel may seek awards of Service Payments to the Settlement Class Representatives. Any requests for such awards must be filed at least twenty-one (21) days before the deadline for filing objections to the Settlement. Defendant agrees not to oppose requests for such Service Payments to the extent they do not exceed $5,000 per Settlement Class Representative.

11.2   The Settlement Administrator shall pay the Service Payments approved by the Court to the Settlement Class Representatives from the Settlement Amount. Such Service Payments shall be paid in the amount approved by the Court five (5) Business Days after Defendant gives the Settlement Administrator written notice (with a copy to Plaintiffs) that the Effective Date has occurred. Defendant shall give the Settlement Administrator

17

written notice that the Effective Date has occurred within three (3) Business Days of the Effective Date occurring.

11.3   In the event the Court declines to approve, in whole or in part, the payment of the Service Awards in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Service Awards shall constitute grounds for cancellation or termination of this Agreement.

## 12.   ATTORNEYS' FEES AND COSTS

12.1   Class Counsel will apply to the Court for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Amount plus expenses to be paid from the Settlement Amount. Defendant shall take no position on Class Counsel's application for an award of attorneys' fees and expenses. Defendant shall be responsible for its own attorneys' fees in connection with this Action.

12.2   The Settlement Administrator shall pay the attorneys' fees and costs awarded by the Court to Class Counsel from the Settlement Amount. Such attorneys' fees and costs shall be paid in the amount approved by the Court five (5) Business Days after Defendant gives the Settlement Administrator written notice (with a copy to Plaintiffs) that the Effective Date has occurred; provided, however, that such attorneys' fees and costs may be paid after entry of the Final Approval Order and Judgment and before the Effective Date upon Class Counsel's execution of an agreement approved by Defendant, such approval not to be unreasonably withheld, pursuant to which Class Counsel agree to be jointly and severally obligated to repay the attorneys' fees and costs, plus interest at the rate earned by the Settlement Amount, to Defendant if the Effective Date does not occur. Such agreement shall provide that repayment shall be made within ten (10) Business Days of Class Counsel receiving written notice that Defendant is terminating the Settlement Agreement because the Effective Date has not occurred. Each Class Counsel's law firm shall agree in any such agreement that the law firm and its partners and/or shareholders are subject to the jurisdiction of this Court for the purpose of enforcing the provisions of such agreement.

12.3   Defendant shall have no responsibility for, interest in, or liability whatsoever with respect to any payment or allocation of attorneys' fees and costs to Class Counsel under this Agreement.

12.4   The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees and/or costs. In the event the Court declines to approve, in whole or in part, the payment of the attorneys' fees and/or costs in the amounts requested, the remaining provisions of this Agreement shall remain in full force and

18

effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Attorneys' fees and/or costs shall constitute grounds for cancellation or termination of this Agreement.

## 13.   RELEASE

13.1   As of the Effective Date, all Settlement Class Representatives and all Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, beneficiaries, administrators, predecessors, successors, and/or any other person purporting to claim on behalf of any Settlement Class Representatives or Settlement Class Members, shall expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims, except for claims relating to the enforcement of this Agreement, against (i) Defendant, (ii) any of Defendant's current, former, or future parents, affiliates, subsidiaries, agents, representatives, directors, officers, employees, insurers, successors, assigns, and attorneys, and (iii) any current, former, or future parents, affiliates, subsidiaries, agents, representatives, directors, officers, employees, insurers, successors, assigns, and attorneys of any person or entity identified in part (ii).

13.2   The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts, and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises or representations made by anyone other than those embodied herein.

## 14.   EFFECTIVE DATE AND TERMINATION

14.1   The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

(a)   Defendant and Class Counsel execute this Settlement Agreement;

(b)   The Court enters the Preliminary Approval Order, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit 2**;

(c)   Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)   The Court enters the Final Approval Order and Judgment, without material change to the Parties' agreed-upon proposed final approval order and judgment; and

(e)     The Final Approval Order and Judgment has become final because (i) the time for appeal, petition, rehearing or other review has expired, or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

14.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order, or the Final Approval Order and Judgment does not become final as specified in Section 14.1(e), Defendant may at its sole discretion terminate this Agreement on five (5) Business Days written notice to Class Counsel. For avoidance of doubt, Defendant may not terminate the Agreement while an appeal from an order granting final approval is pending.

14.3    In the event the Agreement is terminated pursuant to Sections 14.2, the Settlement Administrator, within ten (10) Business Days of receiving written notification of such event from counsel for Defendant, shall pay to Defendant an amount equal to the Settlement Amount together with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income, and (ii) any Attorneys' Fees and Costs paid prior to termination pursuant to Section 12.2 (which shall be repaid to Defendant by Class Counsel as specified in the agreement referenced in Section 12.2).

14.4    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Settlement Class Members, shall be deemed to have reverted to their respective status in the Actions immediately prior to the execution of this Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated:

(a)     any Court orders preliminarily or finally approving certification of the Settlement Class and any other orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion;

(b)     this Agreement shall become null and void, and the fact of this Settlement and that Defendant did not oppose certification of any class under this Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class.

Doc#: US1:15414139v3

15.    **NO ADMISSION OF WRONGDOING**

15.1   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a)    shall not be offered or received against Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Defendant;

(b)    shall not be offered or received against Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendant;

(c)    shall not be offered or received against Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by Defendant have any merit, or that damages recoverable under the Actions would not have exceeded the Settlement Amount.

16.    **REPRESENTATIONS**

16.1   Each Party represents that (i) such Party has full legal right, power and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by

this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding and enforceable agreement, and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

**17.    NOTICE**

17.1    All notices to Class Counsel provided for in this Agreement shall be sent by e-mail to the following:

**NUSSBAUM LAW GROUP, P.C.**
Linda P. Nussbaum
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
lnussbaum@nussbaumpc.com

**MORGAN & MORGAN**
Jean Martin
201 N. Franklin St. 6th Floor
Tampa, FL 33602
jeanmartin@forthepeople.com

17.2    All notices to Defendant or counsel to Defendant provided for in this Agreement shall be sent by e-mail mail to the following:

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Susanna M. Buergel, Esq.
1285 Avenue of the Americas
New York, New York 10019
sbuergel@paulweiss.com

Jane B. O'Brien, Esq.
2001 K Street NW
Washington, DC 20006
jobrien@paulweiss.com

17.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by e-mail to the following:

Stephanie Fiereck, Esq.
Epiq | Hilsoft Notifications | Legal Notice Manager
Email: sfie@epiqglobal.com

17.4    The notice recipients and addresses designated in this Section may be changed by written notice.

18.    **MISCELLANEOUS PROVISIONS**

18.1    <u>Further Steps.</u> The Parties agree that they each shall undertake any required steps to effectuate the purposes and intent of this Agreement.

18.2    <u>Representation by Counsel.</u> The Settlement Class Representatives and Defendant represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

18.3    <u>Contractual Agreement</u>. The Parties understand and agree that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

18.4    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized herein.

18.5    <u>Drafting.</u> The Parties agree that no single Party shall be deemed to have drafted this Settlement Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys.

18.6    <u>Modification or Amendment.</u> This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Persons who executed this Agreement or their successors-in-interest.

18.7    <u>Waiver.</u> The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

18.8    <u>Severability.</u> Should any part, term or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

Doc#: US1:15414139v3

18.9     Successors. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

18.10     Governing Law. All terms and conditions of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

18.11     Interpretation

(a)     Definitions apply to the singular and plural forms of each term defined.

(b)     Definitions apply to the masculine, feminine, and neutral genders of each term defined.

(c)     Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

18.12     No Precedential Value. The Parties agree and acknowledge that this Agreement carries no precedential value.

18.13     Fair & Reasonable. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

18.14     Retention of Jurisdiction. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

18.15     Headings. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

18.16     Exhibits. The Exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

18.17     Counterparts. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

24

18.18  <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

18.19  <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

18.20  <u>Non-Disparagement</u>. Settlement Class Representatives, Class Counsel, Defendant, and Defendant's counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of the Parties and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the Settlement, this Settlement Agreement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel. Settlement Class Representatives, Defendant, and their respective counsel may issue press releases in connection with the filing of the motion for preliminary approval of this Settlement.  The Parties shall exchange drafts of any such proposed press releases 24 hours in advance of publication and provide the opposing Party with a meaningful opportunity to comment on the draft press releases. For clarification, statements that refer to statements already made in publicly filed pleadings in this Action shall not violate this provision.

Doc#: US1:15414139v3

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Morgan Stanley Smith Barney LLC

Name: Susanna Buergel
Title: Partner, Paul, Weiss, Rifkind, Wharton & Garrison LLC
Date: 12/31/2021

CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

Jean Martin
**MORGAN & MORGAN**
Date:

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
Date:

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

Morgan Stanley Smith Barney LLC

_____

Name:
Title:
Date:

CLASS COUNSEL, ON BEHALF OF THE SETTLEMENT CLASS

*Jean Martin*

_____

Jean Martin
**MORGAN & MORGAN**
Date: 12/31/2021

*Linda Nussbaum*

_____

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
Date: 12/31/2021

Doc#: US1:15414139v3

# EXHIBIT 1

**The list of actions which have been filed in, transferred to, or otherwise assigned to the Court and included in the consolidated pretrial proceedings of *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914-AT (S.D.N.Y.).**

| | |
|---|---|
| SYLVIA TILLMAN, AMRESH JAIJEE, VIVIAN YATES, RICHARD GAMEN, CHERYL GAMEN, on behalf of themselves and all others similarly situated, <br><br>         Plaintiffs, <br> v. <br><br> MORGAN STANLEY SMITH BARNEY, LLC, <br><br>         Defendant. | Case No. 1:20-cv-5914 |
| RICHARD GROSSMAN, HOWARD KATZ, on behalf of themselves and all others similarly situated, <br><br>         Plaintiffs, <br> v. <br><br> MORGAN STANLEY SMITH BARNEY, LLC, <br><br>         Defendant. | Case No. 1:20-cv-6012 |
| MARTIN BEHAR, on behalf of himself and all others similarly situated, <br><br>         Plaintiff, <br> v. <br><br> MORGAN STANLEY SMITH BARNEY, LLC, <br><br>         Defendant. | Case No. 1:20-cv-6300 |

| | |
|---|---|
| AMY DALTON, on behalf of herself and all others similarly situated, | Case No. 1:20-cv-6468 |
| Plaintiff, | |
| v. | |
| MORGAN STANLEY SMITH BARNEY, LLC, | |
| Defendant. | |
| MIDORI T. NELSON, JOHN C. NELSON, on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-6538 |
| Plaintiffs, | |
| v. | |
| MORGAN STANLEY SMITH BARNEY, LLC, | |
| Defendant. | |
| MARK BLYTHE, on behalf of himself and all others similarly situated, | Case No. 1:20-cv-6610 |
| Plaintiff, | |
| v. | |
| MORGAN STANLEY SMITH BARNEY, LLC, | |
| Defendant. | |
| DESIREE SHAPOURI, RICHARD MAUSNER AND LORI MAUSNER, on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-6640 |
| Plaintiffs, | |
| v. | |
| MORGAN STANLEY SMITH BARNEY, LLC, | |
| Defendant. | |

TIMOTHY M. SMITH on behalf of himself and all others
similarly situated,

               Plaintiff,

  v.

MORGAN STANLEY SMITH BARNEY, LLC,

               Defendant.

Case No. 1:20-cv-6984

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Morgan Stanley Data Security Litigation* | Civil Action No. 1:20-cv-05914-AT |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, (Doc. No. ___) (the "Motion"), the terms of which are set forth in a Settlement Agreement with accompanying exhibits attached as Exhibit 1 to Plaintiffs' Motion (the "Settlement Agreement").[1] Having fully considered the issue, the Court hereby GRANTS the Motion and orders as follows:

1.   **Class Certification for Settlement Purposes Only**. The Settlement Agreement provides for a Settlement Class defined as follows:

> All Individuals with existing or closed Morgan Stanley accounts established in the United States who received the Notice Letters regarding the Data Security Incidents.

> Excluded from the Class are: (i) Defendant; (ii) the subsidiaries, parents, and affiliates of Defendant; (iii) any directors of the entities covered by (i) and (ii) during the Class Period and members of their immediate families; (iv) any firm, trust, corporation, or other entity in which Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, and assigns of any such excluded persons or entities. Also excluded from the Class are those persons and entities who timely and validly request exclusion therefrom by 60 days after the Notice date.

> Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is

---

[1] All defined terms herein have the same meaning as set forth in the Settlement Agreement.

justified. The Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3).  Specifically, the Court finds for settlement purposes that: a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; b) there are issues of law and fact that are common to the Settlement Class; c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and the Settlement Class Representatives seek similar relief as the claims of the Settlement Class Members; d) the Settlement Class Representatives will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interest antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this Litigation on behalf of the Settlement Class; e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this Litigation.

2.     **Settlement Class Representatives and Settlement Class Counsel**. The Court finds that Plaintiffs John and Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl and Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Settlement Class Representatives. Additionally, the Court finds that Jean S. Martin of Morgan & Morgan Complex Litigation Group and Linda P. Nussbaum of Nussbaum Law Group, P.C. will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Settlement Class Counsel pursuant to Rule 23(g)(1).

3.      **Preliminary Settlement Approval.** Upon preliminary review, the Court finds the Settlement is fair, reasonable, and adequate to warrant providing Notice of Settlement to the Settlement Class and accordingly is preliminarily approved. In making this determination, the Court has considered the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the stage of the proceedings at which the Settlement was reached and the discovery that was conducted, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, and all of the other factors required by Rule 23.

4.      **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

5.      **Final Approval Hearing.** A Final Approval Hearing shall be held on _____ _____, 202___, at _____ [via telephone or videoconference or in-person] at Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, to determine, among other things, whether: (a) this Litigation should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) the Settlement should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this Litigation should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the application of Settlement Class Counsel for an award of Attorneys' Fees, Costs, and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application of the Settlement Class Representatives for a Service Award should be approved.

6.      **Claims Administrator**. The Court appoints Epiq Class Action & Claims Solutions, Inc., as the Claims Administrator, with responsibility for class notice and claims administration. The Claims Administrator is directed to perform all tasks the Settlement Agreement requires. The Claims Administrator's fees will be paid pursuant to the terms of the Settlement Agreement.

7.      **Notice**. The proposed Notice Plan set forth in the Settlement Agreement as Exhibit 4 and the Notices and Claim Form attached to the Settlement Agreement as Exhibits 5-6 are hereby approved. Non-material modifications to these Exhibits may be made with approval by the parties but without further order of the Court.

8.      **Findings Concerning Notice**. The Court finds that the proposed form, content, and method of giving Notice to the Settlement Class as described in the Notice Plan and the Settlement Agreement and its Exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c); and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

The Claims Administrator is directed to carry out the Notice in conformance with the Settlement Agreement.

9.      **Class Action Fairness Act Notice**. Within 10 days after the filing of the motion to

permit issuance of notice, Defendant shall have served or caused to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

10.   **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written opt-out Exclusion Request to the Claims Administrator at the address and in the manner provided in the Notice. Such opt-out Exclusion Requests must meet the Opt-Out Deadline established by this Order and stated in the Notice.

An opt-out Exclusion Request must state that the Settlement Class Member wants to be excluded from the Settlement in *In re Morgan Stanley Data Security Litigation,* 1:20-cv-05914-AT (S.D.N.Y) and must include the Class Member's name, address, and signature. An Opt-Out Exclusion Request that does not include the foregoing information, or that is sent to an address other than the one designated in the Notice, or that is not received within the specified time shall be invalid and the Settlement Class Member serving such a request shall, if the Final Judgment and Order of Dismissal is entered, be considered a Settlement Class Member and shall be bound by any judgment entered herein with respect to the Settlement Class.

The Claims Administrator shall forward a list of all Exclusion Requests to Settlement Class Counsel and to Morgan Stanley's Counsel within at least 10 days of the Opt-Out Deadline.

