**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Morgan Stanley Data Security Litigation* | Civil Action No. 1:20-cv-05914-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT**
**MORGAN STANLEY SMITH BARNEY, LLC**

## TABLE OF CONTENTS

I.  Introduction ...................................................................................................................... 1

II. Summary of the Action and Settlement ........................................................................ 2

    A.  Background ............................................................................................................ 3

    B.  Terms of the Settlement ........................................................................................ 4

III. Preliminary Approval and Notice ................................................................................ 5

IV. The Settlement Merits Final Approval By The Court .................................................. 6

    A.  Plaintiffs Have Article III Standing ...................................................................... 6

    B.  The Settlement Meets the Standards for Final Approval Under Rule 23(e) ............... 7

    1.  Plaintiffs and Settlement Class Counsel Have Adequately Represented the
        Settlement Class in this Action .............................................................................. 9

    2.  The Settlement Was Negotiated at Arm's Length and Aided by a Respected and
        Experienced Mediator ........................................................................................... 11

    3.  The Relief Provided for the Class Is Adequate .................................................... 13

        a.  The Relief Provided is Superior to Continued Litigation .................................. 13

        b.  The Reaction of the Settlement Class ................................................................ 14

        c.  Stage of the Proceedings and Amount of Discovery Completed ....................... 21

        d.  The Risks of Continued Litigation .................................................................... 21

        e.  The Ability of Morgan Stanley to Withstand Greater Judgment ...................... 23

        f.  The Reasonableness of the Settlement Amount in Light of the Best Possible
           Recovery and the Risks of Litigation ......................................................... 24

    4.  The Remaining Rule 23(e)(2) Factors Support Final Approval ................................ 25

V.  The Court Should Certify the Settlement Class ............................................................ 26

VI. Notice To the Settlement Class Satisfied Rule 23 and Due Process .................................. 28

VII. Conclusion ................................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asare v. Change Grp. of N.Y., Inc.*, No. 12-cv-3371-CM,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................................... 20

*Attias v. Carefirst*, F.3d 620 (D.C. Cir. 2017) ............................................................... 6

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................... 20

*Belton v. GE Capital Consumer Lending, Inc.*, No. 21-cv-9493-CM,
  2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ............................................................ 12

*Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR,
  2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .......................................................... 22

*Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB,
  2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ............................................................ 16

*Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ............. 17

*Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012),
  *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ....................... 15, 16

*City of Detroit v. Grinnell Corp*, 495 F.2d 448 (2d Cir. 1974) .................... 8, 14, 16, 21

*City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132-CM-GWG,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*

*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ............................................ 7, 20

*D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ............................................... 15

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ........... 15, 17

*Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 and 14-cv-8714-CM,
  2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015) ........................................................... 21

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F.Supp.3d 290 (E.D.N.Y 2015) .............. 22

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................... 8

*Hall v. ProSource Techs., LLC*, No. 14-cv-2502-SIL,

2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ......................................................... 29

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE,
2010 WL 2643307, at *1 (S.D.N.Y. Jun. 25, 2010) ................................................ 14

*Hart v. RCI Hospital Holdings, Inc.*, No. 09-cv-3043-PAE,
2015 WL 5577713 (S.D.N.Y. Sep. 22, 2015)..................................................... 7, 19

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146,
2013 WL 1192479 (D.N.J. Mar. 22, 2013)............................................................. 17

*Hernandez v. Compass One, LLC*, No. 20-cv-7040-LJL,
2021 WL 4925561 (S.D.N.Y. Oct. 21, 2021) ........................................................ 19

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).............. 23

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................... 27

*In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*, No. 3:08-md-01998,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ....................................................... 15

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009),
*aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010 ................................. 10

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021) ................. 7

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............. 11

*In re Giant Interactive Group, Inc. Securities Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) .. 19, 23, 27

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................. 9, 11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 and 12-cv-5822-NRB,
2020 WL 6290596 (S.D.N.Y. Oct. 27, 2020) ........................................................ 29

*In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015).......................................... 13

*In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006)................................ 13

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879,
2022 WL 1396522 (D. Md. May 3, 2022) .............................................................. 22

*In re Merrill Lynch & Co., Inc. Res. Rep. Sec. Litig.*, 246 F.R.D. 156 (S.D.N.Y. 2007) ............. 17

*In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830-JPO,
2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021) ................................................ 28

*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307 (S.D.N.Y. 2020) ............ 8

*In re Nissan Radiator*, No.10-CV-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013).............. 16

*In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 21

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ...................................... 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ......................... 26

*In re Sony SCRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173-RPP,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................................... 23

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503 (E.D.N.Y. 2003) ............... 14

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) .................................................. 7, 17

*Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56 (S.D.N.Y. 2014) ................................... 12

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ......................................... 6

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................. 14, 20

*McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097-SEM,
2021 WL 165121 (C.D. Ill. Jan. 19, 2021) .................................................. 14

*McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) ................................... 6

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................ passim

*Montalvo v. Flywheel Sports, Inc.*, No. 16-cv-6269-PAE,
2018 WL 7825362 (S.D.N.Y. Jul. 27, 2018) ................................................. 19

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..................................... 28

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)................................................... 24

*Rievman v. Burlington N.R. Co.*, 118 F.R.D. 29 (S.D.N.Y. 1987) ................................. 16

*Schwartz v. Novo Industri A/S*, 119 F.R.D. 359 (S.D.N.Y. 1988) ................................. 16

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................ 10

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016) .......................................... 16

*Spicer v. Pier Sixty LLC*, No. 08-cv-10240-PAE,
2012 WL 4364503 (S.D.N.Y. Sep. 14, 2012) .................................................... 19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d. Cir. 2005) ....................... 7, 8, 28, 29

*Whirlpool Corp. Front–loading Washer Products Liab. Litig.*, No. 1:08-WP-65000,
2016 WL 5338012 (N.D. Ohio Sep. 23, 2016) ...................................................... 17

