## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Morgan Stanley Data Security Litigation* | Civil Action No. 1:20-cv-05914-PAE |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF AN APPEAL BOND

Jean S. Martin (admitted pro hac vice)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jmartin@ForThePeople.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

*Settlement Class Counsel*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

III. ARGUMENT ..................................................................................................... 5

    A. Mr. Helfand Should Be Required to Post a Bond .................................................. 6

        1. Mr. Helfand is Presumed to Be Able to Afford a Bond ................................. 6

        2. Mr. Helfand's Appeal Lacks Merit and Will Likely be Unsuccessful Given the Standard of Review Imposed on the Appellate Court .............................. 7

        3. Mr. Helfand Has Acted in Bad Faith and Vexatiously ................................... 8

        4. There is a Risk Mr. Helfand Will Not Pay the Costs When the Appeal is Unsuccessful ..................................................................................................... 10

    B. The Bond Amount Should be Sufficient to Cover All Appellate Costs .............. 11

    C. The Bond Amount Should be Doubled .................................................................. 13

IV. CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Aboltin v. Jeunesse LLC*, 2019 WL 1092789 (M.D. Fla. Feb. 15, 2019) ........................................ 5

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), *cert. denied*, 525 U.S. 875 (1998) ...................... 7, 8

*Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006)..... 5, 6

*Blessing v. Sirius XM Radio Inc.,* 2011 WL 5873383 (S.D.N.Y. Nov. 22, 2011) ........................... 6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974), *abrogated on other grounds by*
    *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ...................................... 7

Collins v. Quincy Bioscience, LLC, 2020 WL 7135528, at *6 (S.D. Fla. Nov. 16, 2020).............. 9

*Gay v. Tom's of Maine, Inc.*, No. 0:14-cv-60604-KMM, ECF No. 43 (S.D. Fla. Mar. 11, 2016)... 9

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157 (E.D. Pa.
    2010) ........................................................................................................................................ 12

*In re Broadcom Corp. Secs. Litig.,* 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) ...... 14

*In re Broadcom Securities Litig.*, SAC 01-275 (C.D. Cal. Dec. 5, 2005) ......................................... 11

*In re Cardizem CD Antitrust Litig.*, 391 F. 3d 812 (6th Cir. 2004) .................................... 5, 7, 11

*In re Checking Account Overdraft Litig.*, 2012 WL 456691 (S.D. Fla. Feb. 14, 2012) ... 5, 6, 7, 11

*In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ................ 12

*In re Currency Conversion Fee Antitrust Litig*., 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010)..... 11

*In re Diet Drugs Prods. Liab. Litig.*, 2000 U.S. Dist. LEXIS 16085 (E.D. Pa., Nov. 6, 2000)........... 12

*In re Gen. Elec. Co. Sec. Litig.,* 998 F. Supp. 2d 145 (S.D.N.Y. 2014) .............................. 6, 10, 12

*In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. Sept. 12, 2005) ................. 14

*In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210 (S.D.N.Y. 2010) ...................... 5, 6, 11

*In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47659 (D.N.J. June 29, 2007) .. 6, 15

*In re N.J. Tax Sales Certificate Antitrust Litig.,* 750 F. App'x 73 (3d Cir. 2018) ............................... 13

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124 (S.D.N.Y. 1999) ......................... 7

*In re Netflix Privacy Litig.*, 2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) .................................. 11

In re Nutella Marketing and Sales Practices Litigation, 589 Fed. App'x. 53 (3d Cir. 2014)............... 13

*In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635 (N.D. Ohio 2016).............. 5, 6, 12

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ........................................................................................................ 12

*In re Wal-Mart Wage and Hour Employ. Prac. Litig.,* 2010 WL 786513 (D. Nev. Mar. 8, 2010)........................................................................................................ 6, 11

*Miletak v. Allstate Ins. Co*., 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27, 2012)..................... 12

*Pedraza v. United Guar. Corp.*, 313 F.3d 1323 (11th Cir. 2002)....................................................... 5

*Rougvie v. Ascena Retail Grp., Inc.*, 2016 WL 6069968 (E.D. Pa. Oct. 14, 2016) ....................... 10

*Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) .............................................................. 7, 11

See In re TikTok, Inc., Consumer Priv. Litig., 2022 WL 2982782 (N.D. Ill. July 28, 2022)........... 9