If the Final Judgment and Order of Dismissal is entered, any Settlement Class Member who has not submitted a timely, valid written Opt-Out Exclusion Request from the Settlement Class shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, including but not limited to the release set forth in the Final Judgment and Order of Dismissal. Settlement Class Members who submit valid and timely Opt-Out Exclusion Requests shall not be entitled to receive any benefits from the Settlement.

11.    **Objections and Appearances**. Any Settlement Class Member may object to the Settlement, Settlement Class Counsel's request for Attorneys' Fees, Costs, and Expenses, or the request for the Service Award payment to the Settlement Class Representatives; provided, however, that no Settlement Class Member shall be heard or entitled to contest such matters, unless the objection is written and filed with the Clerk of the Court at the address provided in the Notice and a copy of the objection is mailed to Settlement Class Counsel and Counsel for Morgan Stanley postmarked by no later than the Objection Deadline set out below. For the objection to be considered by the Court, the objection must be in writing and must include: (i) the objector's name, address, telephone number, and personal signature; (ii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iii) a statement indicating the basis for the objector's belief that he or she is a member of the Settlement Class (to the extent the objector did not receive Class Notice); (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; and, (v) a statement whether the objector intends to appear at the Final Fairness Hearing, either in person or through counsel, and if through counsel, identifying counsel by name, address, and telephone number.

Any Settlement Class Member who fails to comply with the provisions in this Order will waive and forfeit any and all rights they may have to object, will have their objection stricken from the record, and will lose their rights to appeal from approval of the Settlement. Any such Settlement Class Member also shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, including but not limited to the release set forth in the Final Judgment and Order of Dismissal if entered.

12.    **Claims Process**.  The Settlement Agreement contemplates the establishment of a Settlement Fund and a claims process. Morgan Stanley will pay $60,000,000 to create the

Settlement Fund that will be used to pay claims as determined by the Claims Administrator, pay Settlement Class Counsel's Attorneys' Fees, Costs, and Expenses as awarded by the Court, and pay the Service Awards awarded to the Settlement Class Representatives by the Court.

Settlement Class Counsel and Morgan Stanley have created a process for Settlement Class Members to claim benefits under the Settlement. The Court preliminarily approves this process and directs the Claims Administrator to make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Claims Administrator will be responsible for effectuating the claims process.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form. If the Final Judgment and Order of Dismissal is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Final Judgment and Order of Dismissal, including the release.

13.   **Termination of Settlement**. This Order shall become null and void and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before the Court entered this Order, if: (a) the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement; or (b) there is no Effective Date. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

14.     **Use of Order**. This Order shall be of no force or effect if the Final Judgment and Order of Dismissal is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Morgan Stanley of any fault, wrongdoing, breach, or liability. Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Settlement Class Representatives or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any party of any defense or claims they may have in this Litigation or in any other lawsuit.

15.     **Settlement Fund**. A Settlement Fund shall be established and funded in accordance with the terms of the Settlement Agreement.

16.     **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Claims Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the parties, if appropriate, without further notice to the Settlement Class.

17.     **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

| Event | Timing |
|---|---|
| **Morgan Stanley Provides CAFA Notice required by 28 U.S.C. § 1715(b)** | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement |
| **Morgan Stanley Provides Notice to Class Counsel and the Court of Compliance with CAFA Requirements** | Within 10 days of providing notice to Attorneys General under CAFA |
| **Class Notice Program Commences** | Within 45 days after entry of this Preliminary Approval Order |

| Event | Timing |
|---|---|
| **Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d)** | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| **Motion for Attorney's Fees, Reimbursement of Costs and Expenses, and Service Awards to be Filed by Class Counsel** | At Least 21 days before the Objection Deadline |
| **Postmark Deadline for requests for Exclusion (Opt-Out) or Objections** | 60 days after Commencement of Notice Program |
| **Postmark/Filing Deadline for Filing Claims** | 90 days after Commencement of Notice Program |
| **Motion for Final Approval to be Filed by Class Counsel** | At Least 14 days before the Final Approval Hearing |
| **Final Approval Hearing** | No earlier than 75 days after Commencement of Notice Program |

**DONE AND ORDERED** in New York, New York on this ___ day of _____, 202_.

_____
**HONORABLE ANALISA TORRES**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Morgan Stanley Data Security Litigation* | 20 Civ. 5914 (AT) |

**DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.      I am the Senior Vice-President of Epiq Class Action and Claims Solutions, Inc ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq.

2.      I am a nationally recognized expert in the field of legal notice and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

## RELEVANT EXPERIENCE

4.      Hilsoft and Epiq are industry leaders in class action settlement administration, having implemented more than a thousand successful class action notice and settlement administration matters.

5.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many large and significant cases, including:

a)      *In re Takata Airbag Products Liability Litigation*, 1:15-md-02599-FAM (S.D. Fla), involved $1.49 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford regarding Takata airbags.  The notice plans in those settlements included individual mailed notice to more than 59.6 million potential class members and extensive

nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media. Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

b)   *Hale v. State Farm Mutual Automobile Insurance Company, et al.*, 12-cv-00660 (S.D. Ill.), involved a $250 million settlement with approximately 4.7 million class members. The extensive notice program provided individual notice via postcard or email to approximately 1.43 million class members and implemented a robust publication program which, combined with individual notice, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each.

c)   *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.), involved a comprehensive notice program that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort.

d)   *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), involved a $6.05 billion settlement reached by Visa and MasterCard in 2012 with an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication units and banner notices, which generated more than 689 million adult impressions.

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

e)      *In Re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.), involved an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices.  The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised.  The individual notice efforts reached 93.3% of the settlement class.  A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts.

f)      *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved dual landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill.  Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

g)      *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.), for multiple bank settlements from 2010-2020, the notice programs involved direct mail and email to millions of class members, as well as publication in relevant local newspapers.  Representative banks included Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank, and Synovus are among the more than 20 banks.

6.      Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances.  For example:

a)      *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No. 2420 (N.D. Cal.), Judge Yvonne Gonzalez Rogers stated on December 10, 2020:

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and*

*indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*

   b)   *Lusnak v. Bank of America, N.A.*, CV 14-1855 (C.D. Cal.), Judge George H. Wu stated on August 10, 2020:

*The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

   c)   *Cook, et al. v. South Carolina Public Service Authority, et al.*, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.), Judge Jean Hoefer Toal stated on July 31, 2020:

*Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

d) *Waldrup v Countrywide Financial Corporation, et al.*, 2:13-cv-08833 (C.D. Cal.), Judge Christina A. Snyder stated on July 16, 2020:

> The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.

e) *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) Judge Margo K. Brodie stated on December 13, 2019:

> The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.

f) *In re: Takata Airbag Products Liability Litigation (Ford),* MDL No. 2599 (S.D. Fla.), Judge Federico A. Moreno stated on December 20, 2018:

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

g)      *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 3:12-cv-00660-DRH-SCW (S.D. Ill.), Judge Herndon stated on December 16, 2018:

> *The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

h)      *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.), Judge Thomas M. Durkin stated on March 1, 2018:

> *The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

i)      *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer stated on May 17, 2017:

> *The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.).*

j)      *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.), Judge Carl J. Barbier stated on January 11, 2013:

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

*The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

7.      In addition, I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in several, large data breach and privacy settlements, including:

- *In re: Zoom Video Communications, Inc. Privacy Litigation*, Master Case No. 5:20-cv-02155-LHK (N.D. Cal.) (preliminary approval granted October 21, 2021);

- *Cochran et al. v. Accellion, Inc., et al.*, ("Kroger"), Case No. 5:21-cv-01887-EJD (N.D. Cal.) (preliminary approval granted November 5, 2021);

- *Lozano v. CodeMetro, Inc. et al.*, Case No. 37-2020-00022701-CU-MC-CTL (Sup. Ct. of Cal. Cnty. of San Diego);

- *Nelson v. Roadrunner Transportation Systems, Inc.*, Case No. 1:18-cv-07400, (N.D. Ill.);

- *In re: Premera Blue Cross Customer Data Security Breach Litigation*, Case No. 3:15-md-02633-SI (D. Ore.);

- *In re Community Health Systems, Inc. Customer Data Security Breach Litigation*, MDL No. 2595 (N.D. Ala.);

- *Adlouni v. UCLA Health System Auxiliary, et al*, Case No. BC589243 (Sup. Ct. Cal.);

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

- *Parsons v. Kimpton Hotel & Restaurant Group, LLC*, Case No. 3:16-cv-05387-VC (N.D. Cal);

- *In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation*, Case No. CV2016-013446 (Sup. Ct. Cal);

- *McGann, et al., v. Schnuck Markets, Inc.*, Case No. 1322-CC00800 (Mo. Cir. Ct.);

- *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al.*, Case No. 1:15-cv- 02228 (N.D. Ill.);

- *In re Heartland Data Security Breach Litigation*, MDL No. 2046 (S.D. Tex.);

- *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.);

- *In re: Countrywide Financial Corp. Customer Data Security Breach Litigation*, MDL No.1998, (W.D. Ky.);

- *In re TJX Companies, Inc., Customer Data Security Breach Litigation*, MDL No. 1838 (D. Mass.);

- *Lockwood v. Certegy Check Services, Inc.*, 8:07-cv-1434-T-23TGW (M.D. Fla.); and

- *In re: Department of Veteran Affairs (VA) Data Theft Litigation*, MDL No. 1796 (D.D.C.).

8. Numerous court opinions and comments regarding my testimony and the adequacy of our notice efforts are included in Hilsoft's curriculum vitae attached hereto as **Attachment 1**. In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Before assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising). Overall, I have over 21 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

9. The facts in this declaration are based on my personal knowledge, as well as information provided to me in by my colleagues in the ordinary course of my business at Hilsoft and Epiq.

## OVERVIEW

10. Epiq and Hilsoft were retained to provide notice and administration services in this matter. This declaration will describe the Settlement Notice Plan Program ("Notice Program" or "Notice Plan") and notice (the "Notice" or "Notices") proposed here for *In re Morgan Stanley Data Security Litigation*, Case No. 1:20-CV-05914 in the United States District Court for the Southern District of New York. We developed the Notice Program based on our prior experience and research into the notice issues in this case. We have analyzed and propose the most effective method practicable of providing notice to this Settlement Class.

11. It is my understanding from counsel for the parties that data will be provided to Epiq for virtually all identified Settlement Class Members. The data will include names, physical addresses and email addresses. The Settlement Class Member data will be used to provide individual notice with an Email Notice or a mailed Summary Notice to identified Settlement Class Members. The individual notice will be supplemented with a Publication Notice published in two national newspapers and notice provided on a Settlement Website. In my opinion, the proposed Notice Program is designed to reach the greatest practicable number of Settlement Class Members through the use of individual notice.

## NOTICE PROGRAM SUMMARY

12. Federal Rule of Civil Procedure, Rule 23 directs that notice must be the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[1] The proposed Notice Program will satisfy this requirement.

13. Given our experience with similar notice efforts, we expect that the proposed Notice Program individual notice efforts will reach at least 85% of the identified Settlement Class. The reach will be further enhanced by supplemental newspaper notice and a Settlement Website,

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

which are not included in the estimated reach calculation.  In my experience, the projected reach of the Notice Program is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[2]

14.     I have reviewed the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form to ensure, and I can confirm, that all required information is plainly available to Settlement Class Members.  Draft forms of the notices and Claim Form are attached as Exhibits 5 and 6 to the Settlement Agreement.

## NOTICE PLAN DETAIL

15.     The Notice Plan was designed to provide notice to the following "Settlement Class" as defined in the Settlement Agreement and Release:

> [A]ll Individuals with existing or closed Morgan Stanley accounts established in the United States who received the Notice Letters regarding the data security incidents.  Excluded from the Class are: (i) Defendant; (ii) the subsidiaries, parents, and affiliates of Defendant; (iii) any directors of the entities covered by (i) and (ii) during the Class Period and members of their immediate families; (iv) any firm, trust, corporation, or other entity in which Defendant has or had a controlling interest; and (v) the legal representatives, heirs, successors, and assigns of any such excluded persons or entities. Also excluded from the Class are those persons and entities who timely and validly request exclusion therefrom by 60 days after the Notice date.  Notwithstanding Defendant's agreement to this definition of the Class for purposes of the Settlement, Defendant denies that a class could or should be certified in this Action if the Settlement is not consummated.

## NOTICE PLAN

### *Individual Notice*

16.     The Settlement Agreement and Release provides that Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley") will share with Epiq a Settlement Class List that includes

---

[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

1   names, mailing addresses, and email addresses. It is my understanding from counsel for the parties

2   that the Settlement Class List will contain data for approximately 15.6 million identified

3   Settlement Class Members. The proposed Notice Plan provides for sending individual notice via

4   email ("Email Notice") to all identified Settlement Class Members with a facially valid email

5   address (approximately 4.69 million Settlement Class Members). For those records for whom an

6   email address is not provided or the email address is not facially valid, a Summary Notice will be

7   mailed via United States Postal Service ("USPS") first class mail (approximately 10.9 million

8   Settlement Class Members).

9       17.    All Email and Summary Notices will include a unique identifying number for each

10  identified Settlement Class Member to allow for more secure online claim processing and the

11  efficient processing of any returned paper Claim Forms.

12                                  *Individual Notice - Email*

13      18.    The Notice will be sent via email to all identified Settlement Class Members for

14  whom a facially valid email address is available. Industry standard best practices will be followed

15  for the Email Notice efforts. The Email Notice will be drafted in such a way that the subject line,

16  the sender, and the body of the message overcome SPAM filters and ensure readership to the fullest

17  extent reasonably practicable. For instance, the Email Notice will use an embedded html text

18  format. This format will provide easy to read text without graphics, tables, images, attachments,

19  and other elements that would increase the likelihood that the message could be blocked by Internet

20  Service Providers (ISPs) and/or SPAM filters. The Email Notices will be sent from an IP address

21  known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts.

22  Each Email Notice will be transmitted with a digital signature to the header and content of the

23  Email Notice, which will allow ISPs to programmatically authenticate that the Email Notices are

24  from our authorized mail servers. Each Email Notice will also be transmitted with a unique

25  message identifier. The Email Notice will include an embedded link to the Settlement Website.

26  By clicking the link, recipients will be able to easily file an online claim, access the Long Form

27  Notice, Settlement Agreement and other information about the Settlement.

28

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

19.     If the receiving email server cannot deliver the message, a "bounce code" will be returned along with the unique message identifier.  For any Email Notice for which a bounce code is received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical auto-replies, etc., at least two additional attempts will be made to deliver the Notice by email.

### *Individual Notice - Direct Mail*

20.     A Summary Notice will be sent to all identified Settlement Class Members with an associated physical address for whom a facially valid email address is not available.  The Summary Notice will be sent via USPS first class mail.   The Summary Notice clearly and concisely summarizes the case and the legal rights of the Settlement Class Members.  The Summary Notice will also direct the recipients to a Settlement Website where they can access additional information.

21.     Prior to sending the Summary Notice, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure Settlement Class Member address information is up-to-date and accurately formatted for mailing.[3]   In addition, the addresses will be certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code, and will be verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

22.     Summary Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that

---

[3] The NOCA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

1    may be found using a third-party lookup service.  Upon successfully locating better addresses,

2    Summary Notices will be promptly remailed.

3                                           *National Newspaper Notices*

4            23.    To supplement the individual notice efforts, a Publication Notice will appear once

5    in each of the following two selected national newspapers, *Investor's Business Weekly* and *Wall*

6    *Street Journal*, as an approximate 1/4 page ad unit.

7                                                  *Settlement Website*

8            24.    Epiq will create and maintain a dedicated Settlement Website for the Settlement.

9    The website address will be included in the Notices.  Relevant documents, including the Long

10   Form Notice, Claim Form, Settlement Agreement, Second Consolidated Amended Complaint,

11   Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Approval

12   Order once entered by the Court, and after filing, Plaintiffs' Motion for Attorneys' Fees and Costs

13   and Service Payments, and Plaintiffs' Motion for Final Approval will be posted on the Settlement

14   Website.  The Settlement Website will also provide the ability for Settlement Class Members to

15   file an online Claim Form.  In addition, the Settlement Website will include relevant dates, answers

16   to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-

17   out (request exclusion) from or object to the Settlement, contact information for the Settlement

18   Administrator, and other case-related information.  The website address will be prominently

19   displayed in all notice documents.