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .................................................. 27

## Other Authorities

*In re JPMorgan Treasury Futures Spoofing Litig.*, No. 1:20-cv-03515-PAE (S.D.N.Y. Jun. 3,
2022) (ECF No. 96 at ¶ 3) ........................................................................ 19

*In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript,
(S.D.N.Y. May 31, 2022) ................................................................... passim

*In re Zinc Antitrust Litig.*, No. 14-cv-3728-PAE (S.D.N.Y. Feb. 16, 2022) (ECF No. 327 at 1). 19

## Rules

Fed. R. Civ. P.  23(a)(4) ............................................................................ 27

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 29

Fed. R. Civ. P. 23(e)(2) ...................................................................... passim

## Treatises

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ........... 15

William B. Rubenstein, 4 Newberg On Class Actions § 13:49 (5th ed. 2012) ...................... 11

## I.     Introduction

Plaintiffs,[1] by and through the undersigned Settlement Class Counsel,[2] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement dated December 31, 2021 (ECF No. 81-2) and for certification of the Settlement Class.[3]

If approved, the Settlement will successfully resolve the claims of millions of individuals nationwide who were notified of Data Security Incidents in 2016 and 2019. The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Morgan Stanley to establish a non-reversionary Qualified Settlement Fund of $60 million ("Settlement Amount") for the benefit of eligible Class Members.[4] Additionally, Morgan Stanley will pay for the retention of Kroll, a third-party firm, to continue efforts to locate and retrieve missing Morgan Stanley IT Assets. Morgan Stanley also has committed to maintain substantial business practice changes in

---

[1]   Plaintiffs are Mark Blythe, Cheryl Gamen, Richard Gamen, Amresh Jaijee, Howard Katz, Richard Mausner, John Nelson, Midori Nelson, Desiree Shapouri, Silvia Tillman and Vivian Yates (collectively, "Plaintiffs").

[2] Judge Analisa Torres appointed Jean S. Martin of Morgan & Morgan Complex Litigation Group and Linda P. Nussbaum of Nussbaum Law Group, P.C. as Settlement Class Counsel. *See* Order dated January 18, 2022, ECF No. 82 at ¶ 2.

[3]   Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement or in the Declaration of Linda P. Nussbaum in Support of Plaintiffs' Motion for Final Approval of Settlement ("Nussbaum Decl. 7/22/2022") submitted herewith and the Declaration of Settlement Class Counsel Linda P. Nussbaum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs (ECF No. 102) ("Nussbaum Decl. 4/20/2022"). Both Nussbaum Declarations are an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Nussbaum Decl. 4/20/2022 for a detailed description of, *inter alia*: the procedural history of the Action and the claims asserted, the negotiations resulting in the Settlement and the risks of continued litigation.

[4]   The Settlement Amount has been deposited into escrow and is earning interest.

relation to its data security. Further, Morgan Stanley will pay all costs of notice and administration, presently estimated to be at least $8.2 million.

On January 18, 2022, Judge Analisa Torres preliminarily approved the Settlement, finding that the Court "will likely be able to approve the proposed Settlement as fair, reasonable, and adequate" and "will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all the requirements of Rule 23(a) and the requirements of Rule 23(b)(3)." Preliminary Approval Order ¶ 1 (ECF No. 82). The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 15,369,743 individual potential Class Members who were sent Notice, only 300 have timely requested exclusion and 43[5] have submitted timely objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs request the Court to finally approve the Settlement, grant Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs, and enter a final judgment dismissing this case.

## II.     Summary of the Action and Settlement

---

[5] The Settlement Administrator reports 45 objections to the Settlement. As explained in Appendix A, the Parties have reviewed all 45 filings and agree that one objection, which was not filed with the Court, was actually an exclusion, and the other was a motion to proceed in his individual capacity (ECF No. 92), which Morgan Stanley has already responded to (ECF No. 96). As such, the Parties count the total number of objections as 43.

Appreciating this Court's preference for brevity in memoranda of law,[6] Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 81-1) and their Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs (ECF No. 101) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiffs highlight the following:

### A.    Background

Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of retired IT assets containing personally identifiable information ("PII') of over 15 million of its current and former clients. Some of this equipment was then re-sold to third parties, without being properly wiped of data. At the outset of litigation, Class Counsel diligently engaged in comprehensive discovery and expert analysis to uncover how these incidents occurred and what was breached. Despite facts uncovered by Class Counsel, Morgan Stanley continued to vigorously defend the case and filed two motions to dismiss, stressing a lack of proof of any access by any unauthorized third party to any Morgan Stanley client PII. (ECF Nos. 47, 63). Morgan Stanley mounted challenges to the forensic findings of Plaintiffs' expert, holding steadfast to its claim that there was no evidence that any downstream purchasers had nefarious intent when purchasing the devices, and there was a lack of evidence any PII had been accessed or misused, citing for example, the absence of finding Morgan Stanley customer data for sale on the dark web. Class Counsel persisted and through many months of intensive discovery, expert analysis, legal analysis of Morgan Stanley's defenses, and three full days of in-person mediation, Class Counsel were in a well-informed position to accept a mediators' proposal and reach the very favorable Settlement before

---

[6]  *See* Judge Paul A. Engelmayer Individual Rules and Practices in Civil Cases, Revised April 2021.

the Court. Judge Diane Welsh (Ret.), the mediator whose proposal ultimately led to the Settlement, has submitted a declaration in support of final approval of the Settlement. *See* Declaration of Hon. Diane M. Welsh (Ret.) of JAMS in Support of Final Approval of Class Settlement, filed herewith ("Welsh Decl. 6/21/2022").