*Tennille v. Wester*n Union Co., 2013 WL 5716877 (D. Colo. Oct. 21, 2013) ................................. 11

**Rules**

Federal Rule of Appellate Procedure 38 ...................................................................................... 18

Federal Rule of Appellate Procedure 39 ........................................................................................ 7

Federal Rule of Appellate Procedure 7 .......................................................................................... 5

Federal Rule of Appellate Procedure 8(a)(1)(B) ............................................................................ 6

I.      **INTRODUCTION**

On August 5, 2022, the Court granted Plaintiffs' motion for final approval of a Settlement that, once it becomes effective, will result in the distribution of significant monetary and non-monetary benefits to millions of Class Members. The Court granted Plaintiffs' motion after holding a lengthy final approval hearing and issued its ruling from the bench, finding the settlement to be fair, reasonable and adequate under Fed. R. Civ. P. 23(e) after thorough consideration of each of the objections raised by Class Members. The Court also granted, in part, Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs. On August 17, 2022, Objector Steven Helfand, who appeared telephonically and presented his objection at the final approval hearing, filed a notice of appeal. The appeal entirely lacks merit. This memorandum supports Plaintiffs' motion for an order requiring Mr. Helfand to post an appeal bond.

Mr. Helfand, a former attorney who was disbarred from the State Bar of California because of conduct related to class action settlement objections, harms and prejudices Plaintiffs and Class Members by his appeal. Under the terms of the Settlement, no part of the $60 million Settlement Fund, Aura Financial Shield services, or other significant monetary relief will be provided to Class Members until the appeal is resolved, which in the ordinary course could take a year or more. The delay caused by this appeal will undoubtedly result in substantial costs to the Class, costs that Mr. Helfand should be required to secure with a bond.

As demonstrated below, under similar circumstances, other courts across the country have required objectors to post sizable bonds upon appeal, which courts have broad discretion to do pursuant to Federal Rules of Appellate Procedure 7 and 8.  The modest appeal bond sought here is factually and legally justified to ensure payment of the taxable costs Plaintiffs will incur.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs allege that in 2016 and 2019, Morgan Stanley failed to properly dispose of retired IT assets containing personally identifiable information ("PII') of over 15 million of its current and former clients. After engaging in the comprehensive exchange of discovery, expert analysis, and months of mediation before the Hon. Diane Welsh (Ret.), the Parties reached the very favorable Settlement that was first presented to the Court for preliminary approval on December 31, 2021. (ECF No. 81). The Settlement Agreement provides for a non-reversionary cash fund of $60 million that will be used to: 1) provide at least two years of comprehensive financial account fraud monitoring and insurance services for the entire Class (Aura's Financial Shield); 2) pay for out-of-pocket expense reimbursement up to $10,000 per Class Member for all unreimbursed actual, incurred costs or expenditures that are fairly traceable to the Data Security Incidents; and 3) pay for both attested lost time reimbursement (up to $100 per class member) and documented lost time reimbursement. Settlement Agreement ¶¶ 1.34, 2.2, 3.1, 4.1, 5.1. Morgan Stanley will pay all costs of notice and administration, presently estimated to be in excess of $8.2 million. Additionally, Morgan Stanley will pay for the retention of Kroll, a third-party firm, to continue efforts to locate and retrieve missing Morgan Stanley IT Assets. Pursuant to the Settlement Agreement, Kroll will not commence its active efforts until the Settlement is final.

On August 5, 2022, the Court held the final approval hearing entertaining oral argument from counsel and objectors regarding the merits of the Settlement and Plaintiffs' motion for an award of attorneys' fees and litigation expenses. The Court issued its order finally approving the Settlement and granting in part Plaintiffs' motion for fees the same day. In its order, the Court determined the Settlement "meets all requirements of Rule 23(e) of the Federal Rules of Civil Procedure and is, in all respects, fair, reasonable, and adequate, and in the best interests of the

Settlement Class, including the Settlement Class Representatives." (ECF No. 156 at ¶ 10). The court found that there was "no just reason for delay in the entry of [] Judgment as a final judgment" in the case. (*Id*. at ¶ 25).