20                                             *Toll-Free Telephone Number*

21           25.    A toll-free telephone number will be established for the Settlement.  Callers will be

22   able to hear an introductory message.  Callers will also have the option to learn more about the

23   Settlement in the form of recorded answers to frequently asked questions.  The toll-free telephone

24   number will be prominently displayed in all notice documents.  During normal business hours,

25   callers will also have the option to speak to a live operator.

26           26.    A postal mailing address will be provided, allowing Settlement Class Members the

27   opportunity to request additional information or ask questions via these channels.

28

## PLAIN LANGUAGE NOTICE DESIGN

27.     The Notices and Claim Form are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. The design of the Notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov.  Many courts, and the FJC itself, have approved notices that we have written and designed in a similar fashion.  The Notices contain substantial, albeit easy-to-read summaries of all key information about Settlement Class Members' rights and options.  Consistent with our normal practice, all notice documents will undergo a final edit prior to actual mailing and publication for grammatical errors and accuracy.

28.     The Long Form Notice will provide substantial information to Settlement Class Members.  The Long Form Notice will include (i) details regarding the Settlement Class Members' ability to request exclusion from, opt-out, object to the Settlement Agreement, (ii) instructions on how to submit a Claim Form, (iii) the deadline to submit a Claim Form, and (iv) the date, time, and location of the Fairness Hearing, among other information.

### *Distribution Options*

29.     The Settlement provides Settlement Class Members the option of filing a Claim Form for out-of-pocket losses and lost time spent researching and remedying issues related to the Data Security Incidents.  The Notices will contain a detailed summary of the relevant information about the Settlement, including the Settlement Website address where Settlement Class Members can file a Claim Form.  The Email Notice will include a link directly to the claim filing portal on the Settlement Website, where Settlement Class Members can file an online Claim Form.  With any method of filing a Claim Form, Settlement Class Members will be given the option of receiving a digital payment (such as Venmo, Paypal, Digital Mastercard or other options). Settlement Class Members will also be able to elect to receive a traditional paper check.

### CONCLUSION

30.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes,

and further by case law pertaining to notice.  This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way.  All of these requirements will be met in this case.

31.     The Notice Program includes individual notice to millions of identified Class Members and newspaper notice.  With the address updating protocols that will be employed, we reasonably expect the Notice Program individual notice efforts will reach at least 85% of the Settlement Class.  The reach will be further enhanced by newspaper notice and a Settlement Website.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."  Here, we have developed a Class Notice Program that will readily achieve a reach within that standard.

32.     Our Notice Plan follows the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

     a)     "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

     b)     "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

33.     The Notice Program will provide the best notice practicable under the circumstances of this case, conforms to all aspects of Federal Rules of Civil Procedure 23, and

comports with the guidance for effective notice articulated in the Manual for Complex Litigation 4th Ed. and FJC guidance, and exceeds the requirements of due process, including its "desire to actually inform" requirement.

34.     The Notice Plan schedule will afford enough time to provide full and proper notice to Settlement Class Members before any opt-out and objection deadline.

35.     Epiq has also been retained to provide the requisite notice to governmental officials required pursuant to the Class Action Fairness Act and will provide a declaration attesting to the completion of such notice.

36.     At the conclusion of the Notice Program, I will provide a final report verifying its effective implementation.

I declare under penalty of perjury that the foregoing is true and correct. Executed December 30, 2021.

_____

Cameron R. Azari, Esq.

DECLARATION OF CAMERON R. AZARI ON NOTICE PLAN AND NOTICES

Attachment 1

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications ("Hilsoft") is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, and notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Hilsoft has been retained by defendants or plaintiffs for more than 500 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts. Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags. The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and other behaviorally targeted digital media. Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each. *In re: Takata Airbag Products Liability Litigation* (**OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford**), MDL No. 2599 (S.D. Fla.).

➢ For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent, superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication insertions and banner notices, which generated more than 689 million adult impressions. *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each. *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts. *In re: Premera Blue Cross Customer Data Security Breach Litigation,* 3:15-md-2633 (D. Ore.).

➢ Hilsoft provided notice for the $113 million lithium-ion batteries antitrust litigation settlements, which included individual notice via email to millions of class members, banner and social media ads, an informational release, and a settlement website. *In re: Lithium Ion Batteries Antitrust Litigation,* 4:13-md-02420, MDL No. 2420 (N.D. Cal.).

➢ Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles. The notice program reached approximately 96.5% of all class members. *Callaway v. Mercedes-Benz USA, LLC,* 8:14-cv-02011 (C.D. Cal.).

➢ Hilsoft provided notice for a $520 million settlement, which involved utility customers (residential, commercial, industrial, etc.) who paid utility bills. The notice program included individual notice to more than 1.6 million known class members via postal mail or email and a supplemental publication notice in local newspapers, banner notices, and a settlement website. The individual notice efforts alone reached more than 98.6% of the class. ***Cook, et al. v. South Carolina Public Service Authority, et al.***, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.).

➢ For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members. The combined measurable notice effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads. ***Vergara, et al., v. Uber Technologies, Inc.***, 1:15-CV-06972 (N.D. Ill.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort. ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented a comprehensive notice plan, which included individual notice via an oversized postcard notice to more than 740,000 class members as well as email notice to class members. Combined the individual notice efforts delivered notice to approximately 98% of the class. Supplemental newspaper notice in four large-circulation newspapers and a settlement website further expanded the notice efforts. ***Lusnak v. Bank of America, N.A.***, CV 14-1855 (C.D. Cal.).

➢ Hilsoft provided notice for both the class certification and the settlement phases of the case. The individual notice efforts included sending postcard notices to more than 2.3 million class members, which reached 96% of the class. Publication notice in a national newspaper, targeted internet banner notices and a settlement website further extended the reach of the notice plan. ***Waldrup v. Countrywide Financial Corporation, et al.***, 2:13-cv-08833 (C.D. Cal.).

➢ An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website. ***In re: Kaiser Gypsum Company, Inc., el al.***, 16-31602 (Bankr. W.D. N.C.).

➢ Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes. The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings and a case website further enhanced reach. ***Miner v. Philip Morris USA, Inc.***, 60CV03-4661 (Ark. Cir. Ct.).

➢ A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. ***In re: Energy Future Holdings Corp., et al.***, 14-10979 (Bankr. D. Del.).

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice, and in some cases paid media efforts. Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M& I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Epiq (Hilsoft). ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.).

➢ For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion-dollar settlement. ***In re: Residential Schools Class Action Litigation***, 00-CV-192059 CPA (Ont. Super. Ct.).



➢ BP's $7.8 billion settlement related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history.  Hilsoft drafted and opined on all forms of notice.  The 2012 dual notice program to "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice.  Subsequently, Hilsoft designed and implemented one of the largest claim deadline notice campaigns ever implemented, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each.  *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➢ Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period.  *Vereen v. Lowe's Home Centers*, SU10-CV-2267B (Ga. Super. Ct.).

## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Epiq Senior Vice President, Hilsoft Director of Legal Notice*

Cameron Azari, Esq. has more than 21 years of experience in the design and implementation of legal notice and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, In re: Checking Account Overdraft Litigation,* and *In re: Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from FRCP Rule 23 to email noticing, response rates, and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

### *Kyle Bingham, Manager of Strategic Communications*

Kyle Bingham has 15 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases.  Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In re: Checking Account Overdraft Litigation.*  Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives.  He received his B.A. from Willamette University.  Kyle can be reached at kbingham@epiqglobal.com.



### ARTICLES AND PRESENTATIONS

➢ **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." November 18, 2020.

➢ **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, October 29, 2019.

➢ **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference." American Conference Institute, Chicago, IL, July 18, 2019.

➢ **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.

➢ **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.

➢ **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

➢ **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts. Clyde & Co LLP, San Francisco, CA, June 22, 2018.

➢ **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice.* E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



## JUDICIAL COMMENTS

**Judge Anne-Christine Massullo,** *Morris v. Provident Credit Union* (June 23, 2021) CGC-19-581616, Sup. Ct. Cal. Cty. of San Fran.:

> *The Notice approved by this Court was distributed to the Classes in substantial compliance with this Court's Order Certifying Classes for Settlement Purposes and Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") and the Agreement. The Notice met the requirements of due process and California Rules of Court, rules 3.766 and 3.769(f). The notice to the Classes was adequate.*

**Judge Esther Salas,** *Sager, et al. v. Volkswagen Group of America, Inc., et al.* (June 22, 2021) 18-cv-13556 (D.N.J.):

> *The Court further finds and concludes that Class Notice was properly and timely disseminated to the Settlement Class in accordance with the Class Notice Plan set forth in the Settlement Agreement and the Preliminary Approval Order (Dkt. No. 69). The Class Notice Plan and its implementation in this case fully satisfy Rule 23, the requirements of due process and constitute the best notice practicable under the circumstances.*

**Judge Josephine L. Staton,** *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.* (June 10, 2021) 8:17-CV-00838 & 18-cv-02223 (C.D. Cal.):

> *The Class Notice was disseminated in accordance with the procedures required by the Court's Orders … in accordance with applicable law, and satisfied the requirements of Rule 23(e) and due process and constituted the best notice practicable for the reasons discussed in the Preliminary Approval Order and Final Approval Order.*

**Judge Harvey Schlesinger,** *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC) (May 31, 2021) 3:15-md-02626 (M.D. Fla.):

> *The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Haywood S. Gilliam, Jr.** *Richards, et al. v. Chime Financial, Inc.* (May 24, 2021) 4:19-cv-06864 (N.D. Cal.):

> *The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B)… The Court ordered that the third-party settlement administrator send class notice via email based on a class list Defendant provided… Epiq Class Action & Claims Solutions, Inc., the third-party settlement administrator, represents that class notice was provided as directed… Epiq received a total of 527,505 records for potential Class Members, including their email addresses…. If the receiving email server could not deliver the message, a "bounce code" was returned to Epiq indicating that the message was undeliverable…. Epiq made two additional attempts to deliver the email notice… As of Mach 1, 2021, a total of 495,006 email notices were delivered, and 32,499 remained undeliverable… In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.*

**Judge Henry Edward Autrey,** *Pearlstone v. Wal-Mart Stores, Inc.* (Apr. 22, 2021) 4:17-cv-02856 (C.D. Cal.):

> *The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.*



**Judge Lucy H. Koh,** *Grace v. Apple, Inc.* (Mar. 31, 2021) 17-CV-00551 (N.D. Cal.):

*Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Court finds that the Notice Plan, which was direct notice sent to 99.8% of the Settlement Class via email and U.S. Mail, has been implemented in compliance with this Court's Order (ECF No. 426) and complies with Rule 23(c)(2)(B).*

**Judge Gary A. Fenner,** *In re: Pre-Filled Propane Tank Antitrust Litigation* (Mar. 30, 2021) MDL No. 2567, 14-2567 (W.D. Mo.):

*Based upon the Declaration of Cameron Azari, on behalf of Epiq, the Administrator appointed by the Court, the Court finds that the Notice Program has been properly implemented. That Declaration shows that there have been no requests for exclusion from the Settlement, and no objections to the Settlement. Finally, the Declaration reflects that AmeriGas has given appropriate notice of this settlement to the Attorney General of the United States and the appropriate State officials under the Class Action Fairness Act, 28 U.S.C. § 1715, and no objections have been received from any of them.*

**Judge Richard Seeborg,** *Bautista v. Valero Marketing and Supply Company* (Mar. 17, 2021) 3:15-cv-05557 (N.D. Cal.):

*The Notice given to the Settlement Class in accordance with the Notice Order was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge James D. Peterson,** *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* (Mar. 4, 2021) 18-cv-327 (W.D. Wis.):

*The approved Notice plan provided for direct mail notice to all class members at their last known address according to UnityPoint's records, as updated by the administrator through the U.S. Postal Service. For postcards returned undeliverable, the administrator tried to find updated addresses for those class members. The administrator maintained the Settlement website and made Spanish versions of the Long Form Notice and Claim Form available upon request. The administrator also maintained a toll-free telephone line which provides class members detailed information about the settlement and allows individuals to request a claim form be mailed to them.*

*The Court finds that this Notice (i) constituted the best notice practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class members of the Settlement, the effect of the Settlement (including the release therein), and their right to object to the terms of the settlement and appear at the Final Approval Hearing; (iii) constituted due and sufficient notice of the Settlement to all reasonably identifiable persons entitled to receive such notice; (iv) satisfied the requirements of due process, Federal Rule of Civil Procedure 23(e)(1) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all applicable laws and rules.*

**Judge Larry A. Burns,** *Trujillo, et al. v. Ametek, Inc., et al.* (Mar. 3, 2021) 3:15-cv-01394 (S.D. Cal.):

*The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 181-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.*



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

**Judge Sherri A. Lydon,** *Fitzhenry v. Independent Home Products, LLC* (Mar. 2, 2021) 2:19-cv-02993 (D.S.C.):

> *Notice was provided to Class Members in compliance with Section VI of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.*

**Judge James V. Selna,** *Alvarez v. Sirius XM Radio Inc.* (Feb. 9, 2021) 2:18-cv-8605 (C.D. Cal.):

> *The Court finds that the dissemination of the Notices attached as Exhibits to the Settlement Agreement: (a) was implemented in accordance with the Notice Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the Releases to be provided thereunder); (v) Named Plaintiffs' application for the payment of Service Awards; (vi) Class Counsel's motion for an award an attorneys' fees and expenses; (vii) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for attorneys' fees and expenses (including a Service Award to the Named Plaintiffs and Mr. Wright); and (viii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

**Judge Jon S .Tigar,** *Elder v. Hilton Worldwide Holdings, Inc.* (Feb. 4, 2021) 16-cv-00278 (N.D. Cal.):

> *"Epiq implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court." ECF No. 162 at 9-10. Epiq sent initial notice by email to 8,777 Class Members and by U.S. Mail to the remaining 1,244 Class members. Id. at 10. The Notice informed Class Members about all aspects of the Settlement, the date and time of the fairness hearing, and the process for objections. ECF No. 155 at 28-37. Epiq then mailed notice to the 2,696 Class Members whose emails were returned as undeliverable. Id. "Of the 10,021 Class Members identified from Defendants' records, Epiq was unable to deliver the notice to only 35 Class Members. Accordingly, the reach of the notice is 99.65%." Id. (citation omitted). Epiq also created and maintained a settlement website and a toll-free hotline that Class Members could call if they had questions about the settlement. Id.*

> *The Court finds that the parties have complied with the Court's preliminary approval order and, because the notice plan complied with Rule 23, have provided adequate notice to class members.*

**Judge Michael W. Jones,** *Wallace, et al, v. Monier Lifetile LLC, et al.* (Jan. 15, 2021) SCV-16410 (Sup. Ct. Cal.):

> *The Court also finds that the Class Notice and notice process were implemented in accordance with the Preliminary Approval Order, providing the best practicable notice under the circumstances.*

**Judge Kristi K. DuBose,** *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (Dec. 23, 2020) 1:19-cv-00563 (S.D. Ala.):

> *The Court finds that the Notice and the claims procedures actually implemented satisfy due process, meet the requirements of Rule 23(e)(1), and the Notice constitutes the best notice practicable under the circumstances.*

**Judge Haywood S. Gilliam, Jr.,** *Izor v. Abacus Data Systems, Inc.* (Dec. 21, 2020) 19-cv-01057 (N.D. Cal.):

> *The Court finds that the notice plan previously approved by the Court was implemented and that the notice thus satisfied Rule 23(c)(2)(B). [T]he Court finds that the parties have sufficiently provided the best practicable notice to the class members.*



**Judge Christopher C. Conner,** *AI's Discount Plumbing, et al. v. Viega, LLC* (Dec. 18, 2020) 19-cv-00159 (M.D. Pa.):

> *The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Fed. R. Civ. P. 23(c)(2)(B) and due process. Specifically, the Court ordered that the third-party Settlement Administrator, Epiq, send class notice via email, U.S. mail, by publication in two recognized industry magazines, Plumber and PHC News, in both their print and online digital forms, and to implement a digital media campaign. (ECF 99). Epiq represents that class notice was provided as directed. See Declaration of Cameron R. Azari, ¶¶ 12-15 (ECF 104-13).*