### B.      Terms of the Settlement

If the Settlement receives final approval, the $60 million non-reversionary Qualified Settlement Fund established by Morgan Stanley will be used to: 1) provide at least two years of comprehensive financial account fraud monitoring and insurance services for the entire Class (Aura's Financial Shield), without the need for a claimant to submit a Claim; 2) pay for out-of-pocket expense reimbursement up to $10,000 per Class Member for all unreimbursed actual, incurred costs or expenditures that are fairly traceable to the Data Security Incidents; and 3) pay for both attested lost time reimbursement (up to $100 per class member) and documented lost time reimbursement. Settlement Agreement ¶¶ 1.34, 2.2, 3.1, 4.1, 5.1. The Settlement Amount will also be used to pay for attorneys' fees and costs and service awards to the named Plaintiffs, as approved by the Court. *Id.* at ¶ 2.2. Morgan Stanley will separately bear the costs of notice and settlement administration, estimated to be at least $8.2 million. *Id.* at ¶¶ 7.1, 7.2. Morgan Stanley has also agreed to maintain business practice changes related to data security and to engage Kroll at its additional expense in an effort to locate and retrieve additional IT devices, which is significant in that it provides further protection from future potential harm for Class Members.

Based upon their extensive experience in complex litigation and data privacy, Class Counsel believe that the $60 million Settlement Amount will be ample to pay the claims of Settlement Class Members. However, if there are insufficient monies to pay all claims, claims for out-of-pocket losses and lost time will be reduced on a pro rata basis. *Id.* at ¶ 6.2. If monies remain in the Qualified Settlement Fund after the payment of all claims, attorneys' fees, costs, expenses,

and service awards to the Class Representatives, the remaining funds will be used to extend the coverage period for Aura's Financial Shield for all participants. No monies will revert to Morgan Stanley. *Id.* at ¶ 6.1.

In all, the total settlement value is greater than the $68.2 million that Morgan Stanley is paying to create the Qualified Settlement Fund and for costs of notice and claims administration. The Settlement uniquely provides for current compensation as well as meaningful protection against future harm and is one of the most substantial relief packages ever achieved on a per-Class Member basis in a data security class action.[7]

## III. Preliminary Approval and Notice

On December 31, 2021, Plaintiffs moved Judge Torres to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 81). On January 18, 2022, Judge Torres granted Plaintiffs' motion. (ECF No. 82). Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 15,369,743 potential members of the Settlement Class via U.S. mail and e-mail. *See* Declaration of Cameron R. Azari, Esq. at ¶ 25 ("Azari Decl."). Publication Notice was also placed in THE WALL STREET JOURNAL and INVESTOR'S BUSINESS WEEKLY. *Id.* at ¶ 26.[8]

---

[7] *See* Chart of Data Breach Settlements, Nussbaum Decl. 7/22/2022 at ¶ 15.

[8] On April 28, 2022, the parties advised the Court that Morgan Stanley discovered that 61,000 potential Class Members had been excluded from the notice distribution list due to a minor technical error. (ECF No. 109). At the request of the Parties, the Court directed that notice be provided to these additional potential Class Members, extended the deadline for exclusions and objections to July 12, 2022, extended the postmark deadline for claim submission to August 11, 2022, and set the final approval hearing for August 5, 2022. (ECF No. 110). At the direction of the Court, the Settlement Website was updated with these new deadlines and Epiq commenced Notice to the additional 61,000 potential Class Members. Azari Decl. at ¶¶ 14, 31.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Morgan Stanley; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement, but remain entitled to enroll in Aura's Financial Shield services. (ECF No. 81-2, Ex. 4). The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on July 12, 2022, and only 300 exclusion requests and 43 objections have been received. The claim deadline is August 11, 2022, and approximately 118,808 claims have been received to date. Azari Decl. ¶¶ 30-32.

## IV.   The Settlement Merits Final Approval by the Court

### A.  Plaintiffs Have Article III Standing

Plaintiffs have adequately alleged that they are at a substantially increased risk of identity theft after Morgan Stanley disregarded proper policies and protocols for disposal and decommissioning of its IT Assets containing Plaintiffs' PII. *See, e.g.*, Consolidated Amended Class Action Complaint ("CAC"), ECF No. 60, ¶¶ 279, 290, 300, 312, 324, 333, 343, 353. Such allegations exceed the standards for standing set forth by the Second Circuit in *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021). *McMorris* requires courts to consider the following non-exhaustive factors: "(1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud." *Id.* at 303. The sensitive and confidential PII contained on the Morgan Stanley servers was the same type of PII at issue in *McMorris*, which made it "more likely that" victims

"will be subject to future identity theft or fraud." 995 F.3d at 302 (citing *Attias v. Carefirst*, F.3d 620,628 (D.C. Cir. 2017); *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (Social Security numbers sufficiently sensitive for Article III standing analysis).

Additionally, Plaintiffs allege in their CAC that their data has been misused. CAC ¶¶ 263, 283, 316, 337. They further allege that Morgan Stanley's internal records, disclosed during discovery, reflect reports of fraud and identity theft by Class Members. CAC ¶¶ 13, 23. The allegations in Plaintiffs' CAC are more than sufficient to confer Article III standing. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021) ("Given the colossal amount of sensitive data stolen, including Social Security numbers, names, and dates of birth, and the unequivocal damage that can be done with this type of data, we have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft.").

### B.  The Settlement Meets the Standards for Final Approval Under Rule 23(e)

Rule 23(e) requires judicial approval for any compromise or settlement of class action claims. "A court may approve a proposed class action settlement, provided it determines that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quoting, *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). As this Court stated in *JPMorgan Treasury Spoofing*, in exercising its discretion over a proposed settlement, a court should review the settlement in light of "the general judicial policy favoring settlement." *In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript, (S.D.N.Y. May 31, 2022)[9] (hereafter "*Treasury Spoofing*") at 16 (citing *Hart v. RCI Hospital Holdings, Inc.*, No. 09-cv-3043-PAE, 2015 WL 5577713, at 6

---

[9]  The *In re JPMorgan Treasury Spoofing Litig.* transcript is attached hereto as Exhibit 1.