The settlement approval and award of attorneys' fees were granted only after lengthy and careful review by the Court, including thorough and independent consideration of each of the arguments made by Objectors. The Court gave Objectors the opportunity to appear in person or telephonically at the final approval hearing so that they could personally present their objections to the Court.  Objector Steven Helfand appeared telephonically to present his objection at the Final Approval Hearing.  *See In re Morgan Stanley Data Security Litigation*, No. 1:20-cv-05914-PAE, Fairness Hearing Transcript, (S.D.N.Y. August 5, 2022) (hereafter "Fairness Transcript") at 10. After allowing the Objectors to make their presentations and giving counsel the opportunity to address the objections and answer further questions from the Court, the Court issued a bench ruling.  In the course of the hearing and its ruling, the Court addressed the substance of each Objector's objections, including those of Mr. Helfand, and found that "all objections" were "without merit" and thereby ordered that they be overruled. (ECF No. 156 at ¶ 9).

Mr. Helfand filed his Notice of Appeal on August 17, 2022. Pursuant to Local Rule 31.2(a)(1)(A) of the Second Circuit Court of Appeals, Mr. Helfand has requested that his brief and appendix be accepted for filing no later than November 28, 2022. Pursuant to Local Rule 31.2(a)(1)(B), Plaintiffs have 14 days after the filing of Mr. Helfand's brief to notify the clerk of the deadline they are requesting for their response. The deadline must be within 91 days after the filing of Mr. Helfand's brief. Given the rules that set forth the parameters for briefing, it is unlikely that Mr. Helfand's appeal will be resolved until at least February of 2023.

Under the terms of the Settlement, no money can be paid out and no relief or benefits can

provided until the final resolution of any appeals. This relief includes Aura's Financial Shield, which will protect Class Members from identity theft and other financial harms, the benefits and value of which the Court recognized in the fairness hearing and its ruling. *See* Fairness Transcript at 122, 124, 125. The delay in final resolution due to Mr. Helfand's appeal irreparably harms Class Members as they will remain vulnerable to harm until the effective date of the Settlement or will have to incur costs for services that are not as robust as the Financial Shield product. And such costs will not be reimbursable through any claims process or from future Financial Shield coverage. As a result of the appeal, Class Members will be left completely exposed to the harm that the Settlement was crafted to mitigate.

In his written objection, Mr. Helfand complained that "there is no open claim period for damages accruing after" the effective date of the Settlement. During the fairness hearing, the Court recognized that this gap would be addressed by the retroactive nature of the Financial Shield coverage and recognized that this was a great benefit for the Class. Thus, the irony that Mr. Helfand's appeal now creates that vulnerable gap should not be lost on the Court and serves as yet another reason that imposing a bond on Mr. Helfand is appropriate.

Further adding to the increased risk of harm resulting from Mr. Helfand's appeal is that Morgan Stanley will not be obligated until after the appeal is resolved to begin Kroll's recovery and retrieval efforts, the first report of which the Court had requested to be submitted in November. *See* Fairness Transcript at 128. A delay in the Effective Date of the Settlement, which is now expected to be more than a year, will allow leads for recovery efforts to go stale and will allow bad actors more time to potentially misuse the PII that is on those devices—more time for misuse while the Class Members are left without protection of Aura Financial Shield coverage.

### III. <u>ARGUMENT</u>

Courts routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal and to protect against the additional costs the class will incur caused by the delay of the appeal. *See, e.g., In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *3 (S.D. Fla. Feb. 14, 2012); *In re Cardizem CD Antitrust Litig.*, 391 F. 3d 812, 816- 17 (6th Cir. 2004); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 642 (N.D. Ohio 2016); *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 218 (S.D.N.Y. 2010); *Aboltin v. Jeunesse LLC*, 2019 WL 1092789, at *4 (M.D. Fla. Feb. 15, 2019). Requiring objectors to post bonds also serves to discourage frivolous appeals. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizeable bond"); *In re Polyurethane*, 178 F. Supp. 3d at 638.

Such bonds are authorized by Federal Rule of Appellate Procedure 7, which provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal," and Federal Rule of Appellate Procedure 8(a)(1)(B), which empowers a district court to approve a supersedeas bond, which is justified where the objector's appeal effectively stays consummation of the settlement and distribution of its benefits. *See, e.g., In re Checking*, 2012 WL 456691, at *2; *Aboltin*, 2019 WL 1092789, at *3; *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006); *In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012). Further, courts have inherent authority to require an objector to post a bond as a sanction for willful disobedience of a court order or when the objector acts in bad faith or vexatiously. *Pedraza*, 313 F. 3d at 1335-36.