**Judge Naomi Reice Buchwald,** *In re: Libor-Based Financial Instruments Antitrust Litigation* (Dec. 16, 2020) MDL No. 2262 1:11-md-2262 (S.D.N.Y.):

> *Upon review of the record, the Court hereby finds that the forms and methods of notifying the members of the Settlement Classes and their terms and conditions have met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all members of the Settlement Classes of these proceedings and the matters set forth herein, including the Settlements, the Plan of Allocation and the Fairness Hearing. Therefore, the Class Notice is finally approved.*

**Judge Larry A. Burns,** *Cox, et al. Ametek, Inc., et al.* (Dec 15, 2020) 3:17-cv-00597 (S.D. Cal.):

> *The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 129-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.*

**Judge Timothy J. Sullivan,** *Robinson v. Nationstar Mortgage LLC* (Dec. 11, 2020) 8:14-cv-03667 (D. Md.):

> *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the United States Constitution, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The Class Notice fully satisfied the requirements of Due Process.*

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Dec. 10, 2020) 4:13-md-02420, MDL No. 2420 (N.D. Cal.):

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*



**Judge Katherine A. Bacal, *Garvin v. San Diego Unified Port District*** (Nov. 20, 2020) 37-2020-00015064 (Sup. Ct. Cal.):

*Notice was provided to Class Members in compliance with the Settlement Agreement, California Code of Civil Procedure §382 and California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing notice to all individual Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The Notice fully satisfied the requirements of due process.*

**Judge Catherine D. Perry, *Pirozzi, et al. v. Massage Envy Franchising, LLC*** (Nov. 13, 2020) 4:19-cv-807 (E.D. Mo.):

*The COURT hereby finds that the CLASS NOTICE given to the CLASS: (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the time and manner by which CLASS MEMBERS could submit a CLAIM under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances, constituted a reasonable manner of notice to all class members who would be bound by the SETTLEMENT, and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Robert E. Payne, *Skochin, et al. v. Genworth Life Insurance Company, et al.*** (Nov. 12, 2020) 3:19-cv-00049 (E.D. Vir.):

*For the reasons set forth in the Court's Memorandum Opinion addressing objections to the Settlement Agreement, . . . the plan to disseminate the Class Notice and Publication Notice, which the Court previously approved, has been implemented and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process.*

**Judge Jeff Carpenter, *Eastwood Construction LLC, et al. v. City of Monroe*** (Oct. 27, 2020) 18-cvs-2692 and ***The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe*** (Oct. 27, 2020) 19-cvs-1825 (Sup. Ct. N.C.):

*Therefore, the Court GRANTS the Final Approval Motion, CERTIFIES the class as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS the Fee Motion…*
*The Settlement Agreement and the Settlement Notice are found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of the Court is directed to enter and docket this Order and Final Judgement in the Actions.*

**Judge M. James Lorenz, *Walters, et al. v. Target Corp.*** (Oct. 26, 2020) 3:16-cv-1678 (S.D. Cal.):

*The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Maren E. Nelson, *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company*** (Oct. 26, 2020) BC 579498 (Sup. Ct Cal.):

*Distribution of Notice directed to the Settlement Class Members as set forth in the Settlement has been completed in conformity with the Preliminary Approval Order, including individual notice to all Settlement Class members who could be identified through reasonable effort, and the best notice practicable under the circumstances. The Notice, which reached 99.9% of all Settlement Class Members, provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to Notice, and the Notice and its distribution fully satisfied the requirements of due process.*



**Judge Vera M. Scanlon,** *Lashambae v. Capital One Bank, N.A.* (Oct. 21, 2020) 1:17-cv-06406 (E.D.N.Y.):

*The Class Notice, as amended, contained all of the necessary elements, including the class definition, the identities of the named Parties and their counsel, a summary of the terms of the proposed Settlement, information regarding the manner in which objections may be submitted, information regarding the opt-out procedures and deadlines, and the date and location of the Final Approval Hearing. Notice was successfully delivered to approximately 98.7% of the Settlement Class and only 78 individual Settlement Class Members did not receive notice by email or first class mail.*

*Having reviewed the content of the Class Notice, as amended, and the manner in which the Class Notice was disseminated, this Court finds that the Class Notice, as amended, satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules. The Class Notice, as amended, provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and provided this Court with jurisdiction over the absent Settlement Class Members. See Fed. R. Civ. P. 23(c)(2)(B).*

**Chancellor Walter L. Evans,** *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* (Oct. 14, 2020) CH-13-04871-1 (30th Jud. Dist. Tenn.):

*Based upon the filings and the record as a whole, the Court finds and determines that dissemination of the Class Notice as set forth herein complies with Tenn. R. Civ. P. 23.03(3) and 23.05 and (i) constitutes the best practicable notice under the circumstances, (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of Class Settlement, their rights to object to the proposed Settlement, (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, (iv) meets all applicable requirements of Due Process; (v) and properly provides notice of the attorney's fees that Class Counsel shall seek in this action. As a result, the Court finds that Class Members were properly notified of their rights, received full Due Process . . . .*

**Judge Sara L. Ellis,** *Nelson v. Roadrunner Transportation Systems, Inc.* (Sept. 15, 2020) 1:18-cv-07400 (N.D. Ill.):

*Notice of the Final Approval Hearing, the proposed motion for attorneys' fees, costs, and expenses, and the proposed Service Award payment to Plaintiff have been provided to Settlement Class Members as directed by this Court's Orders,*

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge George H. Wu,** *Lusnak v. Bank of America, N.A.* (Aug. 10, 2020) CV 14-1855 (C.D. Cal.):

*The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

**Judge James Lawrence King,** *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.* (Aug. 10, 2020) 1:10-cv-22190 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

*The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.*



**Judge Jeffrey S. Ross,** *Lehman v. Transbay Joint Powers Authority, et al.* (Aug. 7, 2020) CGC-16-553758 (Sup. Ct. Cal.):

> *The Notice approved by this Court was distributed to the Settlement Class Members in compliance with this Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 8, 2020. The Notice provided to the Settlement Class Members met the requirements of due process and constituted the best notice practicable in the circumstances. Based on evidence and other material submitted in conjunction with the final approval hearing, notice to the class was adequate.*

**Judge Jean Hoefer Toal,** *Cook, et al. v. South Carolina Public Service Authority, et al.* (July 31, 2020) 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.):

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

**Judge Peter J. Messitte,** *Jackson, et al. v. Viking Group, Inc., et al.* (July 28, 2020) 8:18-cv-02356 (D. Md.):

> *[T]he Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order as amended. The Court finds that the Notice Plan: (i) constitutes the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Lawsuit and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.*

**Judge Michael P. Shea,** *Grayson, et al. v. General Electric Company* (July 27, 2020) 3:13-cv-01799 (D. Conn.):

> *Pursuant to the Preliminary Approval Order, the Settlement Notice was mailed, emailed and disseminated by the other means described in the Settlement Agreement to the Class Members. This Court finds that this notice procedure was (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Civil Action and of their right to object to or exclude themselves from the proposed Settlement; and (iii) reasonable and constitutes due, adequate, and sufficient notice to all entities and persons entitled to receive notice.*

**Judge Gerald J. Pappert,** *Rose v. The Travelers Home and Marine Insurance Company, et al.* (July 20, 2020) 19-cv-00977 (E.D. Pa.):

> *The Class Notice . . . has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. Such Class Notice (i) constituted the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency and nature of this Action, the definition of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class to exclude themselves from the settlement or to object to any part of the settlement, the rights of the Settlement Class to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Settlement Agreement on all persons who do not exclude themselves from the Settlement Class, (iii) provided due, adequate, and sufficient notice to the Settlement Class; and (iv) fully satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

**Judge Christina A. Snyder,** *Waldrup v. Countrywide Financial Corporation, et al.* (July 16, 2020) 2:13-cv-08833 (C.D. Cal.):

> *The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members*



*and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

**Judge James Donato**, ***Coffeng, et al. v. Volkswagen Group of America, Inc.*** (June 10, 2020) 17-cv-01825 (N.D. Cal.):

*The Court finds that, as demonstrated by the Declaration and Supplemental Declaration of Cameron Azari, and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with FED. R. CIV. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Michael W. Fitzgerald**, ***Behfarin v. Pruco Life Insurance Company, et al.*** (June 3, 2020) 17-cv-05290 (C.D. Cal.):

*The Court finds that the requirements of Rule 23 of the Federal Rule of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been satisfied . . . .*

*This Court finds that the Claims Administrator caused notice to be disseminated to the Class in accordance with the plan to disseminate Notice outlined in the Settlement Agreement and the Preliminary Approval Order, and that Notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23.*

**Judge Nancy J. Rosenstengel**, ***First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*** (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

*The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger**, ***In re: Disposable Contact Lens Antitrust Litigation*** (CooperVision, Inc.) (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant**, ***Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the*



*Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon,** *In re: Premera Blue Cross Customer Data Security Breach Litigation* (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney,** *McKinney-Drobnis, et al. v. Massage Envy Franchising* (Mar. 2, 2020) 3:16-cv-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber,** *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr.,** *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final*



*Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks,** *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D.S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2019) MDL No. 1720, 05-md-1720 (E.D.N.Y.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best practicable notice under the circumstances.*

**Judge Brian McDonald,** *Armon, et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate*



*instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford, *In re: Wells Fargo Collateral Protection Insurance Litigation*** (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney, *Burch v. Whirlpool Corporation*** (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Gene E.K. Pratter, *Tashica Fulton-Green, et al. v. Accolade, Inc.*** (Sept. 24, 2019) 2:18-cv-00274 (E.D. Pa.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres, *Burrow, et al. v. Forjas Taurus S.A., et al.*** (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*

**Judge Amos L. Mazzant, *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Karon Owen Bowdre, *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation*** (Aug. 22, 2019) MDL No. 2595, 2:15-cv-222 (N.D. Ala.):

*The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.*

*The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.*



**Judge Christina A. Snyder, *Zaklit, et al. v. Nationstar Mortgage LLC, et al.*** (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

*The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

**Judge Brian M. Cogan, *Luib v. Henkel Consumer Goods Inc.*** (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

*The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

**Judge Yvonne Gonzalez Rogers, *In re: Lithium Ion Batteries Antitrust Litigation*** (Aug. 16, 2019) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

*The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.*

**Judge Jon Tigar, *McKnight, et al. v. Uber Technologies, Inc., et al.*** (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

*The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28. In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gary W.B. Chang, *Robinson v. First Hawaiian Bank*** (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

*This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.*

**Judge Karin Crump, *Hyder, et al. v. Consumers County Mutual Insurance Company*** (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

*Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.*

**Judge Wendy Bettlestone, *Underwood v. Kohl's Department Stores, Inc., et al.*** (July 24, 2019) 2:15-cv-00730 (E.D. Pa.):

*The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.*



**Judge Andrew G. Ceresia, J.S.C.,** *Denier, et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.*

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> *Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.*

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary, et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> *The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement. The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.*

**Judge John C. Hayes III,** *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> *These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.*

**Judge Stephen K. Bushong,** *Scharfstein v. BP West Coast Products, LLC* (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> *The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Cynthia Bashant,** *Lloyd, et al. v. Navy Federal Credit Union* (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> *This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.*

**Judge Robert W. Gettleman,** *Cowen v. Lenny & Larry's Inc.* (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order. Adequate notice of the amended settlement and the final approval hearing has also been given. Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*



**Judge Edward J. Davila,** *In re: HP Printer Firmware Update Litigation* (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> *Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.*

**Judge Claudia Wilken,** *Naiman v. Total Merchant Services, Inc., et al.* (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> *The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.*

**Judge Paul Gardephe,** *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> *The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.*

**Judge Alison J. Nathan,** *Pantelyat, et al. v. Bank of America, N.A., et al.* (Jan. 31, 2019) 16-cv-08964 (S.D.N.Y.):

> *The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice.  The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.*

**Judge Kenneth M. Hoyt,** *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> *[T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.*

**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817, 18-cv-00864 (N.D. Ill.):

> *The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.*

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* **(Ford)** (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> *The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States*



*Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company, et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge William L. Campbell, Jr.,** *Ajose, et al. v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

*The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.*

**Judge Joseph C. Spero,** *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

*[T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)...The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.*

**Judge Marcia G. Cooke,** *Dipuglia v. US Coachways, Inc.* (Sept. 28, 2018) 1:17-cv-23006 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Beth Labson Freeman,** *Gergetz v. Telenav, Inc.* (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

*The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons*



*entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.*

**Judge M. James Lorenz,** *Farrell v. Bank of America, N.A.* (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

*The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Dean D. Pregerson,** *Falco, et al. v. Nissan North America, Inc., et al.* (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

*Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Lynn Adelman,** *In re: Windsor Wood Clad Window Product Liability Litigation* (July 16, 2018) MDL No. 2688, 16-md-02688 (E.D. Wis.):

*The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.*

**Judge Stephen K. Bushong,** *Surrett, et al. v. Western Culinary Institute, et al.* (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

*This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman,** *Larson v. John Hancock Life Insurance Company (U.S.A.)* (May 8, 2018) RG16813803 (Sup. Ct. Cal.):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*



**Judge Federico A. Moreno, *Masson v. Tallahassee Dodge Chrysler Jeep, LLC*** (May 8, 2018) 17-cv-22967 (S.D. Fla.):

> *The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Chancellor Russell T. Perkins, *Morton v. GreenBank*** (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

> *The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.*

**Judge James V. Selna, *Callaway v. Mercedes-Benz USA, LLC*** (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

> *The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.*

> *The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.*

> *The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator*

**Judge Thomas M. Durkin, *Vergara, et al., v. Uber Technologies, Inc.*** (Mar. 1, 2018) 1:15-cv-06972 (N.D. Ill.):

> *The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

**Judge Federico A. Moreno, *In re: Takata Airbag Products Liability Litigation* (Honda & Nissan)** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

> *The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Susan O. Hickey, *Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

> *Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval*



*Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes,** *Glaske v. Independent Bank Corporation* (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald,** *Orlander v. Staples, Inc.* (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood,** *T.A.N. v. PNI Digital Media, Inc.* (Dec. 1, 2017) 2:16-cv-132 (S.D. Ga.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg,** *Gottlieb v. Citgo Petroleum Corporation* (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks,** *Mahoney v. TT of Pine Ridge, Inc.* (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh,** *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* (Nov. 8, 2017) 2:14-cv-04464 (E.D. Pa.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* (BMW, Mazda, Toyota, & Subaru) (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and of the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether*



*favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer, *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*** (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale, *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.*** (May 15, 2017) CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon, *Klug v. Watts Regulator Company*** (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers, *Bias v. Wells Fargo & Company, et al.*** (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia, *Whitton v. Deffenbaugh Industries, Inc., et al.*** (Dec. 14, 2016) 2:12-cv-02247 and ***Gary, LLC v. Deffenbaugh Industries, Inc., et al.*** 2:13-cv-02634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane, *In re: Shop-Vac Marketing and Sales Practices Litigation*** (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*



**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (Nov. 21, 2016) 60CV03-4661 (Ark. Cir. Ct.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A.,* **as part of** *In re: Checking Account Overdraft Litigation* (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (Sept. 20, 2016) MDL No. 2540 (D.N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (Apr. 11, 2016) 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.* (July 30, 2015) 14-10979 (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D.S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and


HILSOFT NOTIFICATIONS       PORTLAND AREA OFFICE       10300 SW ALLEN BLVD       BEAVERTON, OR 97005       T 503-597-7697

*preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.*

**Judge Robert W. Gettleman,** ***Adkins, et al. v. Nestlé Purina PetCare Company, et al.*** (June 23, 2015) 1:12-cv-02871 (N.D. Ill.):

*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** ***Steen v. Capital One, N.A.*** (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of ***In re: Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.):

*The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*

**Judge Rya W. Zobel,** ***Gulbankian et al. v. MW Manufacturers, Inc.*** (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** ***Rose v. Bank of America Corporation, et al.*** (Aug. 29, 2014) 5:11-cv-02390 and 5:12-cv-0400 (N.D. Cal.):

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** ***Wong, et al. v. Alacer Corp.*** (June 27, 2014) CGC-12-519221 (Sup. Ct. Cal.):

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*



**Judge John Gleeson,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2013) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards…  The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al.* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

> The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation* (Apr. 5, 2013) 3:08-cv-05701 (N.D. Cal.):

> Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.