(S.D.N.Y. Sep. 22, 2015)). The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005). Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

In undertaking the Rule 23(e) evaluation, a court must consider "both the settlement's terms and the negotiating process leading to the settlement" and review the settlement for both procedural and substantive fairness. *Meredith*, 87 F. Supp. 3d at 662 (quoting *Wal-Mart Stores*, 396 F.3d at 116). In making the determination of whether the settlement is "fair, reasonable, and adequate," amended Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See* Rule 23(e)(2).

Consistent with this guidance, courts in the Second Circuit have long considered the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (noting "factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors"); *Treasury Spoofing transcript* at 18-19.[10]

After considering the Rule 23(e)(2) factors at the preliminary approval stage, Judge Torres determined the Settlement is fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing. Preliminary Approval Order, ¶ 1 (ECF No. 82). Judge Torres' conclusion applies equally now.

> ### 1. Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class in this Action

In determining whether to approve a class action settlement, the Court should first consider whether Class Representatives and Class Counsel "have adequately represented the class." Rule 23(e)(2)(A); *see generally In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."). As this Court has held, "[a] presumption of fairness may attach to a proposed settlement when the terms of that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery." *Meredith*, 87 F. Supp. 3d at 662. The Parties were represented by "estimable, indeed outstanding, counsel with significant experience in litigating complex class

---

[10] The advisory committee's notes to the December 1, 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23 advisory committee's notes to 2018 amendments, subdivision (e)(2). Accordingly, Plaintiffs discuss below, the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four Rule 23(e)(2) factors, but also discuss the application of the factors identified in *Grinnell*.

actions;" the settlement was the product of "lengthy, arms-length negotiation, facilitated by" an "experienced and wise" mediator – Judge Diane M. Welsh (Ret.) – and before the parties arrived at settlement, extensive discovery had been exchanged. Nussbaum Decl. 4/20/2022 ¶¶ 21-71 and Welsh Decl. at ¶ 5.

Class Representatives have adequately represented the Settlement Class in both their prosecution of the Action and in negotiating and securing the Settlement. Class Representatives' claims, all of which are based on a common course of alleged wrongdoing by Morgan Stanley, are aligned with those of the Settlement Class and Class Representatives have no interests antagonistic to the Settlement Class. Nussbaum Decl. 4/20/2022 at ¶ 105. Class Representatives have an interest in obtaining the largest possible recovery from Defendant. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Throughout the Action, Class Representatives have provided invaluable assistance to Class Counsel—supplying information necessary to the filing of the original and amended complaints, producing documents, and communicating with counsel on case developments and during the settlement negotiations. Nussbaum Decl. 4/20/2022 at ¶¶ 103-105.

Likewise, Class Counsel have also "adequately represented the class." Rule 23(e)(2)(A). Class Counsel have extensive class action, consumer and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class.[11] *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting

---

[11]    *See* Declaration of Linda P. Nussbaum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement dated 12/31/2021 at ¶ 45 (ECF No. 81-2); Nussbaum Decl. 4/20/2022 at ¶¶ 98-99.

"extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this novel action and had a sufficient basis on which to negotiate a very significant settlement. Mediator Diane M. Welsh noted that Class Counsel performed high caliber work on the case and in the settlement negotiations. *See* Welsh Decl. 6/21/2022 at ¶ 12 (noting that "based upon my observations of the diligence and work product produced by counsel, that the lawyering in this case was of the highest caliber and that plaintiff and defense counsel left no stone unturned, and no argument unmade, in the representation of their respective clients").

### 2. The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator

The Court should next consider whether the settlement was "negotiated at arm's length." Rule 23(e)(2)(B). This includes consideration of other related circumstances to ensure the procedural fairness of a settlement, including whether there was sufficient discovery prior to settlement. *See Meredith*, 87 F. Supp. 3d at 662; *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness.") (cleaned up). To assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds*, 414 F. Supp. 3d at 699.

This Settlement is the culmination of over six months of hard-fought negotiations between highly qualified counsel, working with a very experienced mediator, who sought to obtain the best

possible result for their respective clients. Welsh Decl. 6/21/2022 at ¶¶ 6, 7, 12. The Parties and their counsel were extremely well informed about the strengths and weaknesses of the case before reaching their agreement to settle. *Id.* at ¶ 5; Nussbaum Decl. 4/20/2022 at ¶¶ 46-60. *See generally* William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th ed. 2012) ("NEWBERG") (approval of a settlement is warranted "[w]here a court can conclude that the parties had sufficient information to make an informed decision about settlement"). Prior to reaching the Settlement, Class Counsel had, *inter alia*: (i) researched and drafted two detailed, lengthy amended complaints (Nussbaum Decl. 4/20/2022 at ¶¶ 11, 25-26); (ii) briefed a motion to dismiss (*id.* at ¶¶ 28-31); (iii) engaged in extensive discovery, including the review of over 163,300 pages of documents from Defendant and a dozen third parties (*id.* at ¶¶ 40-58); (iv) conferred with various experts in navigating the complexities of Plaintiffs' data security claims (*id.* at ¶¶ 59-60); and (v) taken party and non-party depositions and interviewed key witnesses, including former Morgan Stanley employees (*id.* at ¶¶ 52-55, 58).