The Court has the discretion to determine the appropriate amount of the bond. *See In re*

5

*Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47659, at *40 (D.N.J. June 29, 2007) ("'[A] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal.'") (quoting *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998), *cert. denied*, 525 U.S. 875 (1998)). Among the costs a court can consider in setting the amount of the bond are costs taxable under 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39 and the increased administrative costs and loss of interest resulting from delay in consummating the settlement. *See, e.g., In re Polyurethane*, 178 F. Supp. 3d at 642-45; *In re Checking*, 2012 WL 456691, at *2; *In re Wal-Mart Wage and Hour Employ. Prac. Litig.,* 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

For the reasons explained below, the Court should require Mr. Helfand to post a bond for his appeal, and that bond should be for the modest amount of $25,000.

### A. Mr. Helfand Should Be Required to Post a Bond

When determining if a bond is appropriate, courts consider several factors, including: (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful. *See*, *e.g., In re Gen. Elec. Co. Sec. Litig.,* 998 F. Supp. 2d 145, 153 (S.D.N.Y. 2014)*; Blessing v. Sirius XM Radio Inc.,* 2011 WL 5873383, at *2 (S.D.N.Y. Nov. 22, 2011)*; In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 212; *In re Checking*, 2012 WL 456691, at *2. Each of these factors, plus the unique additional harms to be suffered by 15 million Class Members as a result of the delay, supports requiring Mr. Helfand to post a bond in this case.

#### 1. *Mr. Helfand is Presumed to Be Able to Afford a Bond*

Courts presume that an objector is financially able to post an appeal bond unless he or she

demonstrates otherwise. *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d at 213; *In re Polyurethane*, 178 F. Supp. 3d at 641-42; *In re Cardizem*, 391 F.3d at 818. Accordingly, Plaintiffs need not prove that Mr. Helfand can afford to post the bond Plaintiffs have requested; the burden is on Mr. Helfand to come forward with sufficient financial information to prove that a bond is beyond

his means. Regardless, Mr. Helfand has shown his financial means by paying the filing fees to appeal. Accordingly, this factor supports requiring Mr. Helfand to post a bond.

### 2. Mr. Helfand's Appeal Lacks Merit and Will Likely be Unsuccessful Given the Standard of Review Imposed on the Appellate Court

Rule 7 authorizes the Court to forecast the outcome of the appeal in deciding whether to require a bond. *See, e.g.*, *Adsani v. Miller*, 139 F.3d at 79.; *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *In re Checking*, 2012 WL 456691, at *2; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999). The less likely it is an appeal will succeed, the stronger the case for a requiring a bond. Here, Mr. Helfand's appeal lacks merit and has no legitimate likelihood of success.

The Second Circuit will disturb a judicially-approved settlement only when an objector has made a "clear showing that the District Court has abused its discretion." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). While Mr. Helfand has not yet filed his appellate brief, Mr. Helfand's objections at the district court level were that: (i) the Settlement Notice he received on April 19, 2022 was insufficient given the June 2, 2022 deadline to submit an objection; (ii) there should have been Plaintiffs to represent subclasses of individuals who have already experienced fraud and individuals who have not yet experienced fraud; (iv) the terms and conditions of Aura's Financial Shield are unfair to Class Members; (v) the Settlement release is

7

overbroad; (vi) Mr. Helfand had no meaningful opportunity to review Class Counsel's request for attorneys' fees because it was not posted on the Settlement Website; and (vii) either no attorneys fees should be awarded because of an inadequate representation or, the fee should be calculated based on the amount recovered by the class or value to the class, rather than the total amount recoverable.

The Court heard from Mr. Helfand during the August 5, 2022 final approval hearing. In addition to the arguments raised above, Mr. Helfand, for the first time, orally objected to the Settlement on the grounds that the claims rate was less than 1%. *See* Fairness Transcript at 11. The Court thoroughly considered Mr. Helfand's objections and allowed Settlement Class Counsel to respond accordingly. *Id.* at 63-65. Ultimately, the Court found Mr. Helfand's objections to be without merit. Indeed, the Court carefully considered all objections during the all-day hearing and in a lengthy bench ruling exercised its discretion to find no merit in any of the objections, including those of Mr. Helfand.  Accordingly, there is nothing to suggest that this Court will be reversed on appellate review.