**Judge Ann D. Montgomery,** *In re: Zurn Pex Plumbing Products Liability Litigation* (Feb. 27, 2013) MDL No. 1958, 08-md-1958 (D. Minn.):

> The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.

> The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).

**Magistrate Judge Stewart,** *Gessele, et al. v. Jack in the Box, Inc.* (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement)* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local papers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)



*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier,** ***In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** *(Economic and Property Damages Settlement)* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.  The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each.  These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings.  The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris,** ***Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.*** (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class.  Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King,** ***Sachar v. Iberiabank Corporation*** (Apr. 26, 2012) as part of ***In re: Checking Account Overdraft*** MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment."  In re: Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977).  The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  The Notice also informed Settlement Class*



*Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the Action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters,** ***Vereen v. Lowe's Home Centers*** (Apr. 13, 2012) SU10-cv-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** ***In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*** (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re: Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** ***Trombley v. National City Bank*** (Dec. 1, 2011) 1:10-cv-00232 (D.D.C.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** ***Schulte v. Fifth Third Bank*** (July 29, 2011) 1:09-cv-06655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** ***Williams v. Hammerman & Gainer Inc.*** (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court*



*to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill,** ***Mathena v. Webster Bank, N.A.*** (Mar. 24, 2011) 3:10-cv-01448 (D. Conn.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart,** ***Miller v. Basic Research, LLC*** (Sept. 2, 2010) 2:07-cv-00871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** ***Pavlov v. Continental Casualty Co.*** (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

## LEGAL NOTICE CASES

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| ***Yamagata et al. v. Reckitt Benckiser LLC*** | N.D. Cal., No. 3:17-cv-03529 |
| ***Thompson et al. v. Community Bank, N.A.*** **(Overdraft)** | N.D.N.Y., No. 8:19-cv-0919 |
| ***Silveira v. M&T Bank*** | C.D. Cal., No. 2:19-cv-06958 |
| ***In re Toll Roads Litigation; Borsuk et al. v. Foothill/Eastern Transportation Corridor Agency, et al.*** **(OCTA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |
| ***In Re: Toll Roads Litigation*** **(3M/TCA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |



| | |
|---|---|
| *Pearlstone v. Wal-Mart Stores, Inc.* **(Sales Tax)** | C.D. Cal., No. 4:17-cv-02856 |
| *Zanca, et al. v. Epic Games, Inc.* **(Fortnite or Rocket League Video Games)** | Sup Ct. Wake Cnty., N.C., No. 21-CVS-534 |
| *In re: Flint Water Cases* | E.D. Mich., No. 5:16-cv-10444 |
| *Kukorinis, et al. v. Walmart, Inc.* | S.D. Fla., No. 1:19-cv-20592 |
| *Grace v. Apple, Inc.* | N.D. Cal., No. 17-CV-00551 |
| *Alvarez v. Sirius XM Radio Inc.* | C.D. Cal., No. 2:18-cv-8605 |
| *In re: Pre-Filled Propane Tank Antitrust Litigation* | W.D. Mo., No. MDL No. 2567, No. 14-2567 |
| *In re: Disposable Contact Lens Antitrust Litigation* **(ABB Concise Optical Group, LLC)** | M.D. Fla., No. 3:15-md-02626 |
| *Bally v. State Farm Insurance Company* | N.D. Cal., No. 3:18-cv-04954 |
| *Morris v. Provident Credit Union* **(Overdraft)** | Sup. Ct. Cal. Cty. of San Fran., No. CGC-19-581616 |
| *Pennington v. Tetra Tech, Inc. et al.* | N.D. Cal., No. 3:18-cv-05330 |
| *Maldonado et al. v. Apple Inc, et al.* | N.D. Cal., No. 3:16-cv-04067 |
| *UFCW & Employers Benefit Trust v. Sutter Health, et al.* | Sup. Ct. of Cal., Cnty of San Fran., No. CGC 14-538451 Consolidated with CGC-18-565398 |
| *Fitzhenry v. Independent Home Products, LLC* **(TCPA)** | D.S.C., No. 2:19-cv-02993 |
| *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.* | C.D. Cal., Nos. 8:17-CV-00838 & 18-cv-02223 |
| *Sager, et al. v. Volkswagen Group of America, Inc., et al.* | D.N.J., No. 18-cv-13556 |
| *Bautista v. Valero Marketing and Supply Company* | N.D. Cal., No. 3:15-cv-05557 |
| *Snee Farm Lakes Homeowner's Association Inc. v. The Commissioners of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks* | Ct. of Com. Pleas., S.C., No. 2018-CP-10-2764 |
| *Richards, et al. v. Chime Financial, Inc.* | N.D. Cal., No. 4:19-cv-06864 |
| *In re: Health Insurance Innovations Securities Litigation* | M.D. Fla., No. 8:17-cv-02186 |
| *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* **(Data Breach)** | W.D. Wis., No. 18-cv-327 |
| *Smith v. Costa Del Mar, Inc.* | M.D. Fla., No. 3:18-cv-1011 |
| *Al's Discount Plumbing, et al. v. Viega, LLC* **(Building Products)** | M.D. Pa., No. 19-cv-00159 |
| *The Weinstein Company Holdings, LLC* | Bankr. D. Del., No. 18-10601 |
| *Rose v. The Travelers Home and Marine Insurance Company, et al.* | E.D. Pa., No. 19-cv-00977 |
| *Paris et al. v. Progressive American Insurance Company, et al.* | S.D. Fla., No. 19-cv-21761 |
| *Chinitz v. Intero Real Estate Services* | N.D. Cal., No. 5:18-cv-05623 |
| *Eastwood Construction LLC, et al. v. City of Monroe The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe* | Sup. Ct. N.C., Nos. 18-CVS-2692 & 19-CVS-1825 |

| | |
|---|---|
| *Garvin v. San Diego Unified Port District* | Sup. Ct. Cal., No. 37-2020-00015064 |
| *Consumer Financial Protection Bureau v. Siringoringo Law Firm* | C.D. Cal., No. 8:14-cv-01155 |
| *Robinson v. Nationstar Mortgage LLC* | D. Md., No. 8:14-cv-03667 |
| *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (TCPA) | S.D. Ala., No. 1:19-cv-00563 |
| *In re: Libor-Based Financial Instruments Antitrust Litigation* | S.D.N.Y., MDL No. 2262, No. 1:11-md-2262 |
| *Izor v. Abacus Data Systems, Inc.* (TCPA) | N.D. Cal., No. 19-cv-01057 |
| *Cook, et al. v. South Carolina Public Service Authority, et al.* | Ct. of Com. Pleas. 13th Jud. Cir. S.C., No. 2019-CP-23-6675 |
| *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* | 30th Jud. Dist. Tenn., No. CH-13-04871-1 |
| *In re: Roman Catholic Diocese of Harrisburg* | Bank. Ct. M.D. Pa., No. 1:20-bk-00599 |
| *Denier, et al. v. Taconic Biosciences, Inc.* | Sup Ct. N.Y., No. 00255851 |
| *Robinson v. First Hawaiian Bank* (Overdraft) | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| *Burch v. Whirlpool Corporation* | W.D. Mich., No. 1:17-cv-00018 |
| *Armon, et al. v. Washington State University* (Data Breach) | Sup. Ct. Wash., No. 17-2-23244-1 consolidated with No. 17-2-25052-0 |
| *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* | S.D. Fla., No. 17-cv-23033 |
| *Prather v. Wells Fargo Bank, N.A.* (TCPA) | N.D. Ill., No. 1:17-cv-00481 |
| *In re: Wells Fargo Collateral Protection Insurance Litigation* | C.D. Cal., No. 8:17-ml-02797 |
| *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.* | D. Ore., No. 3:16-cv-00580 |
| *Coffeng, et al. v. Volkswagen Group of America, Inc.* | N.D. Cal., No. 17-cv-01825 |
| *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.) | M.D. Fla., No. 3:15-md-02626 |
| *Audet, et al. v. Garza, et al.* | D. Conn., No. 3:16-cv-00940 |
| *Hyder, et al. v. Consumers County Mutual Insurance Company* | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:19-cv-00248 |
| *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | D.S.C., MDL No. 2613, No. 6:15-MN-02613 |
| *Liggio v. Apple Federal Credit Union* | E.D. Vir., No. 1:18-cv-01059 |
| *Garcia v. Target Corporation* (TCPA) | D. Minn., No. 16-cv-02574 |
| *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* | N.D. Ill., No. 1:18-cv-1061 |
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | N.D. Cal., No. 3:16-cv-6450 |



| *In re: Optical Disk Drive Products Antitrust Litigation* | N.D. Cal., MDL No. 2143, No. 3:10-md-2143 |
|---|---|
| *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:17-cv-00001 |
| *In re: Kaiser Gypsum Company, Inc., el al.* **(Asbestos)** | Bankr. W.D. N.C., No. 16-31602 |
| *Kuss v. American HomePatient, Inc., et al.* **(Data Breach)** | M.D. Fla., No. 8:18-cv-2348 |
| *Lusnak v. Bank of America, N.A.* | C.D. Cal., No. 14-cv-1855 |
| *In re: Premera Blue Cross Customer Data Security Breach Litigation* | D. Ore., No. 3:15-md-2633 |
| *Elder v. Hilton Worldwide Holdings, Inc.* **(Hotel Stay Promotion)** | N.D. Cal., No. 16-cv-00278 |
| *Grayson, et al. v. General Electric Company* **(Microwaves)** | D. Conn., No. 3:13-cv-01799 |
| *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup. Ct Cal., No. BC 579498 |
| *Lashambae v. Capital One Bank, N.A.* **(Overdraft)** | E.D.N.Y., No. 1:17-cv-06406 |
| *Trujillo, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No.3:15-cv-01394 |
| *Cox, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No. 3:17-cv-00597 |
| *Pirozzi, et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-CV-807 |
| *Lehman v. Transbay Joint Powers Authority, et al.* **(Millennium Tower)** | Sup. Ct. Cal., No. GCG-16-553758 |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., MDL No. 2744 & No. 16-md-02744 |
| *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A., as part of In re: Checking Account Overdraft* | S.D. Fla., No. 1:10-CV-22190, as part of MDL No. 2036 |
| *Behfarin v. Pruco Life Insurance Company, et al.* | C.D. Cal., No. 17-cv-05290 |
| *In re: Renovate America Finance Cases* | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| *Nelson v. Roadrunner Transportation Systems, Inc.* **(Data Breach)** | N.D. Ill., No. 1:18-cv-07400 |
| *Skochin, et al. v. Genworth Life Insurance Company, et al.* | E.D. Vir., No. 3:19-cv-00049 |
| *Walters, et al. v. Target Corp.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-1678 |
| *Jackson, et al. v. Viking Group, Inc., et al.* | D. Md., No. 8:18-cv-02356 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Burrow, et al. v. Forjas Taurus S.A., et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Sup. Ct., No. 2762-16cp |
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Pa., No. 2:09-md-02034 |
| *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |



| | |
|---|---|
| *Rabin v. HP Canada Co., et al.* | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| *McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.* | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| *Di Filippo v. The Bank of Nova Scotia, et al.* (Gold Market Instrument) | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | Sup. Ct. Cal., No. BC589243 |
| *Lloyd, et al. v. Navy Federal Credit Union* | S.D. Cal., No. 17-cv-1280 |
| *Luib v. Henkel Consumer Goods Inc.* | E.D.N.Y., No. 1:17-cv-03021 |
| *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (TCPA) | C.D. Cal., No. 5:15-cv-02190 |
| *In re: HP Printer Firmware Update Litigation* | N.D. Cal., No. 5:16-cv-05820 |
| *In re: Dealer Management Systems Antitrust Litigation* | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| *Mosser v. TD Bank, N.A. and Mazzada, et al. v. TD Bank, N.A.,* as part of *In re: Checking Account Overdraft* | E.D. Pa., No. 2:10-cv-00731, S.D. Fla., No. 10-cv-21386 and S.D. Fla., No. 1:10-cv-21870, as part of S.D. Fla., MDL 2036 |
| *Naiman v. Total Merchant Services, Inc., et al.* (TCPA) | N.D. Cal., No. 4:17-cv-03806 |
| *In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation* | Sup. Ct. Cal., No. CV2016-013446 |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (Data Breach) | N.D. Cal., No. 3:16-cv-05387 |
| *Stahl v. Bank of the West* | Sup. Ct. Cal., No. BC673397 |
| *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* | S.D.N.Y., No. 15-cv-9924 |
| *Tashica Fulton-Green, et al. v. Accolade, Inc.* | E.D. Pa., No. 2:18-cv-00274 |
| *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation* | N.D. Ala., MDL No. 2595, No. 2:15-CV-222 |
| *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* | S.D. Tex., No. 4:17-cv-3852 |
| *Cowen v. Lenny & Larry's Inc.* | N.D. Ill., No. 1:17-cv-01530 |
| *Martin v. Trott* (MI - Foreclosure) | E.D. Mich., No. 2:15-cv-12838 |
| *Knapper v. Cox Communications, Inc.* (TCPA) | D. Ariz., No. 2:17-cv-00913 |
| *Dipuglia v. US Coachways, Inc.* (TCPA) | S.D. Fla., No. 1:17-cv-23006 |
| *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (TCPA) | N.D. Cal., No. 3:16-cv-05486 |
| *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.* | S.D. Ill., No. 3:13-cv-00454 |
| *Raffin v. Medicredit, Inc., et al.* | C.D. Cal., No. 15-cv-4912 |



| | |
|---|---|
| *Gergetz v. Telenav, Inc.* **(TCPA)** | N.D. Cal., No. 5:16-cv-04261 |
| *Ajose, et al. v. Interline Brands Inc.* **(Plumbing Fixtures)** | M.D. Tenn., No. 3:14-cv-01707 |
| *Underwood v. Kohl's Department Stores, Inc., et al.* | E.D. Pa., No. 2:15-cv-00730 |
| *Surrett, et al. v. Western Culinary Institute, et al.* | Ore. Cir., County of Multnomah, No. 0803-03530 |
| *Vergara, et al., v. Uber Technologies, Inc.* **(TCPA)** | N.D. Ill., No. 1:15-CV-06972 |
| *Watson v. Bank of America Corporation, et al.; Bancroft-Snell et al. v. Visa Canada Corporation, et al.; Bakopanos v. Visa Canada Corporation, et al.; Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank, et al.; Hello Baby Equipment Inc. v. BofA Canada Bank and others* **(Visa and Mastercard Canadian Interchange Fees)** | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – BMW, Mazda, Subaru, and Toyota)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – Honda and Nissan)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEM – Ford)** | S.D. Fla., MDL No. 2599 |
| *Poseidon Concepts Corp., et al.* **(Canadian Securities Litigation)** | Ct. of QB of Alberta, No. 1301-04364 |
| *Callaway v. Mercedes-Benz USA, LLC* **(Seat Heaters)** | C.D. Cal., No. 8:14-cv-02011 |
| *Hale v. State Farm Mutual Automobile Insurance Company, et al.* | S.D. Ill., No. 3:12-cv-0660 |
| *Farrell v. Bank of America, N.A.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-00492 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 2688, No. 16-MD-02688 |
| *Wallace, et al, v. Monier Lifetile LLC, et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-0940 |
| *Pantelyat, et al. v. Bank of America, N.A., et al.* **(Overdraft / Uber)** | S.D.N.Y., No. 16-cv-08964 |
| *Falco et al. v. Nissan North America, Inc., et al.* **(Engine – CA & WA)** | C.D. Cal., No. 2:13-cv-00686 |
| *Alaska Electrical Pension Fund, et al. v. Bank of America N.A., et al.* **(ISDAfix Instruments)** | S.D.N.Y., No. 14-cv-7126 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Sup. Ct. Cal., No. RG16813803 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Orlander v. Staples, Inc.* | S.D.N.Y., No. 13-cv-0703 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* **(TCPA)** | S.D. Fla., No. 1:17-cv-22967 |
| *Gordon, et al. v. Amadeus IT Group, S.A., et al.* | S.D.N.Y., No. 1:15-cv-05457 |
| *Alexander M. Rattner v. Tribe App., Inc., and Kenneth Horsley v. Tribe App., Inc.* | S.D. Fla., Nos. 1:17-cv-21344 & 1:14-cv-2311 |