Arm's length settlement negotiations began in earnest in May 2021 and continued until November 3, 2021, and included a series of meetings, telephonic conferences, correspondence, and three in-person, day-long, formal mediation sessions. *Id.* at ¶¶ 61-69. Judge Welsh provided significant assistance and ultimately, to bridge an impasse, made a mediator's proposal which the parties accepted. *Id.* at ¶ 69. As this Court held in *Treasury Spoofing*, "[t]he fact that the proposed settlement reflects a successful mediation further supports the court's finding of procedural fairness." *Treasury Spoofing* at 18 (citing *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (the involvement of an experienced and qualified mediator in settlement negotiations further affirms the fairness of the process)); *see also Belton v. GE Capital Consumer Lending, Inc.*, No. 21-cv-9493-CM, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (mediation

session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also* NEWBERG § 13:50.

### 3. The Relief Provided for the Class Is Adequate

Courts consider whether the relief provided for the class is adequate in order to assess substantive fairness. To undertake this analysis, courts account for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

#### a. The Relief Provided is Superior to Continued Litigation

Rule 23(e)(2)(C)(i) and the first *Grinnell* factor support final approval, as courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). As this Court has found, the greater the "complexity, expense and likely duration of the litigation," the stronger the basis for approving a settlement. *Meredith,* 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. While Plaintiffs are confident in the merits of

their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. Jun. 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097-SEM, 2021 WL 165121, at *11 (C.D. Ill. Jan. 19, 2021); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). In fact, this District has recognized that the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated." *In re GSE Bonds,* 414 F. Supp. 3d at 694; *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

### b.   The Reaction of the Settlement Class

As this Court has held, "[a] positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith*, 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19-20. The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Meredith*, 87 F. Supp. 3d at 663; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (citation omitted)); *Grinnell*, 495 F.2d at 462-63. That being said, "[a] certain number of objections

14

are to be expected in a class action like this one with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 511 (E.D.N.Y. 2003) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41, at 108 (4th ed. 2002) (holding that the "extremely small number of objectors – a mere 18 out of approximately five million Class members—weighs heavily in favor of final approval.")); *see also, e.g.*, *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that "[t]he District Court properly concluded that this small number of objections [18 where 27,883 notices were sent] weighed in favor of the settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ("Of the 11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class."); *Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 190 (S.D.N.Y. 2012) (approving settlement in a RICO action as "fair, reasonable, and adequate to the class as a whole" where 26,000 tenants received the notice and 118 written objections were received, 141 elected to opt out, there was strident opposition from those who did object and the six named plaintiffs and class representatives did not support the settlement), *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). *Cf. In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2010 WL 3341200, at *7 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement with 17 million class members, 2,943 opt outs and 89 objections). This Action certainly involved an extensive notice campaign, with over 18 million notices sent directly to potential Class Members, in addition to Publication Notice.

The reaction of Class Members to the Settlement has been overwhelmingly positive and

weighs in favor of approval. The deadline to opt out of or object to the settlement was July 12, 2022. Of the 15,369,743 potential Class Members who received Notice, 300 have timely excluded themselves and 43 have timely objected. These numbers suggest that the overwhelming majority of Class Members are satisfied with the Settlement, weighing strongly in favor of approval of the Settlement. *See Charron*, 874 F. Supp. 2d at 198 ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it.").

Once a court is itself satisfied that a settlement is fair, reasonable, and adequate to the class as a whole, "the burden is on the objectors to make a 'clear and specific showing that vital material was ignored by the District Court'…" *In re Nissan Radiator*, No.10-CV-7493, 2013 WL 4080946, at *10 (S.D.N.Y. May 30, 2013) (quoting *Grinnell*, 495 F.2d at 464); *see also Rievman v. Burlington N.R. Co.*, 118 F.R.D. 29, 32 (S.D.N.Y. 1987) (explaining that the burden shifts to the objectors after the "initial showing of fairness and reasonableness"); *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988) (discussing burden shifting to objectors after initial determinations in favor of class settlement).

None of the objections in this case carry the applicable burden. Plaintiffs' specific responses to each of the objectors are addressed in detail in Appendix A attached hereto. In summary, the objections that have been filed are either facially invalid or substantively without merit. In the Notice they received, potential Class Members were instructed that in order to object to the Settlement, they must file a written objection with the Clerk of Courts and mail a copy of the objection to Class Counsel and Counsel for Morgan Stanley. Of the 43 timely objections, it appears that 28 have not followed the filing procedure approved by the Court. Further, six objections are identical, copy and pasted objections from the same family and two are from

"professional objectors."[12] Otherwise, the objections aggregate toward two central themes: that the Settlement is insufficient insofar as Class Members are not getting enough or Morgan Stanley is not paying enough, and the unreasonableness of Class Counsel's fee request.

Simply complaining that the settlement should be "better" is not a valid objection. *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013); *In re Merrill Lynch & Co., Inc. Res. Rep. Sec. Litig.*, 246 F.R.D. 156, 168 (S.D.N.Y. 2007) (rejecting objection that settlement is "unreasonably low" and "not in the investors class" interests as conclusory). "Contrary to objectors' expectations, the settlement is not a wish-list of class members that the Defendant must fulfill." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003) (internal quotations omitted). Or, as the *Charron* court noted, "[t]he Settlement is not, and cannot be, all things to all people." *Charron,* 874 F. Supp. 2d at 184. The Court should not allow this to become "a case where the perfect could easily become the enemy of the good; [as] that would not be in the best interests of the class as a whole. *Id.*; *see also Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12, 13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("[E]ven if . . .the best possible recovery was $125 million, it would not bar approval of the settlement,

---

[12]  *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9, 10 (N.D. Cal. Feb. 17, 2016) (finding that objectors, which included Helfand, are "professional" objectors and that "courts across the country have repeatedly turned aside their efforts to upend settlements"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016). *See also In re: Whirlpool Corp. Front–loading Washer Products Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *21 (N.D. Ohio Sep. 23, 2016) ("In nearly every class action settlement today, professional objectors file objections (often frivolous ones) simply in order to obtain standing to appeal the district court's final approval order. The professional objector hopes that class counsel, in order to settle the appeal and gain access to the fee award, will pay the objector to go away" (internal footnote omitted)).

given the risk."); *Dupler*, 705 F. Supp. 2d at 246-47 (noting that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved"); *Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000) ("[A] settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.").