### 3. *Mr. Helfand Has Acted in Bad Faith and Vexatiously*

In making its determination on whether a bond should be required here, the Court should not ignore Mr. Helfand's lengthy and unlawful track record of objecting to class action settlements. Indeed, in revoking his license to practice law, the State Bar of California found that, among other egregious conduct, Mr. Helfand: (1) filed objections in the name of class members without being authorized by the class member to do so, (2) misled a court and opposing counsel, (3) settled an objection on appeal without the client's authorization, (4) misappropriated settlement proceeds, and (5) committed other acts of moral turpitude. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS, at *268 (N.D. Ga. Mar. 17, 2020) (citation omitted); *In re Steven*

*Franklyn* 00412 (State Bar Court of Los Angeles).

A number of courts have referred to Helfand as a "serial objector," who has been disbarred for, among other things, filing groundless objections to proposed class action settlements. *See In re TikTok, Inc., Consumer Priv. Litig.*, 2022 WL 2982782, at *11 (N.D. Ill. July 28, 2022). As Judge Michael K. Moore stated, Mr. Helfand, "is a well-known serial objector who has represented himself and third parties in objecting to multiple class action settlements." *Gay v. Tom's of Maine, Inc.*, No. 0:14-cv-60604-KMM, ECF No. 43, at 4 n.1 (S.D. Fla. Mar. 11, 2016) (Moore, C.J.) (citing cases); *see also Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (KESx), 2016 U.S. Dist. LEXIS 137184, at *32 n.11 (C.D. Cal. Sep. 30, 2016) (recognizing that Steven Helfand is a "known serial objector"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *42 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431, 211 L. Ed. 2d 254 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765, 211 L. Ed. 2d 479 (2022) (same). In *Collins v. Quincy Bioscience, LLC*, Magistrate Judge Jonathan Goodman said of Mr. Helfand that "he is one of the most uncooperative, evasive, confrontational, difficult, inconsistent, rude, threatening, and problematic deponents I have ever encountered in more than 37 years of practicing law." 2020 WL 7135528, at *6 (S.D. Fla. Nov. 16, 2020).

In addition to the serial appearances of Mr. Helfand as an objector, the Court should also consider the serial nature of Mr. Helfand's objections themselves. Rather than being specific to the case and truly seeking to advance the interests of the class, Mr. Helfand continually invokes the same meritless basis for his objections. Indeed, the objection lodged by Mr. Helfand in the current

$190 million settlement in *In re: Capital One Consumer Data Security Breach Litigation,* No.

9

1:19-MD-2915-AJT (E.D. Va.) (Dkt. 2238) (attached as Exhibit 1) is practically verbatim the same *Helfand*, No. 206667 and Joseph Darrell Palmer, No. 125147, Case Nos. 17- O-00411 and 17-O-

objection he raised in this case as to his crusade to persuade a court of an intra-class conflict between those individuals who have suffered identity theft and those who have not. And both of those objections largely mirror the intra-class conflict objection he raised in *Aseltine et al v. Chipotle Mexican Grill, Inc.*, Case No. RG21088118 (Cal. Super. Ct. Alameida Cty.) (Apr. 15, 2022), attached hereto as Exhibit 2. Tellingly, in his Chipotle objection, Mr. Helfand boldly announced his premeditated plan to file an appeal if his objections were overruled. *Id*. at 2 fn.1. No doubt Mr. Helfand had the same plan in the present case. All of this is further evidence that the objection and appeal for Mr. Helfand is not about advancing the interests of the class but about serving his own interest as a serial objector. His objections, which serve as the basis for his appeal, are not unique to the specifics of this Settlement—which would indicate an interest in protecting the class—but rather are the same objections that he routinely raises in every case.

One means of dealing with the harm caused by professional objectors is to require them to post an appeal bond. Courts routinely find that appeals by professional objectors are vexatious and in bad faith and impose a bond to protect the class and class counsel. *See, e.g.*, *In re General Elec. Co. Sec. Litig.*, 998 F. Supp. At 155-56. (imposing a bond of $57,400 on a serial objector who the court noted "simply copied and pasted his opposition papers from another proceeding"). This Court should do that here, requiring Mr. Helfand to bear at least some of the costs that his conduct imposes on the rest of the class by posting a bond.