| | |
|---|---|
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* | E.D. Pa., No. 2:14-cv-04464 |
| *Mahoney v. TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Ma, et al. v. Harmless Harvest Inc.* (Coconut Water) | E.D.N.Y., No. 2:16-cv-07102 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. Ga., No. 2:16-cv-132 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *McKnight, et al. v. Uber Technologies, Inc., et al.* | N.D. Cal., No. 14-cv-05615 |
| *Gottlieb v. Citgo Petroleum Corporation* (TCPA) | S.D. Fla., No. 9:16-cv-81911 |
| *Farnham v. Caribou Coffee Company, Inc.* (TCPA) | W.D. Wis., No. 16-cv-00295 |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al.* (FirstMerit Overdraft Fees) | Ohio C.P., No. 11CV000090 |
| *Morton v. Greenbank* (Overdraft Fees) | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.* (Overdraft Fees) | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Klug v. Watts Regulator Company* (Product Liability) | D. Neb., No. 8:15-cv-00061 |
| *Bias v. Wells Fargo & Company, et al.* (Broker's Price Opinions) | N.D. Cal., No. 4:12-cv-00664 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al.* (Data Breach) | N.D. Ill., No. 1:15-cv-02228 |
| *Hawkins v. First Tennessee Bank, N.A., et al.* (Overdraft Fees) | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch Settlement) | N.D. Cal., MDL No. 2672 |
| *In re: HSBC Bank USA, N.A.* | Sup. Ct. N.Y., No. 650562/11 |
| *Glaske v. Independent Bank Corporation* (Overdraft Fees) | Cir. Ct. Mich., No. 13-009983 |
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| *In re: Lithium Ion Batteries Antitrust Litigation* | N.D. Cal., MDL No. 2420, No. 4:13-MD-02420 |
| *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* | S.D. Fla., No. 14-cv-23120 |
| *Small v. BOKF, N.A.* | D. Colo., No. 13-cv-01125 |
| *Forgione v. Webster Bank N.A.* (Overdraft Fees) | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |



| | |
|---|---|
| *Swift v. BancorpSouth Bank*, as part of *In re: Checking Account Overdraft* | N.D. Fla., No. 1:10-cv-00090, as part of S.D. Fla, MDL No. 2036 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.* *Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., No. 2:12-cv-02247 D. Kan., No. 2:13-cv-02634 |
| *In re: Citrus Canker Litigation* | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D.N.J., MDL No. 2540 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599 |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., No. 13-C-5380 |
| *Russell Minoru Ono v. Head Racquet Sports USA* | C.D. Cal., No. 2:13-cv-04222 |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., No. 13-C-3212 |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., No. 14-cv-5731 |
| *In re: Energy Future Holdings Corp., et al.* (Asbestos Claims Bar Notice) | Bankr. D. Del., No. 14-10979 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| *Steen v. Capital One, N.A.*, as part of *In re: Checking Account Overdraft* | E.D. La., No. 2:10-cv-01505 and 1:10-cv-22058, as part of S.D. Fla., MDL No. 2036 |
| *Childs, et al. v. Synovus Bank, et al.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: MI Windows and Doors Inc. Products Liability Litigation* (Building Products) | D.S.C., MDL No. 2333 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Scharfstein v. BP West Coast Products, LLC* | Ore. Cir., County of Multnomah, No. 1112-17046 |
| *Adkins, et al. v. Nestlé Purina PetCare Company, et al.* | N.D. Ill., No. 1:12-cv-02871 |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |
| *Hawthorne v. Umpqua Bank* (Overdraft Fees) | N.D. Cal., No. 11-cv-06700 |
| *Gulbankian, et al. v. MW Manufacturers, Inc.* | D. Mass., No. 1:10-cv-10392 |
| *Costello v. NBT Bank* (Overdraft Fees) | Sup. Ct. Del Cnty, N.Y., No. 2011-1037 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., MDL No. 2221, No. 11-MD-2221 |



| | |
|---|---|
| *Wong, et al. v. Alacer Corp.* **(Emergen-C)** | Sup. Ct. Cal., No. CGC-12-519221 |
| *Mello et al. v. Susquehanna Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill., No. 09-CV-7666 |
| *Simpson v. Citizens Bank* **(Overdraft Fees)** | E.D. Mich., No. 2:12-cv-10267 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| *Simmons v. Comerica Bank, N.A.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McGann, et al., v. Schnuck Markets, Inc.* **(Data Breach)** | Mo. Cir. Ct., No. 1322-CC00800 |
| *Rose v. Bank of America Corporation, et al.* **(TCPA)** | N.D. Cal., Nos. 5:11-cv-02390 & 5:12-cv-0400 |
| *Johnson v. Community Bank, N.A., et al.* **(Overdraft Fees)** | M.D. Pa., No. 3:12-cv-01405 |
| *National Trucking Financial Reclamation Services, LLC, et al. v. Pilot Corporation, et al.* | E.D. Ark., No. 4:13-cv-00250 |
| *Price v. BP Products North America* | N.D. Ill., No. 12-cv-06799 |
| *Yarger v. ING Bank* | D. Del., No. 11-154-LPS |
| *Glube, et al. v. Pella Corporation, et al.* **(Building Products)** | Ont. Super. Ct., No. CV-11-4322294-00CP |
| *Fontaine v. Attorney General of Canada* **(Mistassini Hostels Residential Schools)** | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 |
| *Miner v. Philip Morris Companies, Inc., et al.* **(Light Cigarettes)** | Ark. Cir. Ct., No. 60CV03-4661 |
| *Williams v. SIF Consultants of Louisiana, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Evans, et al. v. TIN, Inc., et al.* **(Environmental)** | E.D. La., No. 2:11-cv-02067 |
| *Anderson v. Compass Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank* as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Blahut v. Harris, N.A.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Zurn Pex Plumbing Products Liability Litigation* | D. Minn., MDL No. 1958, No. 08-md-1958 |
| *Saltzman v. Pella Corporation* **(Building Products)** | N.D. Ill., No. 06-cv-4481 |
| *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* **(Mastercard & Visa)** | E.D.N.Y., MDL No. 1720, No. 05-MD-1720 |
| *RBS v. Citizens Financial Group, Inc.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| *Gessele, et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-960 |
| *Vodanovich v. Boh Brothers Construction* (Hurricane Katrina Levee Breaches) | E.D. La., No. 05-cv-4191 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement) | E.D. La., MDL No. 2179 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic & Property Damages Settlement) | E.D. La., MDL No. 2179 |
| *Marolda v. Symantec Corporation* (Software Upgrades) | N.D. Cal., No. 3:08-cv-05701 |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Fontaine v. Attorney General of Canada* (Stirland Lake and Cristal Lake Residential Schools) | Ont. Super. Ct., No. 00-CV-192059 CP |
| *Nelson v. Rabobank, N.A.* (Overdraft Fees) | Sup. Ct. Cal., No. RIC 1101391 |
| *Case v. Bank of Oklahoma*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McKinley v. Great Western Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Lawson v. BancorpSouth* (Overdraft Fees) | W.D. Ark., No. 1:12cv1016 |
| *LaCour v. Whitney Bank* (Overdraft Fees) | M.D. Fla., No. 8:11cv1896 |
| *Sachar v. Iberiabank Corporation*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Williams v. S.I.F. Consultants* (CorVel Corporation) | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Gwiazdowski v. County of Chester* (Prisoner Strip Search) | E.D. Pa., No. 2:08cv4463 |
| *Williams v. Hammerman & Gainer, Inc.* (SIF Consultants) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Risk Management) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Hammerman) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gunderson v. F.A. Richard & Assocs., Inc.* (First Health) | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Delandro v. County of Allegheny* (Prisoner Strip Search) | W.D. Pa., No. 2:06-cv-00927 |
| *Mathena v. Webster Bank, N.A.*, as part of *In re: Checking Account Overdraft* | D. Conn, No. 3:10-cv-01448, as part of S.D. Fla., MDL No. 2036 |
| *Vereen v. Lowe's Home Centers* (Defective Drywall) | Ga. Super. Ct., No. SU10-CV-2267B |
| *Trombley v. National City Bank*, as part of *In re: Checking Account Overdraft* | D.D.C., No. 1:10-CV-00232, as part of S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| ***Schulte v. Fifth Third Bank*** **(Overdraft Fees)** | N.D. Ill., No. 1:09-cv-06655 |
| ***Satterfield v. Simon & Schuster, Inc.*** **(Text Messaging)** | N.D. Cal., No. 06-CV-2893 |
| ***In re: Heartland Data Payment System Inc. Customer Data Security Breach Litigation*** | S.D. Tex., MDL No. 2046 |
| ***Coyle v. Hornell Brewing Co.*** **(Arizona Iced Tea)** | D.N.J., No. 08-CV-2797 |
| ***Holk v. Snapple Beverage Corporation*** | D.N.J., No. 3:07-CV-03018 |
| ***Weiner v. Snapple Beverage Corporation*** | S.D.N.Y., No. 07-CV-08742 |
| ***Gunderson v. F.A. Richard & Assocs., Inc.*** **(Cambridge)** | 14th Jud. D. Ct. La., No. 2004-002417 |
| ***Miller v. Basic Research, LLC*** **(Weight-loss Supplement)** | D. Utah, No. 2:07-cv-00871 |
| ***In re: Countrywide Customer Data Breach Litigation*** | W.D. Ky., MDL No. 1998 |
| ***Boone v. City of Philadelphia*** **(Prisoner Strip Search)** | E.D. Pa., No. 05-CV-1851 |
| ***Little v. Kia Motors America, Inc.*** **(Braking Systems)** | N.J. Super. Ct., No. UNN-L-0800-01 |
| ***Opelousas Trust Authority v. Summit Consulting*** | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| ***Steele v. Pergo*** **(Flooring Products)** | D. Ore., No. 07-CV-01493 |
| ***Pavlov v. Continental Casualty Co.*** **(Long Term Care Insurance)** | N.D. Ohio, No. 5:07-cv-2580 |
| ***Dolen v. ABN AMRO Bank N.V.*** **(Callable CD's)** | Ill. Cir. Ct., Nos. 01-L-454 & 01-L-493 |
| ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** | D.D.C., MDL No. 1796 |
| ***In re: Katrina Canal Breaches Consolidated Litigation*** | E.D. La., No. 05-4182 |

Hilsoft-cv-146



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*In re Morgan Stanley Data Security Litigation,* 1:20-cv-05914-AT (S.D.N.Y)

# If you are a former or current Morgan Stanley client who was sent a data breach notice letter in July 2020 and/or June 2021 notifying you that your Personal Information may have been compromised in Data Security Incidents, you are eligible for benefits from a class action settlement.

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*
*Please read this Notice carefully and completely.*

A class action Settlement has been proposed in a case against Morgan Stanley Smith Barney LLC ("Morgan Stanley") regarding its decommissioning of information technology ("IT") equipment containing customer data ("the Data Security Incidents"). Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of certain IT assets and, as a result, may have exposed its clients' private information, including, but not limited to, names, addresses, Social Security numbers, driver's license numbers, income, asset value, asset holding information, dates of birth and other personal information (collectively, "PII"). Morgan Stanley first disclosed the Data Security Incidents in July 2020 and June 2021.

## AM I INCLUDED?

You are a Settlement Class Member if you have an existing or closed Morgan Stanley account established in the United States and were sent a notice letter by Morgan Stanley in July 2020 and/or June 2021 (the "Settlement Class"). If you received a notice from the Settlement Administrator about this class action Settlement addressed to you, then the Settlement Administrator has already determined that you are a Settlement Class Member. If you did not receive a notice but believe you may be a Class Member, please contact the Settlement Administrator at 1-xxx-xxx-xxxx to verify your identity and receive further information.

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement, if approved by the Court, would establish a Settlement Fund of $60 million, which will be used to provide at least 24-months of fraud insurance coverage for all Settlement Class Members, reimburse Class Members for out-of-pocket losses and lost time researching and remedying the effects of the Data Security Incidents, as well as to pay Plaintiffs' attorneys' fees, costs, and expenses, and a service award for each of the named Plaintiffs. As part of the Settlement, Morgan Stanley will also hire and pay for a third party for a period of 12 months to attempt to locate and retrieve additional missing IT devices potentially containing customer PII. Morgan Stanley will also pay reasonable costs of notice and administration separately from the Settlement Fund.

## DO I HAVE A LAWYER IN THE CASE?

The Court appointed Jean S. Martin of Morgan & Morgan and Linda P. Nussbaum of Nussbaum Law Group, P.C. as "Class Counsel" to represent all members of the Settlement Class. You will not be individually charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. Class Counsel intends to request up to 33 1/3% of the Settlement Fund

**THIS NOTICE IS ONLY A SUMMARY. THE FULL NOTICE AND SETTLEMENT AGREEMENT ARE AVAILABLE AT WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM.**

for attorneys' fees, costs, and expenses. The Court will decide the amount of fees and expenses to award. Class Counsel will also request that a Service Award of $5,000 be paid to each of the Class Representatives for their services in the litigation as representatives of the Settlement Class.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval of the Settlement and any requests for attorneys' fees, costs, and expenses. The Court has scheduled a Fairness Hearing at **[time]** on **[month day, year]**, in Courtroom Room 15-D at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.MorganStanleyDataSecuritySettlement.com or call 1-xxx-xxx-xxxx. You do not need to attend this hearing to receive benefits from the Settlement.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them at this hearing. The Court will also rule on the request for attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Class Representatives. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the Court will take to make these decisions.

## WHAT ARE MY OPTIONS?

| | |
|---|---|
| **Submit a Claim Form Deadline: Postmarked by [DATE]** | This is the only way to receive a monetary payment for losses suffered as a result of the Data Security Incidents. You can file a claim online on www.MorganStanleyDataSecuritySettlement.com, download a Claim Form from the Settlement Website and mail it, or you may call 1-xxx-xxx-xxxx and ask that a Claim Form be mailed to you. If your Claim Form is determined to be complete and valid, you will receive an email (at the email address provided in the Claim Form) after the Court grants Final Approval prompting you to select how you would like to be paid. You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check. |
| **Ask to be Excluded from the Settlement Deadline: Postmarked by [DATE]** | You will not receive a payment, but you will retain any rights to bring your own claims against Morgan Stanley related to the Data Security Incidents. This is the only option that allows you to bring a separate action against Morgan Stanley related to the Data Security Incidents. For detailed information on how to exclude yourself from the Settlement, please visit www.MorganStanleyDataSecuritySettlement.com. |
| **Object to the Settlement Deadline: Postmarked by [DATE]** | You may write to the Court about why you do not like the Settlement. You may also write to the Court about why you support the Settlement. For detailed information on how to object to or comment on the Settlement, please visit www.MorganStanleyDataSecuritySettlement.com. |
| **Go to the Final Approval Hearing [DATE]** | You may ask to speak in Court about the fairness of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. |

**THIS NOTICE IS ONLY A SUMMARY. THE FULL NOTICE AND SETTLEMENT AGREEMENT ARE AVAILABLE AT WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM.**

| **Do Nothing** | If you do nothing, you will not get a monetary payment from this Settlement. You will be entitled to enroll in Aura's Financial Shield Services for 24 months from the Effective Date of the Settlement, which will provide broad fraud insurance coverage for a period of at least 24 months, if the Court grants final approval. You will give up rights to submit a claim in this Settlement or to bring a different action against Morgan Stanley related to the Data Security Incidents. |
|---|---|

## NOTICE OF CLASS ACTION SETTLEMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re Morgan Stanley Data Security Litigation*
1:20-cv-05914-AT (S.D.N.Y)

# If you are a former and current Morgan Stanley client who was sent a data breach notice letter in July 2020 and/or June 2021 notifying you that your Personal Information may have been compromised in Data Security Incidents, you may be eligible for benefits from a class action Settlement.