Further, Aura's Financial Shield Service, which is being offered to all, whether or not a Claim is filed, is a substantial benefit that would not have been available without the Settlement. Contrary to several objections, the Aura service is vastly different and covers fraud that is not related to the Morgan Stanley Data Security Incidents. It is more robust than the Experian credit monitoring that was previously offered to Class Members by Morgan Stanley in the aftermath of the Data Security Incidents. *See* Affidavit of Gerald Thompson ¶ 9. ("Thompson Aff."). Aura's Financial Shield service uses the most powerful and comprehensive monitoring of a person's financial assets while also providing identity authentication alerts. *Id*. at ¶ 10. Unlike Experian, Aura includes: $1 million in Insurance backed by AIG to replace any money lost by theft; dark web monitoring; transaction monitoring of all registered financial accounts; home title and property title monitoring; security freeze capability; monthly credit score information; monthly spending graphs to show members daily how much is being spent, deposited, transferred; and identity authentication alerts. *Id*. ¶¶ at 10-11. Objections that Aura's Financial Shield service is not a "benefit" to Class Members should be overruled.

The second theme of objections concern the requested fees for Class Counsel, with most objectors making conclusory statements that the requested amount is "too high." The percentage requested by Class Counsel (29.2% of the Settlement value (the Settlement Amount of $60 million plus $8.2 million in costs of notice and administration) or 33.3% of the $60 million non-revisionary

Settlement Amount ) is both reasonable and well within the range of typically awarded by courts.[13] *See In re Zinc Antitrust Litig.*, No. 14-cv-3728-PAE (S.D.N.Y. Feb. 16, 2022) (ECF No. 327 at 1) (awarding 33.3% of settlement fund); *In re JPMorgan Treasury Futures Spoofing Litig.*, No. 1:20-cv-03515-PAE (S.D.N.Y. Jun. 3, 2022) (ECF No. 96 at ¶ 3) (awarding 33.3% of settlement fund); *Spicer v. Pier Sixty LLC*, No. 08-cv-10240-PAE, 2012 WL 4364503, at *4 (S.D.N.Y. Sep. 14, 2012) (approving award of 33.3% of settlement fund as "consistent with the trend in this Circuit"); *Montalvo v. Flywheel Sports, Inc.*, No. 16-cv-6269-PAE, 2018 WL 7825362 (S.D.N.Y. Jul. 27, 2018) (approving award of 33% of the settlement fund in a case that settled rather quickly and did not involve onerous discovery and holding "courts in this district will often approve multipliers between two and four times"); *In re Giant Interactive Group, Inc. Securities Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding 33% of the settlement fund); *Hart v. RCI Hospitality Holdings, Inc.*, No. 09-cv-3043-PAE, 2015 WL 5577713 at *17 (S.D.N.Y. Sep. 22, 2015) (awarding 32.9% of gross settlement); *Hernandez v. Compass One, LLC*, No. 20-cv-7040-LJL, 2021 WL 4925561, at *4 (S.D.N.Y. Oct. 21, 2021) (noting "[d]istrict courts in this Circuit typically approve fee requests between 30% and 33% of the settlement").

A lodestar "cross check" confirms the reasonableness of the requested fee award. Regarding the lodestar cross-check, "district courts in this Circuit award fees frequently that amount to multiples of the lodestar. That is for a variety of reasons, including in recognition of the investment of time and capital that contingency cases inherently present, the risk that these will never be recouped, and the practical reality that other such cases on the docket of a lawyer paid by

---

[13]   *See* Declaration of Professor Brian T. Fitzpatrick dated April 12, 2022, originally filed in support of the Motion for An Award of Attorneys' Fes, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs (ECF No. 106) and annexed hereto as Exhibit 2 for the Court's convenience.

contingency fees may yield no recovery at all." *Treasury Spoofing* at 29-30. When Plaintiffs filed their Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs, the lodestar and expense numbers presented were based on figures incurred as of March 1, 2022. At the time, Class Counsel had expended 9,952.55 hours, resulting in a lodestar of $7,188,201.81. Class Counsel submitted declarations supporting the reasonableness of their rates and the resulting lodestar multiplier (approximately 2.75), which fell within or below the range commonly awarded by courts throughout the district, as well as across the country. *See, e.g.*, *Spicer*, 2012 WL 4364503, at *4 (awarding 3.36 multiplier of the lodestar, as well within the range of reasonableness and citing cases approving multipliers of 4.34, over 4 and nearly 5); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, No. 12-cv-3371-CM, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence*, 2014 WL 1883494, at *13 (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley*, 186 F. Supp. 2d at 371 (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable").

Since the filing of the Fee Motion, Class Counsel have expended substantial time preparing for final approval, speaking with class members and answering their questions regarding the Settlement and claims process, and fielding questions and navigating matters with the Settlement Administrator and coordinating with Kroll and defense counsel with respect to the Kroll engagement by Morgan Stanley as part of the Settlement. Class Counsel will continue to expend hours throughout the final approval process and in coordinating with Kroll over their one-year term to commence after Final Approval. Class Counsel do not intend to request any further fees in

this matter for the additional work that they will do. Nussbaum Decl. 7/22/2022 at ¶ 21.

For the reasons stated above and within Appendix A, this Court should overrule the objections.