### 4. *There is a Risk Mr. Helfand Will Not Pay the Costs When the Appeal is Unsuccessful*

There is a substantial risk that the costs of appeal will not be paid unless a bond is required. Mr. Helfand's class recovery is substantially less than the costs he will create by appealing. *See*

10

*Rougvie v. Ascena Retail Grp., Inc.*, 2016 WL 6069968, at *3 (E.D. Pa. Oct. 14, 2016) (finding risk that Appellants would not pay costs after an unsuccessful appeal where appellants' class recovery was substantially less than the costs they created by appealing). Further, Mr. Helfand resides outside of this Court's physical jurisdiction, in the state of Florida. If the costs of appeal are not voluntarily paid, Plaintiffs will be forced to institute a collection action in a different jurisdiction. Courts routinely find a substantial risk of non-payment under such circumstances, warranting an appeal bond. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 ("[T]he Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is a significant risk of non-payment."); *see also Dennings*, 928 F. Supp. 2d at 1271-72 ("Second, there is a risk of non-payment of appeal costs given that both objectors live in Texas, and it may therefore be difficult to enforce a cost order imposed upon them."); *In re Netflix Privacy Litig.*, 2013 WL 6173772, at *3 (N.D. Cal. Nov. 25, 2013); *In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010).

In short, the factors typically considered by courts in deciding whether to require an appeal bond all support requiring Mr. Helfand to do so in this case.

### B. The Bond Amount Should be Sufficient to Cover All Appellate Costs

"The nature and amount of the bond is a matter left to the sound discretion of the district court." *Sckolnick v. Harlow*, 820 F.2d at 15. . Defending any appeal, even a frivolous one, is both time-consuming and expensive. As such, courts frequently require objectors who have appealed from final approval orders to post substantial bonds. *See, e.g.*, *In re Wal-Mart Wage and Hour Employ. Prac. Litig.*, 2010 WL 786513, at *2 ($2 million); *Tennille v. Western Union Co.*, 2013

11

WL 5716877, at *2 (D. Colo. Oct. 21, 2013) ($1,007,294); *In re Checking*, 2012 WL 456691, at *3 ($616,338); *Barnes*, 2006 WL 6916834, at *3 ($645,111); *In re Broadcom Securities Litig.*, SAC 01-275 (C.D. Cal. Dec. 5, 2005) (cited in *In re Checking*, 2012 WL 456691, at *2 ($517,700)); *In re Cardizem*, 391 F.3d at 814 ($174,429); *In re Polyurethane*, 178 F. Supp. 3d at 645 ($145,463); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) ($170,000).

Here, despite the enormous harm Mr. Helfand is inflicting on the Settlement Class by delaying any relief by a year or more, Plaintiffs seek only a modest, reasonable bond for the costs of appeal. See *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 167 (E.D. Pa. 2010) (requiring objector who filed an allegedly frivolous appeal to a class action settlement to post a cost bond of $25,000); *In re Diet Drugs Prods. Liab. Litig.*, 2000 U.S. Dist. LEXIS 16085, at *19 (E.D. Pa., Nov. 6, 2000) ("The court concludes that $25,000.00 is a reasonable estimate of Class Counsel's costs in defending these appeals. These costs include printing and producing copies of briefs, appendices, records and court reporter transcripts."); *In re Ins. Brokerage*, 2007 U.S. Dist. LEXIS 47659, at *43 ("…this Court concludes that a $25,000 bond is reasonable…").

Courts in this district have found that costs securable by a Rule 7 appeal bond can also include administrative expenses and the costs attendant to the delay associated with an appeal, *i.e.*, the ongoing costs of settlement administration while an appeal is pending. *See In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *19 (S.D.N.Y. Apr. 26, 2016) ("when an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal")*; In re Gen. Elec. Co. Sec. Litig.,* 998 F.Supp.2d at 151 (noting that "the