*A federal court has authorized this Notice.  This is <u>not</u> a solicitation from a lawyer. Please read this Notice carefully and completely.*

- A Settlement has been reached with Morgan Stanley Smith Barney LLC ("Morgan Stanley" or "Defendant") in a class action lawsuit regarding the decommissioning or retiring of information technology ("IT") equipment that contained client data that occurred in 2016 and 2019 ("the Data Security Incidents"). Morgan Stanley issued notices to customers regarding the Data Security Incidents in July 2020 and/or June 2021. The Settlement, if approved, would create a fund of $60 million, which will be used to provide very substantial benefits to Settlement Class Members including at least 24-months of fraud insurance coverage, reimbursement to the members of the Settlement Class who file a valid claim for out-of-pocket losses and lost time researching and remedying the effects of the Data Security Incidents, as well as to pay Plaintiffs' attorneys' fees, costs, and expenses, and a service award for each of the named Plaintiffs.

- In addition, Morgan Stanley will hire a third party to work with Plaintiffs' counsel for a period of 12 months to attempt to locate and retrieve additional IT devices which have been sold to third parties.

- Morgan Stanley will also separately pay reasonable costs of notice and administration of the Settlement.

- The lawsuit was filed asserting claims against Morgan Stanley relating to the Data Security Incidents. Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of certain IT assets and that, as a result, unauthorized third parties may have gained access to Morgan Stanley's clients' private information, including, but not limited to, names, addresses, Social Security numbers, driver's license numbers, income, asset value, asset holding information, dates of birth and other personal information (collectively, "PII"). Some of these devices that may contain customer PII were sold on the internet and/or remain unaccounted for.

- Morgan Stanley denies all the claims, denies any liability whatsoever, and believes that no member of the Settlement Class, including the Plaintiffs, has sustained any damages or injuries due to the Data Security Incidents.

- The Settlement Class includes all individuals with existing or closed Morgan Stanley accounts established in the United States who received the notice letters sent by Morgan Stanley regarding the Data Security Incidents in July 2020 and/or June 2021. If you are a member of the Settlement Class, you should have received a Settlement notice from the Claims Administrator. That notice included a unique code for you to verify your identity to receive certain Settlement benefits described in this notice. If for some reason you have not received a unique code, but believe you are a Settlement Class Member, please call 1-xxx-xxx-xxxx to verify your identity and receive further information.

- You must file a Claim Form to receive a payment. You can file a claim online on this website, www.MorganStanleyDataSecuritySettlement.com, download a Claim Form and mail it, or you may call 1-xxx-xxx-xxxx and ask that a Claim Form be mailed to you. The claim deadline is [ADD DATE – 90 days from Notice].

### Your legal rights are affected even if you do nothing. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim Form** **Deadline:** Postmarked by Month Day, Year | This is the only way to receive a monetary payment for losses suffered as a result of the Data Security Incidents. You can file a claim online at www.MorganStanleyDataSecuritySettlement.com, download a Claim Form from the Settlement Website and mail it, or you may call 1-xxx-xxx-xxxx and ask that a Claim Form be mailed to you. For detailed information on how to submit a Claim Form, see Questions 10 through 12 below. |
| **Ask to be Excluded from the Settlement** **Deadline:** Postmarked by Month Day, Year | You will not receive a payment or any other Settlement benefits, but you will retain any rights to bring your own claims against Morgan Stanley related to the Data Security Incidents. This is the only option that allows you to bring a separate action against Morgan Stanley related to the Data Security Incidents. For detailed information on how to exclude yourself from the Settlement, see Questions 14 through 16 below. |
| **Object to the Settlement** **Deadline:** Postmarked by Month Day, Year | You may write to the Court about why you do not like the Settlement. You may also write the Court about why you support the Settlement. For detailed information on how to object to or comment on the Settlement, see Questions 17 and 18 below. |
| **Go to the Final Approval Hearing** Month Day, Year | You may ask to speak in Court about the fairness of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. |
| **Do Nothing** | If you do nothing, you will not get a monetary payment from this Settlement. For a period of 24 months from the Effective Date of the Settlement, you will be entitled to enroll in Aura's Financial Shield Services, which will provide broad fraud insurance coverage, for a period of at least 24 months, if the Court grants final approval. You will give up rights to submit a claim in this Settlement or to bring a different action against Morgan Stanley related to the Data Security Incidents. |

- These options – **and the deadlines to exercise them** – are explained in this notice.

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT**
**WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will only be made after the Court grants final approval of the Settlement and after any appeals are resolved in favor of the Settlement.

## WHAT THIS NOTICE CONTAINS?

**BASIC INFORMATION**............................................................................................................**Page 5**
1.   What is this Notice about?
2.   What is this lawsuit about?
3.   Why is this lawsuit a class action?
4.   Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ..........................................................................................**Page 6**
5.   Who is included in the Settlement?
6.   What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS**..............................................................................................**Page 6**
7.   What does the Settlement provide?
8.   What payments are available?

**HOW TO GET BENEFITS** ........................................................................................................**Page 8**
9.   How do I get these benefits?
10.  How will claims be decided?

**REMAINING IN THE SETTLEMENT** ...................................................................................**Page 8**
11.  Do I need to do anything to remain in the Settlement?
12.  What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ....................................................**Page 9**
13.  If I exclude myself, can I get a payment from this Settlement?
14.  If I do not exclude myself, can I bring a claim against Morgan Stanley for the same thing later?
15.  How do I exclude myself from the Settlement?

**THE LAWYERS REPRESENTING YOU**................................................................................**Page 9**
16.  Do I have a lawyer in this case?
17.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................................................**Page 10**
18.  How do I tell the Court that I do not like the Settlement?
19.  What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ...............................................................................**Page 11**
20.  When and where will the Court decide whether to approve the Settlement?
21.  Do I have to attend the hearing?
22.  May I speak at the hearing?

**IF YOU DO NOTHING** .............................................................................................................**Page 11**
23.  What happens if I do nothing?

**GETTING MORE INFORMATION**.......................................................................................**Page 12**
24.  How do I get more information?

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT
WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

# BASIC INFORMATION

## 1.        What is this Notice about?

The Court authorized this Notice to inform you about the proposed Settlement of this class action lawsuit known as *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914-AT (S.D.N.Y) (the "Action") and about all of your options before the Court decides whether to give "final approval" to the Settlement.

Judge Analisa Torres of the United States District Court for the Southern District of New York is overseeing this case. The people who brought the lawsuit are called the Plaintiffs. Morgan Stanley Smith Barney LLC ("Morgan Stanley") is called the Defendant.

## 2.        What is this lawsuit about?

The lawsuit claims that Morgan Stanley is responsible for two separate data security incidents (collectively, the "Data Security Incidents") that Plaintiffs allege compromised the personal identifying information ("PII") of approximately 15 million of Morgan Stanley's current and former clients. Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of information technology ("IT") equipment containing client PII. Many of these IT devices were sold to third parties and remain unaccounted for. Plaintiffs allege that, as a result of the Data Security Incidents, unauthorized third parties gained access to sensitive and private information of Morgan Stanley's current and former clients. The IT equipment at issue may have retained Morgan Stanley client PII such as: Social Security numbers, income, asset value, holding information, passport information, work and home addresses, telephone numbers, family members' names, dates of birth and other financial information.

The lawsuit asserts claims including: negligence, invasion of privacy, breach of implied contract, negligence per se, breach of fiduciary duty, and breach of confidence. The lawsuit seeks compensation for people who had losses as a result of the Data Security Incidents.

Morgan Stanley denies all of Plaintiffs' claims, denies any liability whatsoever, and believes that no member of the Settlement Class, including the Plaintiffs, has sustained any damages or injuries due to the Data Security Incidents.

## 3.        Why is this lawsuit a class action?

In a class action, one or more people called "Class Representatives" or "Plaintiffs" sue on behalf of all people who have similar claims.  All the people who have claims similar to the Plaintiffs are known as Class Members, except for those who exclude themselves from the class.

In this case, the Class Representatives are John and Midori Nelson, Sylvia Tillman, Mark Blythe, Vivian Yates, Cheryl and Richard Gamen, Amresh Jaijee, Richard Mausner, Desiree Shapouri, and Howard Katz.

## 4.        Why is there a Settlement?

By agreeing to settle, both sides avoid the cost and risk of a trial, and Settlement Class Members who submit a valid claim will promptly get compensation.  The Class Representatives and their attorneys believe the Settlement is fair, reasonable, and adequate and, thus, in the best interests of the Settlement

Class and its members. The Settlement is not an admission that Morgan Stanley did something wrong, but rather is a compromise to end the lawsuit.

# WHO IS IN THE SETTLEMENT?

**5.      Who is included in the Settlement?**

You are included in the Settlement if you have or had a Morgan Stanley account established in the United States and were sent a notice letter of the Data Security Incidents by Morgan Stanley in July 2020 and/or June 2021.  If you are a member of the Settlement Class, you should have received a Settlement notice from the Settlement Administrator.  That notice included a unique code for you to verify your identity to receive certain Settlement benefits described in this notice. If for some reason you have not received a unique code, but believe you are a Settlement Class Member, please call 1-xxx-xxx-xxxx to verify your identity and receive further information.

Specifically excluded from the Settlement Class are: (i) Morgan Stanley; (ii) the subsidiaries, parents, and affiliates of Morgan Stanley; (iii) any directors and senior executive officers of the entities covered by (i) and (ii) during the Class Period and members of their immediate families; (iv) any firm, trust, corporation, or other entity in which Morgan Stanley has or had a controlling interest; and (v) the legal representatives, heirs, successors, and assigns of any such excluded persons or entities. Also excluded from the Class are Settlement Class Members who timely and validly request exclusion from the Settlement Class (for more information about requesting exclusion see Questions 13–15).

**6.      What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement, or have any other questions related to the Settlement, you may call 1-XXX-XXX-XXXX with questions. You may also write with questions to Morgan Stanley Settlement Administrator, PO Box XXXX, [City], [State] XXXXX-XXXX.

Please do not contact the Court with questions.

# THE SETTLEMENT BENEFITS

**7.      What does the Settlement provide?**

To fully settle and release the claims of the Settlement Class Members related to the Data Security Incidents, Morgan Stanley has agreed to establish a $60 million fund (the "Settlement Fund") to (1) make fraud insurance coverage available to all Settlement Class Members for a period of at least 24 months; (2) make payments to Settlement Class Members who file a valid claim for out-of-pocket losses and lost time spent researching and remedying issues related to the Data Security Incidents; and (3) pay for attorneys' fees, costs, and expenses incurred by counsel for the Settlement Class as well as service awards for Plaintiffs.

Additionally, Morgan Stanley has agreed to hire a third party to attempt to locate and retrieve additional missing decommissioned IT devices. Morgan Stanley has also made substantial changes to its data security practices.

In addition, Morgan Stanley will pay reasonable costs of notice and administration of this Settlement separately from the Settlement Fund.

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT**
**WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

## 8.      What benefits are available?

All Settlement Class Members will be provided access to Aura's Financial Shield for a period of at least 24 months from the Effective Date of the Settlement without the need to submit a Claim Form. A link with a redeemable code to be used directly with Aura's Financial Shield was provided in the Notice you received from the Settlement Administrator. The financial fraud coverage provided focuses on protecting financial assets, freezing identity at 10 different bureaus including the three main credit bureaus, home and property title monitoring, income tax protection and other services.   Unlike traditional credit monitoring which focuses on identifying attempts to open new accounts in your name, the Financial Shield service provides real-time monitoring of your existing financial and investment accounts to alert you of any account changes and account takeover attempts, such as changes in address, a new signatory request, or requesting a replacement credit card. More information on the coverage may be found on the Settlement Website, www.MorganStanleyDataSecuritySettlement.com.

The Settlement also provides for substantial monetary relief.  The Settlement Fund will be used to make payments to people who submit valid claims for expenses and/or lost time incurred as a result of the Data Security Incidents. Settlement Class Members may submit a claim for both types of relief.

Settlement Class Members who spent time researching or remedying issues related to the Data Security Incidents may file a claim to receive reimbursement for up to four (4) hours at a rate of $25 per hour, with an attestation that their actions were taken in response to the Data Security Incidents. No separate documentation will be required for claims for lost time up to four (4) hours.

Settlement Class Members are eligible to receive reimbursement of up to $10,000 (in total per Settlement Class Member) for out-pocket expenses such as: unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing and unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after July 1, 2020, through the date of claim submission; miscellaneous expenses such as notary, fax, postage, copying and mileage; and reimbursement of up to an additional five (5) hours of time if Settlement Class Members are able to document time lost remedying issues related to the Data Security Incidents (at $25 per hour or, if you lost work, at a rate of documented compensation up to $50 per hour). Reasonable documentation must be submitted with your Claim Form showing that the Data Security Incidents caused the costs incurred in order to receive reimbursement for out-of-pocket expenses.

If there is insufficient money in the Settlement Fund to pay all claims, claims for out-of-pocket losses and lost time will be reduced on a pro rata basis (equal share). If money remains in the Settlement Fund after the payment of all claims, attorneys' fees, costs, and expenses, and service awards to the Class Representatives, the remaining money will be used to extend the coverage period for Aura's Financial Shield services for all Settlement Class Members.

# HOW TO GET BENEFITS

**9.      How do I get benefits?**

At least 24 months of Aura's Financial Shield are available to all Settlement Class Members without the need to file a Claim Form. Settlement Class Members will need to register for the service within 24 months of the Effective Date of the Settlement using the unique code sent in the Settlement notice. If you did not receive a unique code, but believe you are a Settlement Class Member, please call the Settlement Administrator at 1-xxx-xxx-xxxx to verify your identity and receive further information.

To get a monetary payment from the Settlement, you must file a Claim Form.  Please read the instructions carefully, fill out the Claim Form, provide reasonable documentation (where applicable), and submit it online at www.MorganStanleyDataSecuritySettlement.com or mail it postmarked no later than **[90 days after Notice date]**, to ADDRESS, CITY, STATE, ZIP. You may request a claim form by mail by calling 1-xxx-xxx-xxxx or visiting www.MorganStanleyDataSecuritySettlement.com.

After the Court grants Final Approval, if your Claim Form is determined to be complete and valid, you will receive an email (at the email address provided in the Claim Form) prompting you to select how you would like to be paid.  You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check.

**10.      How will claims be decided?**

The Settlement Administrator will initially decide whether the information provided on a Claim Form is complete and valid. The Settlement Administrator may request additional information from any claimant. If the required information is not provided on a timely basis, the claim will be considered invalid and will not be paid.

# REMAINING IN THE SETTLEMENT

**11.      Do I need to do anything to remain in the Settlement?**

You do not have to do anything to remain in the Settlement, but if you want a payment, you must submit a Claim Form postmarked by **[90 days after Notice date].**  To obtain the fraud insurance coverage, you need to register within 24 months of the Effective Date of the Settlement with the unique code provided to you.

**12.      What am I giving up as part of the Settlement?**

If the Settlement becomes final, you will give up your right to bring a separate against Morgan Stanley for any claims related to the Data Security Incidents.  The specific claims you are giving up against Morgan Stanley are described in Section 13 of the Settlement Agreement.  You will be releasing Morgan Stanley and all related people or entities as described in Section 13 of the Settlement Agreement.   The Settlement Agreement is available on the Settlement Website at www.MorganStanleyDataSecuritySettlement.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the law firms listed in Question 16 for free, or you can, of course, talk to your own lawyer at your own expense.

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT**
**WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from this Settlement, and you want to keep the right to bring a separate action against Morgan Stanley on your own regarding the Data Security Incidents, then you must take steps to get out of the Settlement Class.  This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

### 13.     If I exclude myself, can I get benefits from this Settlement?

No.  If you exclude yourself, you will not be entitled to any benefits or money from the Settlement. You will also not be bound by any judgment in this case. If you exclude yourself, you may not submit a Claim Form to ask for a payment and you may not enroll in Aura's Financial Shield as part of the Settlement.