### c.   Stage of the Proceedings and Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814, at *7 (S.D.N.Y. Sep. 9, 2015). Here, Plaintiffs had engaged in significant party and third-party discovery; reviewed and analyzed hundreds of thousands of documents; interviewed and deposed witnesses; filed a lengthy consolidated amended complaint supported by facts and documents from discovery; conferred with experts; exchanged mediation statements and presentations; briefed Defendant's motion to dismiss; and mediated on three separate occasions over a six-month period. Nussbaum Decl. 4/20/2022 at ¶¶ 25-69. Class Counsel's knowledge of the strengths and weaknesses of the claims is more than adequate to support the settlement. *See* Welsh Decl. 6/21/2022 at ¶ 5; *see also Treasury Spoofing* at 21 (approving settlement with regulatory discovery only where "counsel had worked with experts and consultants to assess the case and the extent of JPMorgan's exposure" and potential damages).

### d.   The Risks of Continued Litigation

In assessing the fairness, reasonableness, and adequacy of a settlement, a court should also consider "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463. In this assessment, "the Court [is not required] to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*, 330 F.R.D. 11,

36-37 (E.D.N.Y. 2019). *See also Treasury Spoofing* at 21-24 (approving settlement where plaintiffs identified various hurdles to be cleared including "rigorous standards of certification and summary judgment" and noting, as here, the defendant had not conceded liability and damages "at a minimum would have been hotly disputed in a 'battle of experts'").

In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F.Supp.3d 290, 303 (E.D.N.Y 2015). As discussed above, here, the risk of establishing liability and damages is substantial. Plaintiffs faced a motion to dismiss the entire case that had not been decided when the settlement was reached. If the action had continued, Plaintiffs would have moved for certification of the class. While Plaintiffs and Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested motion and future appeals of a certification order via Rule 23(f) are far from certain. Courts have certified Rule 23(b)(3) damages classes of consumers in only two data breach cases in 2021 and 2022. In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation, both generally and for plaintiffs suffering multiple-breach class member damages. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May

3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. The Settlement avoids any uncertainty with respect to this issue.

The risks of continued litigation here are at the highest level and there is a genuine possibility that Plaintiffs could have failed to establish liability, damages and class certification through summary judgment and trial. As this Court found in *Meredith* and *Giant Interactive*, these risks all support the approval of a settlement ending this litigation. *See Meredith*, 87 F. Supp. 3d at 664-65; *Giant Interactive*, 279 F.R.D. at 162.

### e. The Ability of Morgan Stanley to Withstand Greater Judgment

The financial obligation the Settlement imposes on Morgan Stanley is substantial. While Morgan Stanley could withstand a greater judgment than the amount paid in settlement, "'[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) and *Giant Interactive*, 279 F.R.D. at 162 (quoting *In re Sony SCRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173-RPP, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)). The possibility that Morgan Stanley could have sustained a greater judgment is not determinative of substantive fairness or unfairness, "'where, as here, other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'" *Meredith*, 87 F. Supp. 3d at 665 and *Giant Interactive*, 279 F.R.D. at 162. "[A]s a matter of law, the ability to withstand a greater judgment does not 'standing alone … suggest that settlement is unfair.'" *Treasury Spoofing* at 24 (citing *In re*

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (citations omitted)).

### f.   The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Grinnell* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Treasury Spoofing* at 25 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). As this Court has noted, the adequacy of the amount achieved in the settlement should not be judged on the best of all possible worlds, but rather in light of the strengths and weaknesses of the case. *Meredith*, 87 F. Supp. 3d at 665-66; *Treasury Spoofing* at 25.

The settlement value falls well within the range of the reasonable. The monetary relief is significant and in line with, or in excess of, that recovered by the classes in many other data breach class action settlements. Aura's Financial Shield Service provided by this Settlement for at least two years offers very meaningful relief for the over 88,300 Class Members that have registered for the reminder email, indicating their interest in taking advantage of this settlement benefit (Class Members can enroll at any time during the 24 month of coverage). *See* Thompson Aff. at ¶ 17; Nussbaum Decl. 7/22/2022 at ¶¶ 10-12.

The Settlement here is well within the range of reasonableness in light of the risks presented by this litigation. The gravamen of the litigation is Plaintiffs' contention that Morgan Stanley violated its duty to Class Members by failing to undertake reasonable security measures, leading to the exposure of their personal information. The remediation measures to be continued by

24

Defendant, as well as funding efforts for Kroll to continue to search for and recover missing IT assets will prevent and mitigate further harm. Furthermore, the cash compensation to which eligible Class Members will be entitled—reimbursement of the Class Members' losses of time and money—is significant relative to economic damages incurred. In short, further litigation against Defendant would be time-consuming, expensive, and, given the risks associated with data privacy cases in general and this case specifically, might not result in a greater benefit to the Settlement Class than that provided by the Settlement.

### 4.   The Remaining Rule 23(e)(2) Factors Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Rule 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval of the Settlement.

*First*, the proposed method of claims processing ensures equitable treatment of Settlement Class Members. *See* Rule 23(e)(2)(C)(ii) & (e)(2)(D). The Net Settlement Fund will be allocated to Settlement Class Members who submit valid Claim Forms. The Court-approved Settlement Administrator, Epiq, will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their submissions, and will distribute funds to eligible Settlement Class Members. *See generally* Azari Decl. Importantly, none of the Settlement proceeds will revert to Defendant. *See* Nussbaum Decl. 4/20/2022 at ¶ 72(e); Welsh Decl. 6/21/2022 at ¶ 8. No other agreement was made in connection with the proposed Settlement.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees, including the timing of any such Court-approved

payments. *See* Rule 23(e)(2)(C)(iii). As discussed in their Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs, (ECF. No. 101), the requested fee, to be paid only upon the Court's approval, is reasonable in light of the efforts devoted by Plaintiffs' Counsel, the very favorable recovery obtained for the Settlement Class, and the significant risks Settlement Class Counsel shouldered at every step.[14] (ECF Nos. 100-106). The requested fee is also in line with attorneys' fee percentages awarded to counsel in other comparable class action settlements in this Circuit. *See Meredith Corp.*, 87 F. Supp. 3d at 668 (noting "in numerous common fund cases, fees have been awarded that represent one-third of the settlement fund" and collecting cases).[15]

For the reasons set forth above and in the Nussbaum Declarations 4/20/2022 and 7/22/2022, the Settlement is fair, reasonable, and adequate when evaluated under any standard or set of factors and, therefore, warrants the Court's final approval.