Court of Appeals may impose an award of damages on an appellant pursuing a frivolous appeal, and a district court may consider that likelihood is assessing the scope and amount of a Rule 7 Bond."); *In re Am. Inves. Life Ins. Co.,* 695 F. Supp. 2d at 166-67; *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426, at *2 (N.D. Cal. Aug. 27, 2012) (approving $60,000 bond to account for "appellate costs and administrative costs."). And in *In re Nutella Marketing and Sales Practices Litigation,* the Third Circuit affirmed the district court's decision to include in an appeal bond $22,500 to account for the cost of continuing to administer the settlement due to the delay caused by the objector's meritless appeal. 589 Fed. App'x. 53, 61 (3d Cir. 2014); *See also In re N.J. Tax Sales Certificate Antitrust Litig.,* 750 F. App'x 73, 84 (3d Cir. 2018) (district court did not abuse its discretion in including "administrative expenses" in a Rule 7 appeal bond).

Epiq, the Settlement Administrator in this case, will incur significant administrative expenses resulting from the delay caused by this appeal. *See* Supplemental Declaration of Cameron R. Azari on Implementation of Notice Plan ("Azari Decl.") attached hereto as Exhibit 1. The additional costs to administer the Settlement are estimated to be $4,400 per month. Azari Decl. at 6. These costs encompass monthly maintenance costs for the existing Settlement Website and IVR toll-free telephone number, Project Manager and Project Coordinator hourly time to handle appeal-related escalations and requests from Settlement Class Members, and all other appeal-related associated call center and correspondence time. *Id.* Beyond those estimated additional monthly costs, it is likely that additional distribution related expenses (processing additional undeliverables and payment reissues when sending electronic payments and/or checks and associated postage) will be incurred due to the passage in time between the claims process and ultimately providing payments to Settlement Class Members. *Id.* at 7.

**C. The Bond Amount Should be Doubled**

13

Finally, whatever amount this Court determines is the appropriate amount of costs to include in the bond, it should be doubled. Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may…award just damages and single or double costs to the appellee." *See also Feingold v. Graff*, No. 12-2999, 2013 U.S. App. LEXIS 5737, at *17 (3d Cir. Mar. 22, 2013) ("[Appellant's] conduct shows an utter lack of respect for the judiciary and the legal process, and maliciously exposes numerous individuals to frivolous litigation and its attendant aggravations and expenses. Given the nature of [Appellant's] conduct, we find full payment of Fee Appellees' appellate costs, expenses, and attorneys' fees to be 'just damages' for [Appellant's] frivolous litigation.").

Given the record in this case and the proceedings at the final approval hearing, Plaintiffs and the Settlement Class should not be forced to wait for the Second Circuit to make such a ruling in the future. Indeed, there is ample authority of district courts doubling the size of appeal bonds assessed upon frivolous appeals filed by objectors. *See In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, at *16-17 (C.D. Cal. Dec. 5, 2005) ("The bond shall secure double the costs that the Ninth Circuit may award.") (citing *In re Heritage Bond Litig*, 2005 U.S. Dist. LEXIS 13627, at *7 (C.D. Cal. Sept. 12, 2005)). This Court should do the same here.[1]

## IV. **CONCLUSION**

Plaintiffs and Class Members in this case have awaited a recovery long enough and should not be further delayed by an objection which adds no value to this litigation. The Court has thoroughly reviewed the Settlement and has found it to be fair, reasonable, and adequate. Taking all of the relevant factors into account, Plaintiffs respectfully request that the appropriate total

---

[1] While Plaintiffs do not seek to include attorneys' fees in the bond calculation in light of the law in this district, they reserve the right to request them if Mr. Helfand continues to pursue this frivolous appeal, as FED. R. APP. 38 authorizes the imposition of "just damages and single or double costs, including attorney's fees, … if the Court of Appeals determines that the appeal was frivolous."

14

amount of the bond is $25,000.

Defendant does not oppose the motion and the relief sought herein.

DATED:  September 2, 2022                    Respectfully Submitted,

*/s/ Jean S. Martin*
Jean S. Martin (admitted *pro hac vice*)
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jeanmartin@ForThePeople.com

 */s/   Linda P. Nussbaum*
Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

*Settlement Class Counsel*

## **CERTIFICATE OF SERVICE**

I, Jean S. Martin, hereby certify that on September 2, 2022, a true and correct copy of PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF AN APPEAL BOND was filed with the Court using its CM/ECF System which will alert all registered users of the filing.

*/s/ Jean S. Martin*
Jean S. Martin