### 14.     If I do not exclude myself, can I bring a claim against Morgan Stanley for the same thing later?

No.  Unless you exclude yourself, you give up any right to bring a separate action against Morgan Stanley for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class if you want to bring a separate action or to be part of any different proceeding relating to the claims in this case.

### 15.     How do I exclude myself from the Settlement?

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *In re Morgan Stanley Data Security Litigation,* 1:20-cv-05914-AT (S.D.N.Y). Include your name, address, and signature.  You cannot ask to be excluded on the phone, by email, or on the Settlement Website. You must mail your Exclusion Request postmarked by [**60 days from Notice date**], to:

> Morgan Stanley Data Security Incidents Settlement
> ATTN: EXCLUSION REQUEST
> c/o Settlement Administrator
> ADDRESS
> CITY STATE ZIP

Also mail a copy of your Exclusion Request to the lawyers listed in Question 16 below.

# THE LAWYERS REPRESENTING YOU

### 16.     Do I have a lawyer in this case?

Yes.  The Court appointed the following lawyers as "Class Counsel" to represent all members of the Settlement Class:

| Jean S. Martin | Linda P. Nussbaum |
|---|---|
| Morgan & Morgan | Nussbaum Law Group, P.C. |
| 201 N. Franklin Street, 7th Floor | 1211 Avenue of the Americas, 40th Fl. |
| Tampa, Florida 33602 | New York, NY 10036 |
| (813) 559-4908 | (917) 438-9189 |
| jmartin@ForThePeople.com | lnussbaum@nussbaumpc.com |

You will not be individually charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17.    How will Class Counsel be paid?

The Settlement Agreement does not provide for a specific amount to be paid to Class Counsel, but does allow the Court to award reasonable attorneys' fees and costs incurred on behalf of the Class to be paid from the Settlement Fund.  Class Counsel intends to request up to 33 1/3% of the Settlement Fund for attorneys' fees and reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation. The Court will decide the amount of fees and expenses to award.

Class Counsel will also request that Service Awards of $5,000 be paid to each of the Class Representatives for bringing the lawsuit and serving as representatives in this litigation.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

## 18.    How do I tell the Court that I do not like the Settlement?

You can object to the Settlement if you do not like it or some part of it. The Court will consider your views. To do so, you must file a written objection in this case, *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914-AT (S.D.N.Y), with the Clerk of the Court at the address below and mail a copy of your objection to Class Counsel and Counsel for Morgan Stanley at the addresses below.

Your objection must include all of the following information: (i) your full name, address, telephone number, and e-mail address (if any); (ii) information identifying you as a Settlement Class Member; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe applicable; (iv) the identity of all counsel representing you; (v) a statement whether you and/or your counsel will appear at the Final Fairness Hearing; and (vi) your signature and the signature of your duly authorized attorney or other duly authorized representative, if applicable.

Your objection must be **postmarked** no later than **[60 days after Notice date]** to:

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT
WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of Court<br>Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl St.<br>New York, NY 10007-1312 | Jean S. Martin<br>Morgan & Morgan<br>201 N. Franklin Street, 7th Fl<br>Tampa, FL 33602<br><br>Linda P. Nussbaum<br>Nussbaum Law Group, P.C.<br>1211 Avenue of the Americas,<br>40th Fl.<br>New York, NY 10036 | Brad S. Karp<br>Susanna M. Buergel<br>Paul, Weiss, Rifkind, Wharton &<br>Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br><br>Jane B. O'Brien<br>Paul, Weiss, Rifkind, Wharton &<br>Garrison LLP<br>2001 K Street NW<br>Washington, DC 20016 |

**19.     What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like something about the Settlement and why you do not think it should be approved.  You can object only if you do not exclude yourself from the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement.  If you exclude yourself, you cannot object to the Settlement because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval of the Settlement and any requests for attorneys' fees, costs, and expenses and service awards for the Class Representatives.

**20.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at **[time]** on **[month day, year]**, in Courtroom Room 15-D at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007-1312. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.MorganStanleyDataSecuritySettlement.com or call 1-xxx-xxx-xxxx.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made.  The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for service awards for the Class Representatives.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the Court will take to make these decisions.

**21.     Do I have to attend the hearing?**

No.  Class Counsel will present the Settlement to the Court.  You or your own lawyer are welcome to attend at your expense, but you are not required to do so.  If you send an objection, you do not have to come to the Court to talk about it.  As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 18, the Court will consider it.

**QUESTIONS?  CALL 1-XXX-XXX-XXXX OR VISIT**
**WWW.MORGANSTANLEYDATASECURITYSETTLEMENT.COM**

**22.      May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must file an objection according to the instructions in Question 18, including all of the information required.  You cannot speak at the hearing if you exclude yourself from the Settlement.

# IF YOU DO NOTHING

**23.      What happens if I do nothing?**

If you do nothing, you will get no money from this Settlement, but you will be entitled to access to Aura's Financial Shield for a period of at least 24 months from the Effective Date of the Settlement, if the Court grants final approval.  Once final approval of the Settlement is granted and the judgment becomes final, you will not be able to bring a separate action against Morgan Stanley about the legal issues in this case.

You must exclude yourself from the Settlement if you want to retain the right to bring a separate action against Morgan Stanley relating to the Data Security Incidents.

# GETTING MORE INFORMATION

**24.      How do I get more information?**

This Notice only provides a summary of the proposed Settlement.  You are urged to review the complete details about the Settlement which can be found in the Settlement Agreement available at www.MorganStanleyDataSecuritySettlement.com.  You also may write with questions to the Settlement Administrator at **EMAIL ADDRESS** or call the toll-free number, **XXX-XXX-XXXX.**

# SETTLEMENT CLAIM FORM

*In re Morgan Stanley Data Security Litigation,* 1:20-cv-05914-AT (S.D.N.Y)

**USE THIS FORM TO MAKE A CLAIM FOR REIMBURSEMENT OF
OUT-OF-POCKET LOSSES AND TIME INCURRED AS A RESULT
OF THE DATA SECURITY INCIDENTS ANNOUNCED BY
MORGAN STANLEY IN JULY 2020 AND JUNE 2021**

**THE DEADLINE TO SUBMIT THIS CLAIM FORM IS: [90 DAYS FROM NOTICE DATE]**

## I.    GENERAL INSTRUCTIONS

If you have an existing or closed Morgan Stanley account(s) established in the United States and received a Notice Letter regarding the Data Security Incidents in either July 2020 and/or June 2021, you are a "Settlement Class Member." The Settlement, if approved by the Court, would establish a Settlement Fund of $60 million, which will be used to provide at least 24-months of fraud insurance coverage for all Settlement Class Members, reimburse Class Members for out-of-pocket losses and lost time researching and remedying the effects of the Data Security Incidents, as well as to pay Plaintiffs' attorneys' fees, costs, and expenses, and a service award for each of the named Plaintiffs.

If you are a Settlement Class Member, and you believe you spent money or time related to the Morgan Stanley Data Security Incidents, then you may make a claim for reimbursement. As further described below, Settlement Class Members may make a claim for (1) reimbursement up to $10,000 for documented out-of-pocket losses; (2) up to 4 hours of "attested to" time compensable at $25.00 per hour; and/or (3) up to an additional 5 hours of "documented time" at either $25 per hour, or if you took time from work, at the rate of documented compensation up to $50 per hour, that you believe you incurred as a result of the Morgan Stanley Data Security Incidents.

If you received a notice from the Settlement Administrator about this class action Settlement addressed to you with a unique code, then the Settlement Administrator has already determined that you are a Settlement Class Member. If you did not receive a notice but believe you may be a Class Member, please contact the Settlement Administrator at 1-xxx-xxx-xxxx. To learn more about the Settlement, the benefits provided under the Settlement, and/or how to determine whether you are a Class Member (if you did not receive notice), go to **www.MorganStanleyDataSecuritySettlement.com**.

To the extent all Settlement Class Members' claims plus attorneys' fees, costs, and expenses, and service awards to the named Plaintiffs exceed the $60 million fund, then the amount of each claim will be reduced pro rata (equal share). If the claims of Settlement Class Members plus attorneys' fees, costs, and expenses, and service awards to the named Plaintiffs are less than the $60 million fund, the excess money will be used to extend the fraud insurance coverage for all Settlement Class Members.

Settlement Class Members who spent time researching or remedying issues related to the Data Security Incidents may receive reimbursement of up to 4 hours of time at a rate of $25 per hour with a statement attesting that their actions were taken in response to the Data Security Incidents ("Attested Time").  No documentation will be required.

Out-of-Pocket Losses incurred from March 1, 2016 to the present and which are documented may be eligible for reimbursement. Such Out-of-Pocket Losses include, but are not limited to:

- Unreimbursed losses, fees, or charges incurred as a result of identity fraud or theft connected with the possible misuse of your name, business or home email addresses, telephone number, birth date, Social Security Number, passport number, or financial account information ("Personal Information").

- Professional fees and other costs incurred addressing identity fraud or theft, including falsified tax returns or other identity fraud or theft, connected with the possible misuse of your Personal Information.

- Costs associated with credit freezes and credit repair services.

- The costs of credit monitoring or identity protection services you obtained on or after July 1, 2020, through the date of claim submission.

- Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance charges that you show were incurred in connection with identity fraud or theft connected with the possible misuse of your Personal Information.

This list provides examples only, and other costs due to one or more of the Data Security Incidents may also be eligible for reimbursement. However, YOU MUST BE ABLE TO DOCUMENT YOUR CLAIM for Out-of-Pocket Losses.

Additionally, Settlement Class Members who spent more than 4 hours researching or remedying issues related to the Data Security Incidents can claim up to an additional 5 hours at either $25 per hour, or if they took time off work, at the rate of documented compensation, up to $50 per hour ("Documented Time").

The Settlement Administrator has the sole authority to determine the validity of claims. Only valid claims will be paid. To the extent only portions of the claim are adequately documented and/or validated, only those portions will be paid. To the extent the amounts required to fund valid claims exceed the amount of the net Settlement Fund, the cash payments for the valid claims will be reduced on a *pro rata* (equal share) basis.

For your claim to be considered, you must fully complete this Claim Form. You can complete and submit this Claim Form online at [www.MorganStanleyDataSecuritySettlement.com](www.MorganStanleyDataSecuritySettlement.com) or by U.S. Mail sent to the following address: Morgan Stanley Data Security Incidents Settlement c/o Administrator, ADDRESS, CITY STATE ZIP. If you submit your claim by U.S. mail, make sure the completed and signed Claim Form are postmarked by **DATE.**

If you have any questions, please contact the Settlement Administrator by email at EMAILADDRESS or by telephone at 1-XXX-XXX-XXXX or send your question to the Settlement Administrator by U.S. mail using the address above.

After the Court grants Final Approval, if your Claim Form is determined to be complete and valid, you will receive an email (at the email address provided in this Claim Form) prompting you to select how you would like to be paid. You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check.

**You must notify the Settlement Administrator if your contact information changes after you send your Claim Form.**

**DEADLINE --** If you send in a Claim Form by U.S. mail, it must be postmarked by **DATE**. If you file a Claim Form online, then you must do so by **11:59 p.m. EST on DATE.**

## II.   CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes, you **MUST** notify the Settlement Administrator in writing at the address on page 2.

Claimant Last Name, First Name, Middle Initial

Other name(s) you use (if any)

Name of Representative (if someone else is filing this claim for the person named in the claim)

Mailing Address – Line 1: Street Address/P.O. Box

Mailing Address – Line 2 (If Applicable): Apartment/Suite/Floor Number

City                                   State                        Zip Code

Home Phone Number                      Cell Phone Number

Current Email Address

### III.   ATTESTED TIME SPENT

You may be eligible for reimbursement of up to 4 hours of time spent researching and/or remedying issues related to the Data Security Incidents (at $25 per hour) with a personal attestation and brief description of the actions taken.

Check only one box.
How much time did you spend? □ 1 Hour    □ 2 Hours    □ 3 Hours    □ 4 Hours

What actions did you take researching and/or remedying issues related to the Data Security Incidents?

_____
_____
_____
_____

**Attestation**

□ I attest that I spent the number of hours claimed above making reasonable efforts to research and/or remedy issues related to the Data Security Incidents

You may also be eligible for reimbursement of an additional 1 to 5 hours of time if you are able to document that additional time spent remedying issues related to the Data Security Incident(s) (at $25 per hour or, if you lost work, at a rate of documented compensation of up to $50 per hour). See below for more details and to make a claim.

### IV.   OUT-OF-POCKET LOSSES AND DOCUMENTED TIME SPENT

**Fill out the below to claim out-of-pocket losses (up to $10,000) relating to the Data Security Incidents (attach additional pages as needed):**

| Examples of Out-of-Pocket Losses | Examples of Supporting Documentation |
|---|---|
| Unreimbursed fraud losses or charges | *Account statement with unauthorized charges highlighted; correspondence from a financial institution or credit card agency declining to reimburse you for fraudulent charges* |
| Professional fees incurred in connection with identity theft, falsified tax returns, or other fraud or misuse of your personal information. | *Receipt for hiring service to assist you in addressing identity theft; accountant bill for re-filing tax return* |
| Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | *Letter from IRS or state about tax fraud in your name; documents reflecting length of time you waited to receive your tax refund and the amount* |
| Credit freeze | *Notices or account statements reflecting payment for a credit freeze.* |
| Credit monitoring ordered after July 2020 | *Receipts or account statements reflecting purchases made for credit monitoring services* |
| Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges | *Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled* |

Documentation is required for out-of-pocket claimed losses. Please be sure to include documentation to expedite the processing of your claim.

| Date Incurred | Description | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

If, in addition to the above, you spent <u>more than four hours</u> addressing issues related to the Data Security Incidents or took time off work, and you have documentation to support this extra time, you may submit a claim for up to an additional 5 hours (9 hours in total). You may be compensated at $25 per hour or unpaid time off work at your actual hourly rate up to $50 per hour, whichever is greater, for up to 5 hours.

• If you spent time remedying issues relating to Data Security Incidents, please indicate the number of hours here: _____

• Please explain in detail how this time was expended and why it was necessary:

_____
_____
_____
_____

• Please provide any available documentation of the potential fraud and/or identity theft that made this expenditure of time necessary (i.e. letter from IRS or bank; police report).

• If you took unpaid time off from work, please provide documentation of the number of hours that you took off from work, and your hourly wage.

**Attestation**

☐ I attest that Out-of-Pocket Expenses for preventative measures, such as obtaining credit monitoring services or credit freezes were incurred in response to the Notice Letters from Morgan Stanley regarding the Data Security Incidents.

☐ I attest that Out-of-Pocket Expenses for unreimbursed losses related to identity theft, falsified tax returns, or other alleged wrongdoing (collectively "Misconduct"), or for attempting to remedy Misconduct, are related to Misconduct I believe is connected to the Data Security Incidents and the Misconduct involved possible misuse of the type of Personal Information accessed in the Data Security Incidents (i.e., name, date of birth, Social Security Number, and account information).

## V.   VERIFICATION AND ATTESTATION UNDER OATH

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that the information provided in this Claim Form is, to the best of my knowledge, true and correct, and that I have not submitted another claim in connection with this Settlement and know of no other person having done so on my behalf.

_____

Signature of Claimant                                                                                          Date

## REMINDER CHECKLIST

1. Please make sure you answered all the questions on the Claim Form.

2. Please make sure that you signed and dated the Claim Form.

3. Please make sure you have included documentation for your out-of-pocket losses.

4. Please keep a copy of your completed Claim Form and your documentation for your own records.

5. If you have any questions, please first refer to the settlement website, www.MorganStanleyDataSecuritySettlement.com. You may also contact the Settlement Administrator by calling the toll-free number, 1-XXX-XXX-XXXX, by email to EMAILADDRESS, or by writing via U.S. mail addressed to Morgan Stanley Data Security Incidents Settlement c/o Administrator, ADDRESS, CITY STATE ZIP.