## V.     The Court Should Certify the Settlement Class

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith*, 87 F. Supp. 3d at 658 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). When Judge Torres preliminarily approved the Settlement, she found that the Settlement Class preliminarily satisfied the requirements of Rules 23(a) and

---

[14]   In connection with their fee request, Settlement Class Counsel also seek payment from the Settlement Amount of Plaintiffs' Counsel's out-of-pocket costs and expenses in the total amount of $253,994.53 as well as service awards to Plaintiffs in the aggregate amount of $55,000. *See* ECF No. 101 at 29-32.

[15]   Pursuant to the Settlement Agreement, Court-awarded attorneys' fees will be paid in the amount approved by the Court five business days after the Defendant gives written notice to the Settlement Administrator and after entry of the final approval of the settlement and Final Judgment. Settlement Agreement, ¶ 12.2.

(b)(3). (ECF No. 82, ¶¶ 1, 3). There have been no changes that would undermine Judge Torres'

initial determination. *See Treasury Spoofing* at 26 (adopting the arguments made in support of

settlement "best outlined in plaintiffs' memorandum in support of preliminary approval" and

where "no changes in the case that would warrant deviating from my initial view"). *See also In re*

*Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y.

2012) (finally approving settlement where there "have been no material changes to alter the

proprietary of [the court's] findings" at the preliminary approval stage).

For the same reasons previously argued (ECF No. 81-1 at 24-30), the Court should grant

final certification of the Class for purposes of the Settlement. Bolstering Class Plaintiffs' earlier

arguments in support of certification of the Settlement Class is the fact that Notices were sent to

over 15 million potential Class Members. *See* Azari Decl. at ¶ 25. Thus, the size of the potential

Class easily satisfies the numerosity requirement under Rule 23(a).

The adequacy requirement of Rule 23(a)(4) involves an inquiry as to whether: (1) the

plaintiffs' interests are antagonistic to the interests of the other members of the Class; and (2)

plaintiffs' counsel are qualified, experienced, and capable of conducting the litigation. As this

Court found in *Giant Interactive*, the very small number of objectors and opt outs, as well as the

above-average recovery in this case compared to other data breach cases, supports the Court

finding the answers to these questions are no and yes, respectively. *Giant Interactive*, 279 F.R.D.

at 159. "The fact that the vast majority of class members neither objected nor opted out is a strong

indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F.

Supp. 2d 337, 345 (S.D.N.Y. 2008).

Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement

Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## VI.    Notice To the Settlement Class Satisfied Rule 23 and Due Process

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. In accordance with the Court's Preliminary Approval Order, Epiq emailed, mailed and remailed copies of the Notice Packet to 15,369,743 potential Settlement Class Members. Azari Decl. at ¶ 25. The direct-mailed and emailed notice effort successfully reached 90% of potential Settlement Class Members. *Id.* The settlement website as of July 20, 2022, had more than 2,214,492 hits and 144,982 calls were made to the hot line. *Id. at ¶¶* 27-28 The Notice adequately set out the Settlement's essential terms and informed the potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to the Settlement, as well as the procedure for submitting a Claim Form. *Id.* at ¶ 35.

The Notice Plan, as well as the mailed notice and publication notice, satisfy due process. *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830-JPO, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme

Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 319 (1950). The mailed notice and publication notice are written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart*, 396 F.3d at 114. Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. Further, the Class Notice fully advised Class Members of the binding effect of the judgment on them. *Id.*, Ex. A.

The content disseminated through this Notice campaign was more than adequate. *See Hall v. ProSource Techs., LLC*, No. 14-cv-2502-SIL, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016) (finding notice sufficient where it "described essential and relevant information in plain terms, including . . . the terms of the Settlement Agreement . . . and the various rights of potential class members, such as the right to opt out of the Settlement Class or object to the instant Final Approval Motion").

In sum, this combination of individual first-class mail and email to Class Members who could be identified with reasonable effort, supplemented by notice in two national publications, and publication on an internet website, was "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g*., *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 and 12-cv-5822-NRB, 2020 WL 6290596, at *3 (S.D.N.Y. Oct. 27, 2020).

## VII.   Conclusion

Considering the factors outlined in Rule 23(e) and *Grinnell* in their totality, and for the reasons set forth herein and in the Nussbaum Declarations 4/20/2022 and 7/22/2022, the Welsh Declarations 12/2/2021 and 6/21/2022, the Fitzpatrick Declaration, the Thompson Affidavit and the Azari Declarations submitted in support of the motions for preliminary and final approval and

for attorney fees and costs and service awards for the class representatives, Plaintiffs respectfully request that the Court find that this Settlement is fair, reasonable and adequate; grant final approval of the Settlement; grant certification of the Settlement Class for settlement purposes; and enter the proposed Final Judgment dismissing with prejudice the claims against Morgan Stanley.

Dated: July 22, 2022

Respectfully submitted,

**MORGAN & MORGAN**

By: */s/ Jean S. Martin*
Jean S. Martin
Francesca Kester
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jmartin@ForThePeople.com
fkester@ForThePeople.com

**NUSSBAUM LAW GROUP, P.C.**

By: */s/ Linda P. Nussbaum*
Linda P. Nussbaum
Susan R. Schwaiger
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036
(917) 438-9189
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com

*Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of July, 2022, I caused a true and correct copy of the

foregoing document to be filed and served via the Court's Electronic Filing System.

*/s/ Jean S. Martin*
Jean S. Martin